1

2  U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

3  Case No. 24-2415 / 24-2450/ 24-2506

4  - - - - - - - - - - - - - - - - - - -x

5  In the Matter of:

6  ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.,

7

8  - - - - - - - - - - - - - - - - - - -x

9  ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.,

10               Appellees,

11      -against-

12  ATTORNEY GENERAL OF NEW JERSEY, ET AL.,

13               Appellants.

14  - - - - - - - - - - - - - - - - - - - - - - - - - - -x

15           United States Bankruptcy Court

16           THE ALBERT BRANSON MARIS COURTROOM (19TH FLOOR)

17           TUESDAY, JULY 1, 2025

18           9:30 AM

19

20

21

22

23

24

25

1

2   B E F O R E:

3   HON.  SHWARTZ, FREEMAN, AND SMITH

4   U.S.  CIRCUIT JUDGES

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19   Transcribed by:   CHARLES WRIGHT

20   eScribers, LLC

21   7227 North 16th Street, Suite #207

22   Phoenix, AZ 85020

23   (800) 257-0885

24   operations@escribers.net

25

```
 1
 2   A P P E A R A N C E S:
 3   FOR THE APELLANTS
 4   Erin E. Murphy, Esq.
     Direct:  202-742-8900
 5   Email:  erin.murphy@clementmurphy.com
     [COR NTC Retained]
 6   Clement & Murphy
     706 Duke Street
 7   Alexandria, VA 22314
 8   William V. Bergstrom, Esq.
     Direct: 202-220-9662
 9   Email: wbergstrom@cooperkirk.com
     [COR NTC Retained]
10   Cooper & Kirk
     1523 New Hampshire Avenue NW
11   Washington, DC 20036
12
     FOR THE APPELLEE
13
     Jeremy Feigenbaum, Esq.
14   Direct: 609-376-2690
     Email: Jeremy.Feigenbaum@njoag.gov
15   Fax: 609-292-7822
     [COR NTC State Government]
16   Office of Attorney General of New Jersey
     25 Market Street
17   Richard J. Hughes Justice Complex
     P.O. Box 112
18   Trenton, NJ 08625
19   Christopher J. Ioannou, Esq. - Liaison Counsel
     Direct: 862-350-5800
20   Email:  Christopher.Ioannou@njoag.gov
     [COR NTC State Government]
21   Office of Attorney General of New Jersey
     25 Market Street
22   Richard J.  Hughes Justice Complex
     P.O. Box 112
23   Trenton, NJ 08625
24
25
```

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 4

1              P R O C E E D I N G S

2        JUDGE SHWARTZ:  We'll now turn to the first case of

3    the morning, the Association of New Jersey Rifle and Pistol

4    Clubs v. Attorney General of New Jersey, together with some

5    other cases, appellate numbers 24-2415, 24-1550, and 24-2506.

6        Ms. Murphy.

7        MS. MURPHY:  Good morning, Your Honor.  As it may

8    please the Court, Erin Murphy on behalf of the ANJRPC and

9    Ellman plaintiffs.  I will be dividing time today.  I'll be

10   taking ten minutes, Mr. Bergstrom will take five, and if I may,

11   I'd like to reserve three minutes for rebuttal.

12       JUDGE SHWARTZ:  That'd be granted.

13       MS. MURPHY:  Thank you.

14       Millions of law-abiding Americans own the semi-

15   automatic rifles, pistols, and shotguns that New Jersey has

16   forbidden, and millions more own the magazines that it has

17   prohibited.  That forecloses the State's effort to ban them as

18   the Supreme Court has been emphatic that our historical

19   tradition is one of protecting the right to possess arms that

20   are in common use for lawful purposes today.

21       JUDGE SMITH:  Ms. Murphy, before we delve into the

22   important constitutional issues presented in this case, I have

23   a probably minor procedural question.  But I assume I'm correct

24   that there were actually three separate actions here that ended

25   up being consolidated for appeals purposes.

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 5

1        MS. MURPHY:  That's correct, yes.

2        JUDGE SMITH:  And along the way in the district

3   court -- and I don't want to waste time by getting into details

4   of the three different actions, but what emerged was eventually

5   a challenge only to the AR-15, even though I believe there were

6   broader challenges in at least one or several of the underlying

7   actions, and the LCMs. Am I correct?

8        MS. MURPHY:  So that is what the district court

9   concluded.  We very much dispute and are appealing the

10  proposition that we challenged only the AR-15 because our

11  challenge was to the entirety of the physical assault weapons

12  ban.

13       JUDGE SMITH:  Okay.  So we may get into that, then, in

14  greater detail downstream, but I just wanted to be clear on

15  that.  Thank you very much.

16       MS. MURPHY:  Yup.  Absolutely, absolutely.  And

17  that's, you know, right where I wanted to start, which is we

18  think the district court got this exactly right as to -- the

19  Court referred in particular to the Colt AR-15 provision --

20       JUDGE SHWARTZ:  Does that apply, though, to all of the

21  weapons defined under the Assault Firearms definition?

22       MS. MURPHY:  The logical conclusion of the reasoning

23  that was embraced below is that you should have -- the Court

24  should have held the entirety of the law unconstitutional.

25       JUDGE SHWARTZ:  Do we need to remand or we can we

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 6

1   decide this without that?

2           MS. MURPHY:  I think you can decide it.  You're

3   certainly welcome to ask Mr. Feigenbaum on his views on this,

4   but I take it to be kind of common ground that at least as to

5   the rifles; I think we all agree that we focus -- there was a

6   fair amount of focus on AR-15 rifles, but that's because

7   they're sort of an exemplar of the particular features of

8   rifles that are singled out in the law, and --

9           JUDGE SMITH:  Well, then if they are just a particular

10  exemplar, how could we not remand and have an appropriate

11  record made as to all of the so-called assault rifles covered

12  in the New Jersey law?

13          MS. MURPHY:  Because all of them have the same basic

14  features that the district court found to be things that you

15  can't ban.

16          JUDGE SMITH:  But don't you at least have to have

17  findings made to reach that conclusion --

18          MS. MURPHY:  I don't think --

19          JUDGE SMITH:   -- that they have all of those same

20  functions, and parts, and whatever?

21          MS. MURPHY:  So I don't think you do because of the

22  regulation.  And I want to be clear, I mean, I have some

23  several things I want to say about the shotguns and pistols

24  that are banned, because that's a different issue, but as to

25  the rifles, we have a regulation from the State that says

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 7

1    here's the features that we have -- you know.  Because there's

2    a component, there's a part of this law that lists sixty-some

3    firearms, and then there's another part that says

4    "substantially identical."

5         And so there's a regulation, or guidelines that were

6    put out basically to say "here's what makes something

7    substantially identical" to the things that are -- the rifles

8    that are on the list.

9         JUDGE SMITH:  It sounds to me like a trial that could

10   take forever if you went into the implications, not only of the

11   sixty-seven, but every variation that would be possible among

12   them.

13        MS. MURPHY:  And that's why I don't think that's

14   really actually the sensible way to proceed here.  I think the

15   better way to look at it is: What is the class of firearms that

16   the State has said it can ban?  What are the qualities?  In the

17   same way if you look at Heller, nobody said, well, what

18   particular handgun does Mr. Heller want?  And we need to figure

19   out which handguns are and are not prohibited.  Because the

20   class --

21        JUDGE SMITH:  But then Heller was a much different

22   situation than here, right?  It's the one case we do have where

23   we are talking about a single type of firearm; a handgun.

24   Right?

25        MS. MURPHY:  Sure.  But here, I think the State has

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 8

1 identified a particular type of rifle that it thinks is

2 problematic. A semiautomatic rifle with the capacity to accept

3 a detachable magazine, and two of five enumerated features.

4      JUDGE SMITH: Your client, if I recall correctly, and

5 it might be buried in a footnote, regards the term assault

6 rifle itself as a pejorative, don't you?

7      MS. MURPHY: Absolutely, but we're not focused on --

8 we're focused on what the law says, you know. And the law,

9 setting aside labels, the law identifies specific firearms, and

10 New Jersey has taken a position on what the features of those

11 firearms are that it thinks takes them outside the protection

12 of the 2nd Amendment.

13      JUDGE SHWARTZ: So was that everything defined in the

14 assault firearms definition in the New Jersey Code?

15      MS. MURPHY: So it's different as to rifles, pistols,

16 and shotguns. But --

17      JUDGE SHWARTZ: So which are you challenging?

18      MS. MURPHY: All of them.

19      JUDGE SHWARTZ: It's the only -- you're challenging

20 all of them?

21      MS. MURPHY: We are challenging all of them.

22      JUDGE SHWARTZ: The finding in the district court on

23 the pistols and the shotguns?

24      MS. MURPHY: So we put in a bunch of evidence about

25 pistols and shotguns, and the district court just kind of said

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 9

1    we didn't.

2        JUDGE SHWARTZ:  Well, it's hard for me to fault the

3    district court for that when the briefing was all about the AR-

4    15.

5        MS. MURPHY:  With respect, I mean, we actually talked

6    about both.  We have a plaintiff whose standing is based on

7    wanting a shotgun, not a rifle.  We have experts who put in

8    testimony about not just ARs --

9        JUDGE SHWARTZ:  You have to remand.

10       MS. MURPHY:  I think on ARs, you don't, but as to the

11   rest of it, I really don't think you do, because --

12       JUDGE SMITH:  But the district court complained about

13   the lack of record here, didn't she?

14       MS. MURPHY:  Sure, but there is a record, and I think

15   this Court can look at the record and recognize the district

16   court was just mistaken.  There is a record.  We put on a

17   record.  We put in evidence.  It just --

18       JUDGE SMITH:  How can you say -- well --

19       MS. MURPHY:  Yeah.  I mean --

20       JUDGE SMITH:   -- when the decision maker says not one

21   way or another how the decision maker would rule, but I just

22   haven't been provided sufficient evidence here to rule.

23       MS. MURPHY:  And I think it's this Court's obligation

24   to look at the record and determine whether the district court

25   was right about that, and I point you as a great starting point

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 10

1　to JA 340 through 351 where our expert talks first -- here's

2　qualities of ARs, here's qualities of AKs, here's qualities of

3　shotguns, here's qualities of pistols.

4　　　　We put on a record about all of these things, so the

5　district court can't eliminate our challenge by saying we

6　didn't create a record when we did, and when we had plaintiffs

7　who particularly wanted other types of arms.

8　　　　JUDGE SMITH:  And you pled a facial challenge, am I

9　right?

10　　　　MS. MURPHY:  We pled a facial challenge.  Our

11　complaint very clearly said we were challenging the law in its

12　entirety.  Again, we have individual plaintiffs who want

13　rifles, we have an individual plaintiff who specifically wants

14　the shotgun and we have an expert who went -- we made sure that

15　our expert covered each category of firearms that we were

16　challenging.

17　　　　JUDGE SMITH:  Would you dispute -- and I do not claim

18　to have read all of the voluminous record in this case

19　myself --

20　　　　MS. MURPHY:  Sure.

21　　　　JUDGE SMITH:   -- but would you agree that nearly all

22　of the evidence that you presented on the record before the

23　district court related only to the AR-15?

24　　　　MS. MURPHY:  No.  I would not agree with nearly all.

25　I would certainly grant you that there was a fair amount of

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 11

1     focus on the AR.

2          JUDGE SHWARTZ:  That a large majority was about the

3     AR-15.

4          MS. MURPHY:  If you look, actually, at our expert

5     evidence, a lot of it is not --

6          JUDGE SHWARTZ:  Which we did.

7          MS. MURPHY:   -- it's not specifically talking about

8     ARs.

9          JUDGE SHWARTZ:  Okay.  Well --

10         MS. MURPHY:  It's just not, you know.  So I

11    respectfully have to disagree about that in terms of the

12    record.  Now, I will grant you that a lot of the argument

13    focused on ARs, but that's because -- and I really do think

14    that this is common ground, that the AR is kind of an exemplar

15    as to the rifles.  I don't think the State has never suggested

16    there's some other rifles on this list that have fundamentally

17    different features that even if an AR ban is unconstitutional,

18    we could still ban these.

19         And since our position is that all of these are arms

20    within the scope of the 2nd Amendment at the threshold textual

21    level, it's really out in the State's obligation if they think

22    there's some reason that the other rifles should be treated

23    differently than ARs, to say why.  And I don't understand them

24    to have ever made any argument that there's anything on that

25    list that they would say, well, even if the AR ban is

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 12

1    unconstitutional, this is not.

2            JUDGE SHWARTZ:  Let's move to the text.

3            MS. MURPHY:  Sure.

4            JUDGE SHWARTZ:  At what step of Bruen does -- should

5    the Court consider the common use -- step 1, or step 2?

6            MS. MURPHY:  Step 2.  Just the concept of common

7    use --

8            JUDGE SHWARTZ:  And what is your reasoning?  And I say

9    that --

10           MS. MURPHY:  Sure.

11           JUDGE SHWARTZ:   -- because it appears that the other

12   circuits seem to -- who have looked at this seem to be largely

13   focused at step 1.

14           Tell me your reason as succinctly as you can.

15           MS. MURPHY:  Sure.  It follows from Bruen, directly

16   from Bruen.  And I think the two principal reasons that it

17   follows from Bruen are first, the way Bruen did the textual

18   analysis, and second, the way Bruen did the historical

19   tradition analysis.

20           So to start with the first one.  When Bruen was doing

21   the textual analysis about carrying, about the -- the question

22   there was carrying in public.  For the textual analysis, the

23   Court said that carrying a firearm clearly fits within the

24   meaning of "bear", and the text doesn't draw a distinction

25   between the home and the public places.  And that's enough for

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 13

1    purposes of the textual inquiry.

2          The Court said that's it.  If there is a historical

3    trad -- if there's a distinction to be drawn based on home

4    versus private, it's not found in the text, so we have to draw

5    it from historical tradition.  So that's the first.

6          In the same way, if you look at the text here, the

7    text doesn't say there's a right to keep and bear arms that are

8    in common use.  It says to keep and bear arms.  And so that's

9    not just saying --

10         JUDGE SHWARTZ:  Didn't Heller tell us that the right

11   is the right to self-defense?  And don't we have to, in light

12   of that, Bruen, that's what -- sorry, that's what Heller told

13   us, that we have to look at common use?  The right being

14   defined by the common use for self-defense, because that's what

15   the right covers?

16         MS. MURPHY:  Sure.  You look at that at the historical

17   tradition stage, and Heller said -- both Heller and Bruen

18   specifically used that language, and this is my second point

19   about Bruen.  Bruen talked about the common-use tradition, and

20   the first place it talked about it was when it was providing an

21   example of how to do historical traditional analysis.

22         The Court pointed to that and said in Heller, for

23   example, we found it fairly supported by the "historical

24   tradition" of prohibiting the carrying of dangerous and unusual

25   weapons, that the 2nd Amendment protects possession and use of

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 14

1    weapons that are in common use at the time.  And then --

2          JUDGE SHWARTZ:  But if from that perspective, then,

3    doesn't it mean that, from your point of view -- and I think

4    this is how the briefing reads on your side, is all arms are

5    protected under the 2nd Amendment.  Plain text -- all arms.

6    And if that's the case, why did Heller even talk about, well,

7    M-16s might be prohibited?

8          MS. MURPHY:  All arms are presumptively protected.  M-

9    16s are firearms.  They are presumptively protected.  That

10   doesn't mean they're ultimately protected.  Historical

11   tradition comes in.  The in common use test matters, it

12   determines the ultimate question of whether something is --

13         JUDGE SMITH:  Ultimate being what is determined after

14   going through step 2 of Bruen?

15         MS. MURPHY:  Exactly.

16         JUDGE SMITH:  Okay.

17         MS. MURPHY:  Whether what restrictions you can place,

18   and which arms could be prohibited, what carrying could be

19   prohibited.  So sure, a firearm is a firearm, but all the first

20   step of Bruen is about is just determining whether the 2nd

21   Amendment is implicated at all such that the State should have

22   to carry its burden.  It seems --

23         JUDGE SMITH:  As an arm?

24         MS. MURPHY:  As an arm.  And it seems to me pretty

25   extraordinary to suggest that a ban on firearms literally

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 15

1    doesn't implicate the 2nd Amendment.  I mean, that is the

2    State's position, that it doesn't implicate it.  You don't need

3    to engage in historical tradition analysis.  And I think Rahimi

4    is actually pretty helpful on this, too.  Because when the

5    Supreme Court in Rahimi did the textual inquiry, the way they

6    described it is as long as a law burdens arms -- regulates, it

7    even says.  As long as the law regulates "arms-bearing

8    conduct," we move past the threshold stage and engage in

9    historical traditional analysis.  The burden shifts to the

10   government.

11          JUDGE SHWARTZ:  But that means, from your point of

12   view, the word arm means all arms?

13          MS. MURPHY:  Arms means exactly what Heller said --

14   all instruments that constitute bearable arms.  Instruments

15   that facilitate self-defense, instruments that you can take

16   into your hands and use, and to cast out or strike another.  A

17   firearm clearly fits that definition of arms.

18          Again, that doesn't -- that's just what tells you have

19   to do historical tradition.  It doesn't end the analysis at

20   all, and as I read Heller, what the Court said there, is the

21   reason that M-16s and the like could be banned is because of

22   the historical tradition of dangerous and unusual.

23          JUDGE SHWARTZ:  Understood.  Let me see if Judge

24   Freeman has some questions for you.

25          JUDGE FREEMAN:  Yeah.  So setting aside whether we

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 16

1    consider common use at step 1 or step 2, is it your position

2    that the Court needs to look at the use -- the common use of

3    the challenged -- of the weapons at the time when the petition

4    is brought, or at the time of the evidentiary hearing in the

5    case, and that -- so if something becomes commonly used

6    tomorrow, and then there's a hearing, and it's protected by the

7    2nd Amendment, but then if it falls out of vogue, what happens

8    then?  Is it no longer protected?

9            MS. MURPHY:  So to start with, kind of, if something

10   can become common, and Bruen very directly answered that

11   question.  Bruen specifically dealt with, they said, even if

12   handguns were considered dangerous and unusual at the founding,

13   they're not today, and that's what controls.

14           So I think absolutely, the Court already confronted

15   this and said, yes, the consequence of that test is that things

16   could become protected.  I think it makes more sense to say

17   that means they can't kind of, like, lose protection just

18   because they become a little bit outmoded or outdated, but

19   certainly, that's not particularly relevant for purposes of

20   this case, because we want to buy -- my clients would like to

21   have arms that are still the types of arms that you can

22   purchase and use today, and nobody is suggesting that they've

23   kind of fallen out of favor and stopped being used commonly.

24           JUDGE FREEMAN:  So what if something comes into common

25   use that also could be considered dangerous?

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 17

1      MS. MURPHY:  So I think the point of the common use

2   test is to say that as between letting the government versus

3   the people decide what is too dangerous, or abnormally

4   dangerous to be suited for common -- for self-defense, we let

5   the people make that determination.  The people who are

6   actually using firearms for self-defense.

7           They speak with their voice by obtaining arms, keeping

8   and bearing arms.

9           JUDGE SMITH:  Not the people through their legislative

10  body.

11          MS. MURPHY:  Correct.  Because --

12          JUDGE SMITH:  We're talking about -- well, I just want

13  to make sure I understand.  You're talking about the people --

14          MS. MURPHY:  Yes.  It's a constitutional right --

15          JUDGE SMITH:   -- who are gun owners, users,

16  possessors.

17          MS. MURPHY:  Yes.  You need to focus on people who

18  actually are keeping and bearing arms, and what have --

19          JUDGE SHWARTZ:  So a popularity test would determine

20  the scope of the right?

21          MS. MURPHY:  I think a popularity test is the way

22  you're effectuating the Framer's judgment that, as between the

23  government and the people making that choice, we trust the

24  people.

25          JUDGE SMITH:  And we -- I'm sorry, go ahead.

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 18

1          JUDGE SHWARTZ:  If there were shoulder rocket

2     launchers, if the same number of people who have AR-15s owned

3     shoulder rocket launchers, are you saying that that is

4     unregulatable?

5          MS. MURPHY:  I mean, Justice Thomas just said he's

6     dealt with exactly this in his dissent from denial in Snope --

7          JUDGE SHWARTZ:  I'm asking you your thoughts, though.

8          MS. MURPHY:   -- and I think what he said is exactly

9     right.  Sure, as a theoretical matter, that is true, but as a

10    practical matter, we have 250 years of experience in this

11    country, and the people have never clamored to own things that

12    are patently unsuitable for self-defense.  People don't try to

13    buy rocket launchers --

14         JUDGE SHWARTZ:  But that's the test, is whether or not

15    the item is patently unusable for self-defense?

16         MS. MURPHY:  No.  The test is common use, and the

17    people --

18         JUDGE SMITH:  Okay.  But --

19         JUDGE SHWARTZ:  Okay.

20         JUDGE SMITH:   -- let's focus on the word "common",

21    though because it pops up.  It is inevitably encountered as we

22    go through this analysis.

23         Number one, has the Supreme Court told us what

24    "common" means in the context of the 2nd Amendment?

25         MS. MURPHY:  They have not specifically defined the

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 19

1    contours of what is and is not common --

2         JUDGE SHWARTZ:  How do you maintain we should

3    determine commonality -- forgive for me using a term usually

4    employed in class actions, but how do we determine commonality?

5         MS. MURPHY:  Sure.  So I want to be clear, there's two

6    components to the common use test.  It's not just possession;

7    it's possession for lawful purposes like self-defense.  So you

8    have to look at both, you know, the numbers and the reasons and

9    uses of what people possess something for.

10        But I think you do -- you start with the numbers.  You

11   look at how many people owned this.  That's certainly how

12   Justice Alito, and I think Justice Thomas joined him, and

13   Caetano focused on it; the recent decisions from Justice

14   Kavanaugh, and Justice Thomas, and Snope indicate you do start

15   with numbers, and are these something that is possessed by a

16   significant number of people?

17        Sure.  As in any test that's not a bright line, it's

18   going to be hard to draw exactly where you start and finish,

19   but I don't think in this case that's particularly hard when

20   you're talking about magazines that account for 50 percent of

21   the magazines out there, and the second most popular type of

22   firearm in the country behind a handgun.

23        We're talking about tens of millions when it comes to

24   magazines, perhaps hundreds of millions of these in common

25   circulation.  And so wherever the line is, I think you can save

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 20

1  that for a case where it's a closer call, but I also do think

2  the use is important.

3       So if you take something like the very small number of

4  semiautomatic firearms -- I'm sorry, fully automatic firearms

5  that are lawfully owned, which actually is in the hundreds of

6  thousands; not that 750,000 number some courts have thrown

7  around.  Nobody has ever put together the record on this, but

8  as a legal matter, a lot of those are going to be owned as

9  collector's items, not something that's being actually used.

10       JUDGE SMITH:  You --

11       MS. MURPHY:  And whether that kind of counts as -- I'm

12  not sure that really counts as the type of use that matters.

13       JUDGE SMITH:  In your last comment, you implicitly

14  raised a question that I have had in preparing for this case,

15  and that is -- and it goes to the commonality question.  There

16  is a significant amount of survey research, if we can call it

17  that, of statistics throughout.

18       How dependable do you consider that survey research to

19  have been?  Because some of it is criticized, but it frequently

20  appears in the briefing in this case.

21       MS. MURPHY:  Yeah.  I think it is -- you know as with

22  any survey, you're going to have a margin of error, but here,

23  whatever the margin of error is, the numbers are so far beyond

24  what I would think of as the -- kind of where you might think

25  the threshold for commonality is.  That if it's off by -- it's

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 21

1   20 million, not 25 million, or the magazines are 150 million,

2   not 175 -- I don't think that's a material difference.

3         You can certainly quibble about this, but I don't take

4   the State to be saying these numbers are so radically far off

5   it's really only like 50 thousand people who own these

6   firearms.  They are quibbling about whether it's 15 million

7   versus 12 million versus 18 million, and of course, you can

8   always quibble around the edges about statistics, especially

9   when they're things that have been polled through surveys.

10        I don't think any of those distinctions end up being

11  material here.

12        JUDGE SMITH:  The old Churchillian, there are lies,

13  damn lies, and statistics.

14        MS. MURPHY:  Yeah.  But if you're going to have a test

15  where the goal is to determine to allow the people to speak

16  with their own voice about what they believe is suited for

17  their common defense, their self-defense, you're going to have

18  to have a way to effectuate that test.  And I'm not really sure

19  how else you can effectuate that test than by trying to find

20  out what it is that the people actually keep and bear and use

21  for self-defense, and hunting and target shooting, and all of

22  the uses that the Framers and the Founding Generation would

23  have understood to be the uses that you want people to have

24  familiarity with, with the arms that you would expect them to

25  muster with if called to the militia.

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 22

1          JUDGE SHWARTZ:  Judge Freeman.

2          JUDGE FREEMAN:  Yeah.  So Heller uses the language

3    dangerous and unusual, but some earlier sources used the phrase

4    dangerous or unusual.  So which is it, and assuming that common

5    use equates to usual -- so not unusual -- could some -- could

6    weapons that are nonetheless dangerous still be regulated?

7          MS. MURPHY:  So we think it is both.  You have to be

8    both dangerous and unusual -- that is the way Heller put it.

9    That is way that multiple Supreme Court Justices, the ones who

10   have actually opined on this, have said that is the correct

11   reading of Heller.  That's the way Bruen put it.  And the Court

12   has consistently focused on not just that language, but

13   particularly saying the reason in Heller -- I mean, the

14   ultimate question in Heller was whether the handgun ban was

15   constitutional.

16         And the reason the Court said it was unconstitutional

17   is because handguns are in common use for self-defense.  They

18   didn't engage in some distinct analysis of, well, whatever.

19   They may be the quintessential weapon, but we've got to

20   independently analyze whether they are somehow too dangerous to

21   be in the hands of the people.  They said it's enough.

22         JUDGE SMITH:  You just said too dangerous.  I'm not

23   sure what that means, but I was going to ask you, why do we

24   talk about a dangerous and unusual weapon?  Who wants a weapon

25   that isn't dangerous?

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 23

1        MS. MURPHY:  So and this is why I think that --

2        JUDGE SMITH:  It seems a real redundancy at best;

3  isn't it?

4        MS. MURPHY:  So I think the only kind of -- for

5  precisely that reason, for dangerous to mean anything, I think

6  dangerous has to mean dangerous in a way that differentiates it

7  from common arms.  So if you take the example of, like, the

8  kind of the flamethrower, the bazooka -- the types of things

9  that people always hypothesize, oh no, people might choose

10  these and then somehow they'd become protected.

11        The reason people don't choose things like that is

12  because people generally don't want arms that inherently pose a

13  high risk of collateral damage.

14        JUDGE SMITH:  We hope.

15        MS. MURPHY:  The average person -- I'm not saying

16  there's no one out there, but this is a commonality test, and

17  the average person, they don't want to risk harming their loved

18  ones, destroying the property they're trying to protect.

19  That's why people choose arms like the AR-15 because it's

20  actually extremely accurate and less likely, even than

21  handguns, with the right ammunition to penetrate walls and

22  perhaps hit your family that is hiding in the next room, or

23  whatever it may be.

24        People consistently choose arms that don't pose that

25  inherent risk of a high degree of collateral damage, even when

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 24

1    used properly.  And I think that's how, to me, for

2    dangerousness to have any real work to do in a dangerous and

3    unusual test, it has to be focused on dangerous, not in the way

4    that, of course arms are dangerous.  The point of arms is that

5    you're using them to inflict force against another person.

6              That can't be the test, or it's pointless.  Every arm

7    is dangerous, but I think it makes sense --

8              JUDGE FREEMAN:  But the original --

9              MS. MURPHY:    -- to say is it dangerous in a way that

10   differentiates it.

11             JUDGE FREEMAN:  I think some of the original sources

12   of this dangerous or unusual language are talking about the

13   riding or going-armed laws.  And they prohibited going armed

14   with dangerous or unusual weapons.  Clearly, the person who was

15   going armed with that weapon didn't think it was too dangerous,

16   but the legislative body did.

17             MS. MURPHY:  I'm actually not sure -- that's not as

18   clear to me because I take those laws to be focused on trying

19   to stop people who were carrying arms for what were perceived

20   to be improper purposes; that they were not carrying them for

21   their defense.  They were carrying the types of arms -- a lot

22   of those laws refer to, kind of, the offensive or aggressive

23   use, and I think what they're getting at is people who are

24   carrying arms for a different purpose than just to protect

25   themselves.

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 25

1          So I think they're getting at the concept of not just

2     arms that are -- not people who are carrying for self-defense

3     arms that the government has decided aren't suited for self-

4     defense, but instead, people who are carrying the type of

5     arms -- they're using them to the terror of the people, rather

6     than just to protect themselves.

7          JUDGE SHWARTZ:  All right.  Counsel, we'll hear you

8     back on rebuttal.

9          MS. MURPHY:  Thank you.

10          JUDGE SHWARTZ:  You bet.

11          MR. BERGSTROM:  Thank you, Your Honor.  May it please

12     the Court.  Will Bergstrom for the Cheeseman plaintiffs.

13          I'd like to pick up where Ms. Murphy left off about

14     the concept of dangerousness.  I agree with her that what we're

15     talking about in this case is whether or not dangerous and

16     unusual is a conjunctive test or separate elements.  I think

17     the Supreme Court has only ever used it as a conjunctive test,

18     but really, it doesn't matter here.  Because what we're looking

19     at -- what we're comparing the dangerous arm against is arms in

20     common use, and an arm that's in common use cannot be

21     dangerous.  And another hint, I think, for why we can't look --

22          JUDGE SHWARTZ:  Common use can't be dangerous?

23          JUDGE SMITH:  Yes.  Is that what I heard you say?

24          MR. BERGSTROM:  That's correct, Your Honor.  Because

25     we're asking if they are more dangerous than arms that are in

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 26

1    common use.  So if an arm is common use, it's obviously not

2    more dangerous than arms that the American people have judged

3    to be --

4         JUDGE SMITH:  There you just modified dangerous by

5    saying more dangerous.

6         MR. BERGSTROM:  Well, right.  Because, Your Honor, I

7    think this goes to your initial question to Ms. Murphy --

8         JUDGE SMITH:  It is not dangerous, in say, in itself?

9         MR. BERGSTROM:  Well, it is dangerous.  All weapons

10   are dangerous.  They're intended to be dangerous.

11        JUDGE SMITH:  Okay.

12        MR. BERGSTROM:  But the question is, is it dangerous

13   and unusual, right?  That's the question we have to be

14   answering -- or, dangerous or unusual.  And this step --

15        JUDGE SHWARTZ:  And what step are we looking at this,

16   by the way?  Are we looking at that from the first step or the

17   second step of Bruen?

18        MR. BERGSTROM:  This is at the second step of Bruen.

19   Because, as Ms. Murphy explained --

20        JUDGE SHWARTZ:  So all arms, regardless of level of

21   dangerousness, regardless of whether it's "dangerous or

22   unusual", "dangerous and unusual" -- it doesn't matter, it's a

23   covered arm, we move to step 2?

24        MR. BERGSTROM:  That's correct, Your Honor.  We look

25   at --

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 27

1    JUDGE SHWARTZ: What's your authority for that?

2    MR. BERGSTROM: Heller says, when it looks -- when it

3 defined "arms", it did not look at commonality at all when it

4 was looking at the definition of arms.

5    JUDGE SHWARTZ: It didn't look at common use for self-

6 defense? Wasn't that the language?

7    MR. BERGSTROM: In part 3 of Heller, when it was

8 discussing historical limitations on the right, it began

9 looking at common use. But when it was defining what "arm"

10 meant in the context of the 2nd Amendment, it even noted that

11 the most restrictive founding-era definition of that term it

12 could find at least included all firearms.

13    JUDGE SHWARTZ: Is any arm prohibited just on the

14 plain text of the 2nd Amendment or is every arm covered?

15    MR. BERGSTROM: Every arm is presumptively

16 protected --

17    JUDGE SMITH: Then the burden shifts, doesn't it --

18    MR. BERGSTROM:  -- and the question then becomes --

19    JUDGE SMITH: Then the burden shifts, right?

20    MR. BERGSTROM: Correct. Then the State carries the

21 burden of proving there is a historical tradition of regulation

22 that provides a basis on which they can regulate an arm or ban

23 an arm.

24    JUDGE SHWARTZ: Is there an arm you can think of that

25 would be outside the definition of "arm" as you've defined it?

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 28

1          MR. BERGSTROM:  Outside the definition of arm?

2          JUDGE SHWARTZ:  Uh-huh.

3          MR. BERGSTROM:  No, Your Honor.  I mean, I think --

4          JUDGE SMITH:  Machine gun?

5          MR. BERGSTROM:  That's an arm.  It's a firearm.  It's

6     certainly within the plain text of the 2nd Amendment.

7          JUDGE SMITH:  So although I don't think we have law on

8     that, that's open for challenge, then, I take it.

9          MR. BERGSTROM:  It would raise 2nd Amendment scrutiny.

10    I mean, I think Heller --

11         JUDGE SMITH:  Yes.

12         MR. BERGSTROM:  -- strongly suggests that the answer

13    to that question is that they can be banned when it discussed

14    M-16 rifles.  But that's a historical question, and it would

15    not be -- the 2nd Amendment is implicated by that question,

16    Your Honor --

17         JUDGE SMITH:  Of course.

18         MR. BERGSTROM:  -- and so we have to run the Bruen

19    analysis.  And the only reason it's implicated is because it's

20    covered by the plain text of the 2nd Amendment.

21         And so then, when we get to the history -- and that's

22    where Bruen seated this, that's where Heller seated this

23    question -- the question is whether or not an arm is dangerous

24    and unusual.  As we've explained, an arm that is in common use,

25    Heller says is, by definition, not, but is instead protected.

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 29

1          JUDGE SMITH:  If there --

2          JUDGE SHWARTZ:  Common use, I mean, in popular use?

3     Like, it's common because it's popular, or common use for self-

4     defense?

5          MR. BERGSTROM:  It's common use for lawful purposes

6     like self-defense, is what Heller said.

7          So you discount illegal use, but if ordinary law-

8     abiding citizens own the arms and use them for their

9     protection, then they are certainly -- and that's the case

10    here.  The Supreme Court just two or three weeks ago in Smith &

11    Wesson said that the AR-15 is the most popular rifle in the

12    country, and that all of these --

13         JUDGE SHWARTZ:  For the 2nd Amendment, are those two

14    words anywhere in the Smith & Wesson majority opinion?

15         MR. BERGSTROM:  No, Your Honor, but it's -- but this

16    is a fact.

17         JUDGE SHWARTZ:  So we're talking about that as a

18    popularity contest, not common use in furtherance of self-

19    defense or lawful purpose, correct?

20         MR. BERGSTROM:  But Your Honor, the type of use that

21    the 2nd Amendment specifically identifies in its text is

22    keeping and bearing, right?  So keeping and bearing is owning

23    and having and carrying on your person for self-defense.  If a

24    person owns an AR-15, they're using it within the meaning of

25    the 2nd Amendment.  So I think --

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 30

1          JUDGE FREEMAN:  But if a person --

2          JUDGE SHWARTZ:  But all of them are using it for all

3     purposes?

4          MR. BERGSTROM:  Well, the 2nd Amendment --

5          JUDGE SHWARTZ:  We have evidence in the record that

6     says it's used for unlawful purposes, so you can't mean use in

7     all ways, correct?

8          MR. BERGSTROM:  That's correct, Your Honor.  I don't

9     include people who are using them unlawfully, but the 24

10    million Americans who own these are, by and large, not using

11    them unlawfully.  In fact, a miniscule percentage of rifles are

12    ever used in crimes.  So we know these are being used for

13    lawful purposes, like self-defense, like target shooting, like

14    sports.  Just like for possessing as an insurance in your home.

15    So --

16         JUDGE SHWARTZ:  All right.  Let me just -- Judge

17    Freeman has some questions for you.

18         JUDGE FREEMAN:  So you recognize that the Supreme

19    Court has indicated that machine guns may be restricted as, I

20    would say, more.  As strong than -- more dangerous than

21    necessary for self-defense.  But again, is that right?

22         MR. BERGSTROM:  I don't recognize that it's because of

23    more dangerous than necessary --

24         JUDGE FREEMAN:  Okay.  Tell me again, then, what you

25    said about --

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 31

1          MR. BERGSTROM:  So the Supreme Court suggested that

2     arms that are dangerous -- or said that arms that are dangerous

3     and unusual, there's a historical tradition that allows them to

4     be regulated, including by banning them.

5          JUDGE FREEMAN:  Okay.

6          MR. BERGSTROM:  It suggested that an M-16 rifle, and

7     automatic rifle, unlike the rifles we're talking about here

8     today, was such a weapon.  So it's not that it's more dangerous

9     than necessary -- it's that it's a dangerous and unusual

10    weapon.

11         JUDGE FREEMAN:  Okay.  It's a dangerous and unusual

12    weapon.

13         MR. BERGSTROM:  Yes.

14         JUDGE FREEMAN:  But it is your position that if the

15    requisite number of Americans decided to use M-16s for self-

16    defense, then they would become -- then they could not be

17    banned?

18         MR. BERGSTROM:  So Your Honor, I think you're assuming

19    away the protection against that, that Heller acknowledged,

20    which is the American people's choices.  The American people,

21    just like Justice Thomas, mentioned in Snope --

22         JUDGE SMITH:  How is that a protection?  And I ask

23    that because it strikes me that the common usage language, the

24    common usage concept, is subject not only to market forces but

25    market regulation -- market manipulation, I'm sorry.

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 32

1          MR. BERGSTROM:  In what sense, Your Honor?  I'm not

2     sure I'm following.

3          JUDGE SMITH:  If you buy -- if one buys and sells

4     weapons, how do they get out there into common usage?  What if

5     a better product comes along, a more lethal weapon comes along

6     and is somehow successfully marketed in such a way that all of

7     a sudden, the AR-15 does no longer have the same level of

8     popularity it had before, but the new, better, more powerful,

9     more lethal AR-15-plus suddenly competes so well that the AR-15

10    is almost a dead letter in a marketplace?  I mean, isn't that a

11    factor that plays into common usage, commonality?  It seems --

12         MR. BERGSTROM:  Certainly, Your Honor --

13         JUDGE SMITH:   -- it seems to me to have a certainly

14    circularity to it analytically, but I can't quite get my hands

15    around it.

16         MR. BERGSTROM:  Well, I'd like to come back to the

17    circularity, but first to treat the point, that if something

18    better comes along and becomes popular, that is a feature of

19    the common use test, that modern firearms should be popular and

20    therefore protected is a feature of the 2nd Amendment.

21         If the point is to have Americans with the best tools

22    for their self-defense, with the best acquaintance with tools

23    that could be useful for their common defense, that is what the

24    2nd Amendment was designed to promote.

25         JUDGE SHWARTZ:  I want to go back to following up with

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 33

1  Judge Freeman and ask you about, then, if the M-16 becomes

2  popularly purchased through this market survey, and the Supreme

3  Court has already said it's the kind of thing that can be

4  prohibited, are you saying that if enough Americans buy the M-

5  16, it's no longer the kind of weapon that can be prohibited

6  regardless of how dangerous it is?

7          MR. BERGSTROM:  Well, Your Honor, again, I would

8  caveat this by saying that the American people had the

9  opportunity for a long time to buy automatic weapons, and they

10  did not.

11          JUDGE SHWARTZ:  I'm just, I'm asking you.  I'm

12  following up on Judge Freeman's questions here.

13          MR. BERGSTROM:  Yes.

14          JUDGE SHWARTZ:  Assuming that there's the requisite

15  level of purchase, whether it's 20 million or 25 million as

16  your colleague was saying, whatever the requisite number is to

17  show common usage among the people of the United States, is

18  that enough to say now M-16s are no longer subject to

19  regulation?

20          MR. BERGSTROM:  Yes, Your Honor.  If the American

21  people buy a firearm in large numbers and decide it's useful to

22  them, then it's protected by the 2nd Amendment.  Now, again, I

23  think these counterfactuals are not --

24          JUDGE SHWARTZ:  There are other rights like that --

25  that means under your perspective, rights within the

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 34

1   Constitution are limited only by their popular embracement?

2         JUDGE SMITH:  No.

3         MR. BERGSTROM:  No, Your Honor.  That's not my

4   position.  My position is that in the 2nd Amendment context,

5   there's a historical tradition of banning dangerous and unusual

6   arms.  So that's the historical principle we apply.

7         JUDGE SHWARTZ:  But you're saying you're -- I just

8   want to -- I'm trying to make sure I understand your position

9   is limited only to the rights within the 2nd Amendment, right?

10        MR. BERGSTROM:  Well, that's because this is a

11  historical principle that is specific to the 2nd Amendment.

12        JUDGE SHWARTZ:  But your answer to that is yes, your

13  position is it's limited to the 2nd Amendment?

14        MR. BERGSTROM:  Yes, Your Honor.  But it's not

15  different from the way we do other constitutional rights, and

16  we are always looking to the text of the Constitution --

17        JUDGE SHWARTZ:  Of course.

18        MR. BERGSTROM:   -- and what the historical principles

19  are.

20        JUDGE SHWARTZ:  I've asked you, my question is about

21  popularity.  It wasn't about the analytical framework.  I'm

22  with you.  You look at the text, and then now in the Bruen

23  world, you look at the historical tradition.  I understand the

24  analytical framework.

25        MR. BERGSTROM:  Sure.

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 35

1          JUDGE SHWARTZ:  I'm asking you about popularity,

2     following up on my colleagues question to you.  That's all.

3          MR. BERGSTROM:  Sure.  And I'm not -- I'm sorry, Your

4     Honor.  I'm not attempting to dodge your question.  Yes, if a

5     firearm is popular and in common use, then it is per se

6     protected and cannot be banned.  That's what Heller tells us.

7     That is why the handgun is protected.

8          JUDGE SHWARTZ:  Let me see if Judge Freeman has

9     additional questions for you.  Judge?

10         Okay.  Thank you, Counsel.

11         MR. BERGSTROM:  Thank you, Your Honor.

12         JUDGE SHWARTZ:  You bet.

13         MR. FEIGENBAUM:  May it please the Court.  Jeremy

14    Feigenbaum for New Jersey.

15         I want to answer Judge Smith's questions about what's

16    in this case, Judge Shwartz's questions about where common use

17    fits in this case, Judge Freeman's questions about what common

18    use is and whether it's a circulation test, and then I think

19    everyone's questions about the history, and everyone's

20    questions about machine gun.

21         But before I go in that order let me just say one

22    thing.  Five circuits have looked at these questions in the

23    wake of Bruen, and they've all reached the same conclusion.

24    Assault weapons laws and LCM laws are consistent with the 2nd

25    Amendment, and they're consistent with the 2nd Amendment both

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 36

1    at step 1 when it comes to this common use question, which is

2    not a circularity -- circulation test, and at step 2 because of

3    our nation's historical principles, which Rahimi instructs this

4    Court to consider.  And this Court should join its unanimous

5    five sister circuits in holding of the same.

6            So let me start with the unique question in this case

7    about what arms are actually challenged here on the assault

8    weapons question.  So I think it's common ground that it's

9    Plaintiff's burden to specify what's actually in this case,

10   whether that means to show what the relevant self-defense

11   features are or whether that means to show circulation, and to

12   talk about what they're actually challenging here.

13           And I think there continues to be at least some

14   confusion across the briefing and at the podium this morning on

15   that question.  Because although we all agree that the

16   challenge doesn't necessarily only cover the Colt AR-15, and

17   that they can cover AR-15s and the substantially similar

18   features, which we joined issue on in our briefing -- they

19   can't seriously mean that they're challenging every single

20   thing stated in the statute.  Because they themselves, in their

21   briefing, carve out the grenade launcher, for example.  They

22   specifically say they're not challenging that part of the

23   guidelines.  They say they're not challenging bump stocks at

24   various points in their brief.

25           And to give one example of something, they don't

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 37

1     specifically foreclose in their briefing, but we have nothing

2     in this record to possibly support a challenge.  There's the

3     Striker-12 Street Sweeper shotgun which ATF prohibited as a

4     destructive device in 1994, and they haven't given any evidence

5     that since ATF itself prohibited it as a destructive device in

6     1994, that it is somehow, even on their test, proliferated

7     sufficiently in the civilian market.

8         So I heard my friends on other side today --

9         JUDGE SMITH:  One second.  So given the

10    carve-outs that you just pointed out, and that this is a facial

11    challenge, what are we to do with it?

12        MR. FEIGENBAUM:  So I sort of think the way Bianchi

13    handled it, the 4th Circuit en banc opinion by Judge Wilkinson,

14    which basically said it can't be a facial challenge to

15    everything.  They themselves are carving some stuff out.  They

16    can't mean to cover literally everything in the law.

17        It can't be a facial challenge to everything.  They

18    definitely challenge, the AR-15, they definitely did enough to

19    clarify that, and to some of the substantially similar

20    features.  And so we're joining issue here, and that's what

21    Bianchi did, too.

22        So it does a full merits opinion, I think a very

23    effective merits opinion, at both step 1 and step 2, but it

24    ultimately focuses on the AR-15 and the most related arms.

25        JUDGE SMITH:  And is that how we should handle this

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 38

1  case?  Because that's really not what I understand to be argued

2  by your friends on the other side.

3          MR. FEIGENBAUM:  So even this morning --

4          JUDGE SMITH:  It ends up -- the result ends up being

5  rather different from how the case, or cases, were originally

6  pled.  And one would have expected them to move through the

7  process.

8          JUDGE SHWARTZ:  I take the point, Judge Smith.  We're

9  obviously at summary judgment.  This wasn't a motion to

10  dismiss, and sometimes cases develop from the way they're

11  initially pled to how they land at summary judgment.  They sort

12  of complain that the district court looked at the way we had

13  responded, mostly focusing on the AR-15, and therefore focused

14  on the AR-15.

15          But that's not exactly right.  We're obviously

16  responding to the case that we think we have against us.  And

17  if we had incorrectly responded to what the challenge was,

18  you'd expect on reply, they would have said in the district

19  court they're missing everything; they forfeited everything.

20  But that's not what they were saying here, and I mean -- I

21  think that would be forfeiture of forfeiture.

22          But that's not even the point.  The point is Judge

23  Sheridan I'm not saying was right to just look at Colt AR-15 as

24  opposed to the AR-15 and the substantially similar features,

25  but I don't really understand how it's quite fair to fault

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 39

1    Judge Sheridan to this degree.

2         But in all events, if this Court has questions, I

3    think we could do what I was just saying in a colloquy with

4    Judge Freeman.  Which is to say, well, like in Bianchi, we

5    don't quite have a facial challenge to everything.  Some of

6    these things are banned by ATF, some of these things Plaintiffs

7    themselves are taking out of the challenge -- like grenade

8    launchers, like bump stocks.  But we'll focus on what's really

9    in front of us, or --

10        JUDGE SHWARTZ:  And what is that, exactly?  What is in

11   front?  Is it just the Colt AR-15, AR-15s and similar devices

12   based upon the statute's definition of similarity?

13        MR. FEIGENBAUM:  Yeah.  I think the AR-15, and the

14   substantially similar features to the AR-15 from the

15   guidelines.

16        Now, to be clear, and I think that largely tracks what

17   Bianchi was looking in the 4th Circuit.  If this Court --

18        JUDGE FREEMAN:  I just want to pause on Bianchi --

19        MR. FEIGENBAUM:  Oh, I'm sorry, Judge Freeman.

20        JUDGE FREEMAN:   -- and I know that throughout your

21   briefing, you've really pointed to Bianchi as, like, the model

22   it seems of how to deal with this, but the Bianchi majority

23   opinion, it starts and it ends with what looks a lot like a --

24   the means-end scrutiny that we were told not to apply.

25        MR. FEIGENBAUM:  So the reason I think Bianchi is

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 40

1    particularly helpful is that does a full sum analysis at both

2    steps, but frankly, I think a step 2 analysis on historical

3    tradition is done very well across all five of this Court's

4    sister circuits.  Hanson in the D.C. circuit does a nice job

5    with it, OST and the 1st Circuit --

6           JUDGE SMITH:  Well, but was Judge Freeman's question

7    correct?  In fact, was the criticism that she referred to that

8    I think actually appeared in one of the accompanying opinions

9    from the 4th Circuit correct -- that it really takes us back to

10   the means-end scrutiny that we were applying previously?

11          MR. FEIGENBAUM:  So I don't think so in two respects.

12   So there's two questions that I think are before this Court as

13   a matter of legal test.  The first is everyone agrees there's a

14   common use tradition.  We obviously have a big disagreement

15   about what it means.  We think common use is specifically about

16   comparing the features of the arm to common real-world uses of

17   self-defense.

18          That's not a means-end scrutiny.  You do still have to

19   look at some factual information about how self-defense

20   operates to understand what would be in common use, but you're

21   not --

22          JUDGE SMITH:  Well, I've understood the common use

23   approach that has been argued so far by your friends on the

24   other side as being some undetermined numerical factor -- one

25   which has not been defined, which somehow presents an obvious

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 41

1    base from which one can thereby infer commonality of that

2    particular weapon.

3            Am I misunderstanding them?

4            MR. FEIGENBAUM:  You are understanding their position

5    correctly.

6            JUDGE SMITH:  Yes.  Okay.

7            MR. FEIGENBAUM:  That is not my position about what

8    common use means.

9            JUDGE SMITH:  All right.  Understood.

10           MR. FEIGENBAUM:  But I think you're understanding them

11   correctly.

12           JUDGE SHWARTZ:  Maybe tell us what the government --

13           MR. FEIGENBAUM:  So --

14           JUDGE SHWARTZ:   -- what the State of New Jersey says

15   common use means in this context, and why is it step 1

16   consideration?

17           MR. FEIGENBAUM:  So we think that what common use

18   means for self-defense is that you actually have to look at the

19   objective features of the arm and compare it to common uses for

20   self-defense.

21           So LCMs illustrate this well.  If it were the case

22   that common self-defense involving firing twelve bullets in a

23   regular, common respect, then you would understand why LCMs

24   would be in common use for self-defense.  Because you'd look at

25   what the feature is, you'd see how self-defense works in the

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 42

1   real world, and you'd compare the two.

2          What we have on this record, obviously is that, on

3   average, you have two to three shots in self-defense.  It's

4   only .3 percent, less than 99.7 percent of the time, you'd be

5   firing ten shots in self-defense.  This is the Allen

6   Declaration.  I think it's hard to say that that's common use

7   for self-defense.

8          So you look at what self-defense looks like in the

9   real world, and then you compare it to the actual item in front

10  of you in an objective way.  Because the contrary way to think

11  about common use -- and I'll get to this step in just one

12  moment, but the contrary way to think about what common use is

13  this sort of circulation test that I took my friends to be

14  pressing again, this morning, it doesn't quite hold for a

15  couple reasons.

16         I think the first problem is that it's fundamentally

17  ahistorical.  So the Bowie knife example, to take, I think,

18  maybe the most obvious example on the score, the Bowie knife

19  example involves forty-two states restricting it, including

20  bans on manufacture, on sale, on possession, all after there

21  was, quote/unquote, a craze for Bowie knives, and they got

22  really popular including in dueling.

23         And I think the history of American regulation is that

24  once something penetrates the civilian market, once it

25  circulates to a greater degree, the legislature understands the

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 43

1    public safety problem that emerges as a result.  For Bowie

2    knives, it was dueling.  For large-capacity magazine and

3    assault weapons, it's mass shootings.  And it responded seeing

4    that particular public safety threat.

5            But there are other problems inherent in the

6    circulation test.  The first is Judge Smith --

7            JUDGE SMITH:  Since you brought up the Bowie knife

8    issue and its historicity -- is that the best you've got for

9    purposes of Bruen step 2?

10           MR. FEIGENBAUM:  So it's one of my favorites.  I don't

11   think it's my only favorite.  What I like so much about it is a

12   couple of things.  It did involve undisputed bans on

13   possession; it involved bans on manufacture and sale; it

14   involved prohibitive taxes.  It eventually evolved -- involved

15   policy responses by forty-two states, and it's as early as

16   1837, which is only a year --

17           JUDGE SMITH:  My understanding was that only a

18   minority of the states actually passed outright bans on the

19   Bowie knife.

20           MR. FEIGENBAUM:  Yeah.  So just to be clear, our

21   position is not that any state has to ban LCMs or assault

22   weapons, and it didn't have to ban Bowie knives in the early

23   1800s, either.  Our point is that there's policy variation.

24   And what's missing in this case that's so different from

25   Bruen -- because Bruen was a case where they said there aren't

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 44

```
 1    too many examples like this.  And there were counter examples,
 2    which was so important to Bruen.
 3           There was contrary evidence of unconstitutionality.
 4    We don't have any evidence of unconstitutionality.  The only
 5    case my friends cite on Bowie knives they say cuts the other
 6    way is the Nunn case from Georgia, and that was about carry of
 7    pistols that had nothing to do with Bowie knives.
 8           And so without countervailing evidence, we'd run into
 9    the problem that this Court rejected in Pitsilides, and Justice
10    Barrett rejected in her concurrence in Rahimi, which is this
11    idea of use-it-or-lose-it legislative authority.
12           The fact that others responded with carry restrictions
13    or taxes instead of a manufacturer ban, a sale ban, a
14    possession ban, doesn't mean states couldn't include those
15    bans, and a number of them did, and none of them were
16    invalidated.
17           JUDGE FREEMAN:  So I --
18           JUDGE SHWARTZ:  Go ahead.
19           JUDGE FREEMAN:  Just to get back to your point about
20    common use, and you said you have a declarant who says
21    generally, self-defense requires two or three shots from a
22    firearms.  And it sounds like your position is that arms can be
23    prohibited if they are more lethal or more dangerous than
24    necessary for what is commonly used for self-defense.  But we
25    would all acknowledge that you could use a magazine with ten
```

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 45

1    bullets, you could use a magazine with thirty bullets, and
2    still fire two or three shots.
3         So I take it that the challengers -- or the Plaintiffs
4    here are saying that whatever they're using, whatever --
5    whatever arms they are using to fire those two or three shots
6    are the commonly-used firearms for self-defense.  So why should
7    we then take away those last twenty bullets from the thirty-
8    bullet magazine?
9         MR. FEIGENBAUM:  So I think that this is a great
10   question for teeing out the difference between our objective
11   test and their subjective approach.  Ours is not, how often
12   does it happen to be an AR-15 that you've kept in your bedroom
13   that you use in that instance?  You look at what self-defense
14   looks like in the real world.  So how often, for example, do
15   you need to shoot an attacker 500 yards away?  The answer from
16   the record is, you don't.  That's not what real-world self-
17   defense looks like.
18        So it might be that someone subjectively chose to keep
19   an AR-15, and therefore subjectively, that's closest to them
20   when they need to use it in self-defense, but it doesn't have
21   the relevant features that would protect you in common, real-
22   world self-defense.
23        So you're looking at the objective features compared
24   to real-world self-defense.  I use LCMs as the example to show
25   it because the problem with the views on the other side is you

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 46

1  get into this subjective preferences thing that I think the

2  colloquies have shown this morning is entirely circular and

3  leads to this weird, like, flood-the-zone arms race between a

4  manufacturer trying to put out as many of a particular item as

5  quickly as it can, and legislatures that have to restrict it

6  before they even have enough information about the danger.

7        JUDGE FREEMAN:  So the district court is supposed to

8  say, well, because some of the -- the AR-15 is really big and

9  smaller people can't handle it, and you can't use it with one

10 hand and use the other hand to call the police.  So for all

11 these reasons, that's inappropriate for self-defense?  Those

12 are the factual findings that the -- you think the district

13 court needs to make?

14       MR. FEIGENBAUM:  Yeah.  So I think there's legal

15 questions, and then there's factual applications.  I think this

16 is really important.  I think that it is entirely up to courts

17 in the first instance to figure out what the legal framework is

18 without looking at the expert evidence, et cetera.

19       So we think the legal framework is ultimately what are

20 the objective features of the item, and how does it compare to

21 common, real-world uses of self-defense.  The same is true when

22 it gets to the step 2 historical analysis where we're looking

23 for what are the features of the item that make it

24 disproportionality contribute to a real-world public safety

25 threat, whether that's Bowie knives and dueling, or LCMs and

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 47

1    assault weapons and mass shootings.

2          Those are the legal frameworks that our historical

3    tradition, and the plain text and the original public meaning,

4    all set for this Court.

5          Then, there are going to be questions, of course, of

6    application.  Any test you adopt, you're going to need

7    application.  They want district courts to make factual

8    findings on circulation of the item.  We want district courts

9    to make factual findings based on expert testimony over whether

10   and how self-defense is practiced, and what features do or

11   don't lend itself that way.

12         Because a contrary rule doesn't even square with what

13   we know is true about machine guns, to take one obvious

14   example.  There's 176,000 machine guns in civilian circulation

15   right now.  Justice Alito's concurrence and Caetano talked

16   about 200,000 stun guns.  Unless there's, like, this magic

17   gerrymandered number between 176,000 and 200,000, which is

18   where this per se dispositive Constitutional protection comes

19   in, then the very result that Palmetto forecloses, and the very

20   result that Heller said is startling, would actually inexorably

21   follow from my friends on the other side position.

22         But I don't think that quite makes sense in the real

23   world of machine guns because they obviously have a bunch of

24   objective features that are entirely unnecessary for self-

25   defense and are obviously disproportionate, and create this

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 48

1     sort of unusual danger to your questions about dangerous or

2     unusual, and dangerous and unusual, Judge Freeman, you were

3     asking earlier.

4            I think those colloquies are quite important, and

5     machine guns are a very useful illustration here, too.  Because

6     as the D.C. circuit put it in Hanson, which I think is a very

7     helpful opinion in talking about dangerous or unusual -- as

8     every member of this Court has recognized this morning, all

9     guns are going to be dangerous, so it can't be that you really

10    have a dangerous and unusual as two completely different

11    precommitments --

12            JUDGE SMITH:  So am I remembering your brief

13    incorrectly, that there was a suggestion that what is

14    reasonably -- or was reasonably intended was, rather, unusually

15    dangerous?

16            MR. FEIGENBAUM:  That is our view, yes.  That it is

17    unusually dangerous --

18            JUDGE SMITH:  Who else --

19            MR. FEIGENBAUM:  -- like necessary and proper.

20            JUDGE SMITH:  So unusual has been turned into an

21    adjective for dangerous --

22            MR. FEIGENBAUM:  Yeah.  We have necessary and

23    proper --

24            JUDGE SMITH:   -- if anyone used that term that way?

25            MR. FEIGENBAUM:   -- nice and toasty.  I mean, there's

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 49

1    a couple of ways in which -- you're not saying the room is

2    nice, you're not saying anything about the aesthetic of the

3    room.

4            JUDGE SMITH:  I prefer nice and cool, but it's okay.

5            MR. FEIGENBAUM:  Fair enough, fair enough.  But you

6    wouldn't be saying it's nice because you have your favorite

7    color on these walls, and that it's also cool because of the

8    temperature.

9            So in all events, we think it is a grammatical

10   formulation, but I think Judge Freeman's points earlier are

11   really, I think, on point here, which is both the precedents

12   and the historical sources say, "dangerous and unusual" and

13   "dangerous or unusual", and that's a pretty odd way to create a

14   two-step test that you have to always meet.

15           And the way my friends this morning at the podium

16   suggested that "unusual" and "danger" hook together was that

17   you'd have to ask if it's dangerous compared to something that

18   has already circulated.

19           But you've already gone through that on "unusual", so

20   that just collapses the inquiry back into usual again.  Because

21   if you are usual in the way they use it, meaning you've

22   circulated -- if you've already circulated, you'll never be

23   dangerous in comparison to something that's circulated, because

24   it itself is circulated.

25           So the whole thing collapses into itself once again,

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 50

1    and you get into this popularity contest that has this arms

2    race between legislatures and manufacturers, circularity, a

3    machine gun problem, is ahistorical, is not how we do any other

4    constitutional right, and isn't how Heller handled machine

5    guns.

6           Heller didn't count machine guns.  Miller didn't count

7    short-barreled shot guns.  Palmetto didn't count machine guns.

8    Heller didn't even just do a counting exercise on hand guns.

9           So I just -- I have a hard time with the counting

10   exercise really squaring, and instead, one path is for this

11   Court to say common use is at step 1, that's what the 4th

12   Circuit in Price explains.  That's where Bruen put it when it

13   says arms in common use are those that get 2nd Amendment

14   protection, rather than as the dispositive constitutional test.

15           JUDGE SHWARTZ:  And why not is it step 1?

16           MR. FEIGENBAUM:  So it's step 1 for two reasons.  One,

17   I agree with my friend that you look to the precedent in the

18   first instance to figure out where it goes, and if you look at

19   pages 32 and 33 of Bruen, page 32 talks about the various

20   things that get 2nd Amendment protection -- the people, arms in

21   common use for self-defense -- and then it talks about doing a

22   historical analysis.

23           I also think that's consistent with how constitutional

24   rights typically work.  You look at what falls in the actual

25   scope of the right based on its original public meaning.  So a

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 51

1  unanimous jury, even though the 6th Amendment only says jury.

2  Child pornography falls outside the 1st Amendment even though

3  it is literally speech.

4         And then you go at the second step to whatever the

5  test is --

6         JUDGE SHWARTZ:  Stay on step 1 for a sec.  If it's

7  common use in self-defense, as Bruen says, and you say that's

8  step 1, in order for us to make that analysis, we got to go

9  outside the text to figure out whether it's common use in self-

10  defense and then consider some of the statistics you just

11  noted.  Am I understanding your argument?

12         MR. FEIGENBAUM:  Sort of.  So let me just explain in

13  more detail what I mean.  I don't think you go outside the

14  text.  You use sources of original public meaning to understand

15  the text.  So Bevis in the 7th Circuit talks about this in some

16  detail, and in that case, everyone agrees the right to arms --

17  the right to arms, the right to keep and bear arms -- has a

18  pre-existing meaning.  And that pre-existing meaning has to be

19  its original public meaning, we understand that --

20         JUDGE SHWARTZ:  Self-defense.

21         MR. FEIGENBAUM:  Exactly.  Because that comes from the

22  English Bill of Rights, that comes from nine state

23  constitutional provisions, that comes from Blackstone.  And so

24  you understand all of that together, the textual right to arms

25  is what everyone would have understood the right to arms to

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 52

1    mean, which came with the arms in common use for self-defense.

2         JUDGE SHWARTZ:  So then we'd have to determine whether

3    the arm being challenged is in common use for self-defense, in

4    order to make that determination --

5         MR. FEIGENBAUM:  Exactly, right.  That would be the

6    application.

7         JUDGE SHWARTZ:  And that's the application that --

8         MR. FEIGENBAUM:  That would be the application,

9    exactly.

10        JUDGE SHWARTZ:  Understood.

11        MR. FEIGENBAUM:  So as a legal matter, you look to the

12   text and its original public meaning to get the test.  And then

13   as with any test with an arm, or as in any test with what have

14   you that might be covered, public carry, et cetera, you would

15   have to then apply it to the law in front of you.  And that's

16   true whether you're at the first step where you're looking at

17   what's the legal test for what falls within the original scope,

18   or at the second step where you're looking at the historical

19   tradition.

20        JUDGE SHWARTZ:  Okay.

21        MR. FEIGENBAUM:  And I could just say one last thing

22   on this because I think this is helpful for all these

23   questions.  I'm not sure the Court has to decide if it's first

24   step or second step for common use because, at the end of the

25   day, we have a bit of a legal dispute.  I think the most

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 53

1 important point -- and we have a legal dispute about, sort of,

2 what it means.

3 The only real difference on whether it goes to first

4 or second step is going to be the burden shifting, but burdens

5 is about when you've joined issue on a legal test and you're

6 trying to apply it. No one gets a burden or not on what the

7 legal answer is, and if it's not a circulation test -- if it's

8 the test in the way we've described it, then they definitely --

9 I'm not sure who bears the burden is really going to matter in

10 this case because we have this legal dispute. What I think

11 matters --

12 JUDGE SHWARTZ: Well, there is a burden, when we get

13 to the -- if we get to the second step, correct?

14 MR. FEIGENBAUM: No question, no question.

15 JUDGE SHWARTZ: And the State has it. So let's talk

16 about the second step. The analogies that the State has

17 brought to the Court's attention, some prohibit just carrying,

18 others prohibit the firearm in its -- the arm in its entirety.

19 Not firearm, but the weapon in its entirety -- possession.

20 We are supposed to glean principles from historical

21 regulations. What we can we take from the principles of laws

22 that dealt with prohibitions on carrying when the New Jersey

23 statute is an outright ban?

24 MR. FEIGENBAUM: So two quick points. One on the

25 premise that got us to this question, and then one other

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 54

1    question itself.  Just on the premise, to close the loop, even

2    if common use is step 2, my point is, it's not the exclusive

3    step 2 historical test.  You'd still be doing this broader

4    historical tradition, looking at a record that never went in

5    front of Bruen, never went in front of Heller, but is in front

6    of this Court now.

7           And what over -- and over-regulations from crossbows

8    in the English period, to trap guns at the Founding, to Bowie

9    knives as early as 1837, to slingshots right on through machine

10   guns -- when you look at the aggregated information from our

11   history together, you glean the same principle over and over.

12          Which is that once an item circulates sufficiently

13   into the civilian market, such that it is clear it's a

14   disproportionate threat to a particular public safety

15   problem -- again, whether that's dueling, whether it's a mass

16   shooting -- the problems change as time goes on.  Once you have

17   penetration and circulation to the civilian market with a

18   disproportionate public safety threat, the legislature is free

19   to respond to that item, while of course leaving open plenty of

20   other items for self-defense.

21          And I think that's what we see over and over.  It's

22   never been that the State -- the United States, any state -- is

23   able to shut down arms entirely; it's always been pretty

24   targeted to particular weapons that pose a disproportionate

25   threat.  Sometimes it's carry, sometime it's taxes, sometimes

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 55

1    it's manufacture -- which is pretty close to possession,

2    because if you can't make it, you're not going to be able to

3    possess it, same with sale.  Sometimes it's sale, sometimes

4    it's possession itself.  But across --

5         JUDGE SHWARTZ:  They all give us the same principle,

6    which is if there is a -- the principle taught from your point

7    of view, from all of these regulations, is if the item poses a

8    threat to public safety, there's a historical tradition of

9    regulating it, whether --

10        MR. FEIGENBAUM:  Yeah.  I think a disproportionate

11   public safety threat.  Obviously, all arms are posing some

12   public safety threat in the wrong hands, so we don't think that

13   that alone is going to be enough.  I think Hanson, again, is

14   particularly helpful on that.  This gets to the unusually

15   dangerous point that we were talking about earlier.

16        Because otherwise, I don't even see how you could have

17   a ban on machine guns at the amount we've already had in

18   circulation here, but we certainly know we can, because some

19   items are dangerous enough.

20        JUDGE FREEMAN:  I hear you on the disproportionate

21   public safety threat and sort of placing that historical line,

22   but when in very recent history we have the Supreme Court

23   saying look to common use -- a disproportionate public safety

24   threat in common use, it's hard to see those overlapping.

25        MR. FEIGENBAUM:  So I think a couple of points on

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 56

 1    that.  So the first and I think most important point is that

 2    Heller and Bruen made clear they were not intending to do an

 3    exhaustive historical analysis on restrictions you could have,

 4    and Heller of course says this isn't a promise to have any arms

 5    for any purposes whenever you want.

 6           And so none of the courts have ever looked at this

 7    historical evidence.  They've asked you in the first instance

 8    to look at the historical evidence that parties put into the

 9    record, and figure out what the principles are.

10           The second thing is that I really do read Bruen to be

11    saying that common use is for the arms that get protection --

12    again, it's page 32.  This is what the 4th Circuit says in

13    Price.  And if that's the arm that gets protection, then you

14    figure out what restrictions you're allowed to have on that

15    arm.  Can you have a carry restriction?  Could you have a tax

16    on that?  Could you have an outright possession prohibition on

17    that item?  And when you look at the history, there's always

18    been a range.

19           And so this gets back, I think, to this Court's recent

20    decision in Pitsilides, and to Justice Barrett's concurrence in

21    Rahimi.  Which is all about the ways that we've always had

22    policy variation in this country, but it's never been a use-it-

23    or-lose-it.  What you look for is overall traditions to see

24    what are the principles from different policy responses.

25           Look at Rahimi itself.  It looks at a surety law, and

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 57

1   it looks at a going arms law, and it supports a ban on

2   individuals possessing arms based on their danger.  I mean,

3   Justice Thomas, in dissent, is saying those things are not dead

4   ringers at all.  Those things looked really different, going

5   armed, posting a bond, versus a possession ban under 922(g) for

6   certain individuals posing danger.

7          But Rahimi had no trouble identifying that historical

8   tradition.  I think our historical tradition is at least as

9   tight, if not tighter, than when we saw in Rahimi, plus you

10  combine that with the fact that we're dealing with

11  unprecedented development in technology.

12         JUDGE SHWARTZ:  If I could ask you about the large-

13  capacity magazines.  The State is taking the view that it's not

14  an arm at all -- it's more of an accoutrement because it's not,

15  in and of itself, capable of causing injury.  Let's assume this

16  Court would determine it is a critical component for certain

17  arms to operate, certain weapons to operate.

18         How is the large-capacity magazine, like the analogs

19  you've mentioned -- the club, the Bowie knife, the slingshot?

20         MR. FEIGENBAUM:  Yeah.  I think LCMs very much fits.

21  When I'm talking about the historical tradition, I very much

22  mean to sweep in assault weapons and LCMs. I think that's true

23  for common use.  I think it's true for our broader historical

24  principles as well.

25         I think the easiest way, the way most circuits have

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 58

1    handled this question, is to look at the broader historical

2    tradition.  Like OCT did, like Hanson did, and says LCMs, just

3    like assault weapons, fall neatly into that global historical

4    tradition.

5         They haven't said the only historical tradition is

6    common use, although the courts that have looked at it said

7    they fall outside common use as well.  But they haven't said

8    the only historical tradition is common use.  They've looked at

9    the history, they've gleaned principles from the history like

10   Bruen and Rahimi instruct, and then they've applied that to

11   assault weapons and LCMs in equal measure.  And all five

12   circuits that have looked at a mix of assault weapons and LCMs,

13   laws have come out the same way because the historical record

14   in these cases has a pretty consistent through-line.

15        And I understand my friends quibble with a piece of

16   evidence here, a piece of evidence there, but we're talking

17   about English period to the Founding to 1837, which is just a

18   year later than the 1836 evidence Rahimi was relying on, onto

19   Antebellum, onto Reconstruction, onto machine guns, on to

20   restrictions on semiautomatics at twelve-capacity in the 1920s.

21        So over and over, we're seeing the same through-line

22   in our historical tradition, and every circuit has seen it the

23   same way.

24        JUDGE SHWARTZ:  Okay.  Thank you, Counsel.

25        MR. FEIGENBAUM:  Thank you.

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 59

1          MS. MURPHY:  Thank you.  Just a few brief points.

2     First, on the question of where common use begins.  I think the

3     argument you just heard is exactly the argument that this Court

4     has already rejected in Lara and Range as conflating Bruen's

5     two distinct analytical steps.

6          What the State is saying is in order to do the textual

7     inquiry, we have to do all the historical analysis first.  If

8     that's how this worked, you'd never get to the historical

9     tradition -- the State would never bear the burden that Bruen

10    said over and over and over again, States bear when they

11    regulate arms-bearing conduct.

12         JUDGE FREEMAN:  Do you agree, though, with the State

13    that it kind of falls out?  I mean, I recognize the burden is

14    important in many contexts, but ultimately, if the question is

15    common use, whether we do it at step 1 or whether we agree with

16    you and we do it at step 2, aren't we probably going to land in

17    the same place?

18         MS. MURPHY:  I don't think so.  I mean, to give you a

19    perfect example, just to come back to a disputed issue in this

20    case.  I mean, there's arms that we challenge.  If you look at

21    pages 33 to 36 of our brief that we put on a case about, that

22    are unquestionably firearms, at that point, the burden shifts

23    to the State to explain why the shotguns it has banned, it can

24    ban; the pistols that it banned are things that it can be.

25         If the State decides we're going to do none of that,

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 60

1  we win.  It's their burden.  So it is something that matters.

2  But at the end of the day, yes, the work has to be done one way

3  or another.  And that's my second problem with the State's view

4  here, which is they want to deride common use as a popularity

5  test.

6          But make no mistake, what they're really saying is

7  they think the right way to do this inquiry is that legislators

8  and judges, who may have very little familiarity with

9  particular types of arms and the needs of people for self-

10  defense, should be able to say tens of millions of Americans

11  have just made the wrong choice about what they actually keep

12  and use for self-defense.

13          Because they want the test to be not what is in common

14  use, but what they think should be in common use.  And that is

15  exactly the tradition that we have rejected throughout the

16  history of our Founding Generation.  Our Founding Generation

17  believed it is not for the government to tell the people what

18  they do and do not need to keep and bear for their own self-

19  defense.

20          Finally, I take the State's -- I think they suggested

21  that Bowie knives are their best historical evidence of this

22  tradition.  Let's talk about Bowie knives --

23          JUDGE SHWARTZ:  He said that he likes that one.  I

24  don't think he said it was best.

25          MS. MURPHY:  It's certainly his lead one.  There

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 61

1    were --

2         JUDGE SMITH:  And in fact, I found -- I like that one

3    a rather curious response, but we don't have surrebuttal here,

4    so --

5         MS. MURPHY:  Sure, but the Bowie knife is something

6    that was never prohibited.  Their only example of the law that

7    they think prohibited it was Georgia.  I encourage you to look

8    at the law in the Nunn decision which explains it wasn't

9    prohibited.  It was actually a concealed carry ban because the

10   first section of the statute says they're prohibited, and the

11   fourth said you don't violate the first statute if you carry it

12   openly.

13        So there was not one prohibition on the possession of

14   Bowie knives, and I think that proves our point, not theirs.

15   Because what they say is this is something people were really

16   worried about if proliferated, and the answer was we're going

17   to regulate concealed carry.  We're going to have enhanced

18   penalties for the use of this arm in a crime.  We're going to

19   regulate it that way, but we're not going to go to possession

20   bans because that is an extreme measure that Heller teaches is

21   inconsistent with historical tradition.

22        JUDGE SHWARTZ:  How do you respond to your adversary's

23   point that Rahimi used the surety and the going carry laws to

24   support, in that case, the prohibition of possession?

25        MS. MURPHY:  Sure.

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 62

1       JUDGE SHWARTZ:  So that seems -- I'd like to see, how

2  do you get around that?

3       MS. MURPHY:  Yeah.  Because the tradition that Rahimi

4  recognized and the distinction it drew -- the reason it said

5  those same laws, they're actually the same laws that Bruen said

6  were not historically-relevant analogs in Bruen, but were in

7  Rahimi.  And the reason Rahimi said they were different is

8  because the tradition it drew was a tradition of keeping arms

9  out of the hands of people who have been proven to pose a

10  danger to the public, which Rahimi contrasted --

11       JUDGE SMITH:  The determination of fact was very

12  important in that case.

13       MS. MURPHY:  A determination of fact about

14  individualized determination of fact, which it contrasted and

15  said that the reason that's different from Bruen is because

16  Bruen was a law that restricts the right of the general

17  population --

18       JUDGE SHWARTZ:  To carry.

19       MS. MURPHY:   -- to keep and carry -- to carry.

20  There, it was to carry.

21       JUDGE SHWARTZ:  Yeah.  So Bruen is a carry case,

22  Rahimi is a person case?

23       MS. MURPHY:  Correct.  And Bruen said that these same

24  laws, these same Bowie knife laws, these same laws that they're

25  pointing to here, weren't even sufficient to support a ban on

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., ET AL.

Page 63

1    carry.  Because --

2         JUDGE SHWARTZ:  You're saying that Rahimi made that

3    conclusion, or Bruen did?

4         MS. MURPHY:  Bruen made that conclusion, that they

5    couldn't even support a ban on carry because they were only

6    concealed carry bans.

7         JUDGE SHWARTZ:  Understood.

8         MS. MURPHY:  A posteriori, those same laws can't

9    support a ban on possession.

10        JUDGE SHWARTZ:  Let me see, Judge Freeman, anything

11   else?  Judge Smith?

12        Counsel, thank you very much.

13        MS. MURPHY:  Thank you.

14        JUDGE SHWARTZ:  The Court appreciates everyone's hard

15   work on this case and your very helpful arguments.

16        The Court would ask that a copy of the transcript be

17   prepared, and we ask the sides if you could split the expense

18   of that, please.  And the Court will take the matter under

19   advisement.

20        (Whereupon these proceedings were concluded at 10:36 AM)

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4    I, Charles Wright, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9    _____

10   Charles Wright

11

12   eScribers

13   7227 North 16th Street, Suite #207

14   Phoenix, AZ 85020

15

16   Date:  July 8, 2025

17

18

19

20

21

22

23

24

25

## &

**&** 3:6,10 29:10
29:14

## 0

**08625** 3:18,23

## 1

**1** 1:17 12:5,13
16:1 36:1
37:23 41:15
50:11,15,16
51:6,8 59:15
**10:36** 63:20
**112** 3:17,22
**12** 21:7 37:3
**15** 5:5,10,19
6:6 9:4 10:23
11:3 21:6
23:19 29:11,24
32:7,9,9 36:16
37:18,24 38:13
38:14,23,24
39:11,13,14
45:12,19 46:8
**150** 21:1
**1523** 3:10
**15s** 18:2 36:17
39:11
**16** 28:14 31:6
33:1,5
**16s** 14:7,9
15:21 31:15
33:18

**16th** 2:21 64:13
**175** 21:2
**176,000** 47:14
47:17
**18** 21:7
**1800s** 43:23
**1836** 58:18
**1837** 43:16
54:9 58:17
**1920s** 58:20
**1994** 37:4,6
**19th** 1:16
**1st** 40:5 51:2

## 2

**2** 12:5,6 14:14
16:1 26:23
36:2 37:23
40:2 43:9
46:22 54:2,3
59:16
**20** 21:1 33:15
**200,000** 47:16
47:17
**20036** 3:11
**202-220-9662**
3:8
**202-742-8900**
3:4
**2025** 1:17
64:16
**207** 2:21 64:13
**22314** 3:7

**24** 30:9
**24-1550** 4:5
**24-2415** 1:3 4:5
**24-2450** 1:3
**24-2506** 1:3 4:5
**25** 3:16,21 21:1
33:15
**250** 18:10
**257-0885** 2:23
**2nd** 8:12 11:20
13:25 14:5,20
15:1 16:7
18:24 27:10,14
28:6,9,15,20
29:13,21,25
30:4 32:20,24
33:22 34:4,9
34:11,13 35:24
35:25 50:13,20

## 3

**3** 27:7 42:4
**32** 50:19,19
56:12
**33** 50:19 59:21
**340** 10:1
**351** 10:1
**36** 59:21

## 4

**4th** 37:13 39:17
40:9 50:11
56:12

## 5

**50** 19:20 21:5
**500** 45:15

## 6

**609-292-7822**
3:15
**609-376-2690**
3:14
**6th** 51:1

## 7

**706** 3:6
**7227** 2:21
64:13
**750,000** 20:6
**7th** 51:15

## 8

**8** 64:16
**800** 2:23
**85020** 2:22
64:14
**862-350-5800**
3:19

## 9

**922** 57:5
**99.7** 42:4
**9:30** 1:18

## a

**abiding** 4:14
29:8
**able** 54:23 55:2
60:10

**abnormally**
17:3
**absolutely** 5:16
5:16 8:7 16:14
**accept** 8:2
**accompanying**
40:8
**account** 19:20
**accoutrement**
57:14
**accurate** 23:20
64:5
**acknowledge**
44:25
**acknowledged**
31:19
**acquaintance**
32:22
**actions** 4:24
5:4,7 19:4
**actual** 42:9
50:24
**actually** 4:24
7:14 9:5 11:4
15:4 17:6,18
20:5,9 21:20
22:10 23:20
24:17 36:7,9
36:12 40:8
41:18 43:18
47:20 60:11
61:9 62:5
**additional** 35:9

**adjective** 48:21
**adopt** 47:6
**adversary's**
61:22
**advisement**
63:19
**aesthetic** 49:2
**aggregated**
54:10
**aggressive**
24:22
**ago** 29:10
**agree** 6:5 10:21
10:24 25:14
36:15 50:17
59:12,15
**agrees** 40:13
51:16
**ahead** 17:25
44:18
**ahistorical**
42:17 50:3
**aks** 10:2
**al** 1:6,9,12
**albert** 1:16
**alexandria** 3:7
**alito** 19:12
**alito's** 47:15
**allen** 42:5
**allow** 21:15
**allowed** 56:14
**allows** 31:3
**amendment**
8:12 11:20

13:25 14:5,21
15:1 16:7
18:24 27:10,14
28:6,9,15,20
29:13,21,25
30:4 32:20,24
33:22 34:4,9
34:11,13 35:25
35:25 50:13,20
51:1,2
**american** 26:2
31:20,20 33:8
33:20 42:23
**americans** 4:14
30:10 31:15
32:21 33:4
60:10
**ammunition**
23:21
**amount** 6:6
10:25 20:16
55:17
**analogies** 53:16
**analogs** 57:18
62:6
**analysis** 12:18
12:19,21,22
13:21 15:3,9
15:19 18:22
22:18 28:19
40:1,2 46:22
50:22 51:8
56:3 59:7

**analytical**
34:21,24 59:5
**analytically**
32:14
**analyze** 22:20
**anjrpc** 4:8
**answer** 28:12
34:12 35:15
45:15 53:7
61:16
**answered**
16:10
**answering**
26:14
**antebellum**
58:19
**apellants** 3:3
**appealing** 5:9
**appeals** 1:2
4:25
**appeared** 40:8
**appears** 12:11
20:20
**appellants** 1:13
**appellate** 4:5
**appellee** 3:12
**appellees** 1:10
**application**
47:6,7 52:6,7,8
**applications**
46:15
**applied** 58:10
**apply** 5:20 34:6
39:24 52:15

53:6
**applying** 40:10
**appreciates**
63:14
**approach**
40:23 45:11
**appropriate**
6:10
**ar** 5:5,10,19 6:6
9:3 10:23 11:1
11:3,14,17,25
18:2 23:19
29:11,24 32:7
32:9,9 36:16
36:17 37:18,24
38:13,14,23,24
39:11,11,13,14
45:12,19 46:8
**argued** 38:1
40:23
**argument**
11:12,24 51:11
59:3,3
**arguments**
63:15
**arm** 14:23,24
15:12 24:6
25:19,20 26:1
26:23 27:9,13
27:14,15,22,23
27:24,25 28:1
28:5,23,24
40:16 41:19
52:3,13 53:18

56:13,15 57:14
61:18
**armed** 24:13,13
24:15 57:5
**arms** 4:19 10:7
11:19 13:7,8
14:4,5,8,18
15:6,7,12,13,14
15:17 16:21,21
17:7,8,18
21:24 23:7,12
23:19,24 24:4
24:4,19,21,24
25:2,3,5,19,25
26:2,20 27:3,4
29:8 31:2,2
34:6 36:7
37:24 44:22
45:5 46:3 50:1
50:13,20 51:16
51:17,17,24,25
52:1 54:23
55:11 56:4,11
57:1,2,17
59:11,20 60:9
62:8
**ars** 9:8,10 10:2
11:8,13,23
**aside** 8:9 15:25
**asked** 34:20
56:7
**asking** 18:7
25:25 33:11
35:1 48:3

**assault** 5:11,21
6:11 8:5,14
35:24 36:7
43:3,21 47:1
57:22 58:3,11
58:12
**association** 1:6
1:9 4:3
**assume** 4:23
57:15
**assuming** 22:4
31:18 33:14
**atf** 37:3,5 39:6
**attacker** 45:15
**attempting**
35:4
**attention** 53:17
**attorney** 1:12
3:16,21 4:4
**authority** 27:1
44:11
**automatic** 4:15
20:4 31:7 33:9
**avenue** 3:10
**average** 23:15
23:17 42:3
**az** 2:22 64:14

**b**

**b** 2:2
**back** 25:8
32:16,25 40:9
44:19 49:20
56:19 59:19

**ban** 4:17 5:12
6:15 7:16
11:17,18,25
14:25 22:14
27:22 43:21,22
44:13,13,14
53:23 55:17
57:1,5 59:24
61:9 62:25
63:5,9
**banc** 37:13
**bankruptcy**
1:15
**banned** 6:24
15:21 28:13
31:17 35:6
39:6 59:23,24
**banning** 31:4
34:5
**bans** 42:20
43:12,13,18
44:15 61:20
63:6
**barreled** 50:7
**barrett** 44:10
**barrett's** 56:20
**base** 41:1
**based** 9:6 13:3
39:12 47:9
50:25 57:2
**basic** 6:13
**basically** 7:6
37:14

basis 27:22
bazooka 23:8
bear 12:24 13:7
13:8 21:20
51:17 59:9,10
60:18
bearable 15:14
bearing 15:7
17:8,18 29:22
29:22 59:11
bears 53:9
bedroom 45:12
began 27:8
begins 59:2
behalf 4:8
believe 5:5
21:16
believed 60:17
bergstrom 3:8
4:10 25:11,12
25:24 26:6,9
26:12,18,24
27:2,7,15,18,20
28:1,3,5,9,12
28:18 29:5,15
29:20 30:4,8
30:22 31:1,6
31:13,18 32:1
32:12,16 33:7
33:13,20 34:3
34:10,14,18,25
35:3,11
best 23:2 32:21
32:22 43:8

60:21,24
bet 25:10 35:12
better 7:15
32:5,8,18
bevis 51:15
beyond 20:23
bianchi 37:12
37:21 39:4,17
39:18,21,22,25
big 40:14 46:8
bill 51:22
bit 16:18 52:25
blackstone
51:23
body 17:10
24:16
bond 57:5
bowie 42:17,18
42:21 43:1,7
43:19,22 44:5
44:7 46:25
54:8 57:19
60:21,22 61:5
61:14 62:24
box 3:17,22
branson 1:16
brief 36:24
48:12 59:1,21
briefing 9:3
14:4 20:20
36:14,18,21
37:1 39:21
bright 19:17

broader 5:6
54:3 57:23
58:1
brought 16:4
43:7 53:17
bruen 12:4,15
12:16,17,17,18
12:20 13:12,17
13:19,19 14:14
14:20 16:10,11
22:11 26:17,18
28:18,22 34:22
35:23 43:9,25
43:25 44:2
50:12,19 51:7
54:5 56:2,10
58:10 59:9
62:5,6,15,16,21
62:23 63:3,4
bruen's 59:4
bullet 45:8
bullets 41:22
45:1,1,7
bump 36:23
39:8
bunch 8:24
47:23
burden 14:22
15:9 27:17,19
27:21 36:9
53:4,6,9,12
59:9,13,22
60:1

burdens 15:6
53:4
buried 8:5
buy 16:20
18:13 32:3
33:4,9,21
buys 32:3

c

c 3:2 4:1 64:2,2
caetano 19:13
47:15
call 20:1,16
46:10
called 6:11
21:25
capable 57:15
capacity 8:2
43:2 57:13,18
58:20
carries 27:20
carry 14:22
44:6,12 52:14
54:25 56:15
61:9,11,17,23
62:18,19,19,20
62:21 63:1,5,6
carrying 12:21
12:22,23 13:24
14:18 24:19,20
24:21,24 25:2
25:4 29:23
53:17,22

**carve** 36:21
37:10
**carving** 37:15
**case** 1:3 4:2,22
7:22 10:18
14:6 16:5,20
19:19 20:1,14
20:20 25:15
29:9 35:16,17
36:6,9 38:1,5
38:16 41:21
43:24,25 44:5
44:6 51:16
53:10 59:20,21
61:24 62:12,21
62:22 63:15
**cases** 4:5 38:5
38:10 58:14
**cast** 15:16
**category** 10:15
**causing** 57:15
**caveat** 33:8
**certain** 57:6,16
57:17
**certainly** 6:3
10:25 16:19
19:11 21:3
28:6 29:9
32:12,13 55:18
60:25
**certify** 64:4
**cetera** 46:18
52:14

**challenge** 5:5
5:11 10:5,8,10
28:8 36:16
37:2,11,14,17
37:18 38:17
39:5,7 59:20
**challenged**
5:10 16:3 36:7
52:3
**challengers**
45:3
**challenges** 5:6
**challenging**
8:17,19,21
10:11,16 36:12
36:19,22,23
**change** 54:16
**charles** 2:19
64:4,10
**cheeseman**
25:12
**child** 51:2
**choice** 17:23
60:11
**choices** 31:20
**choose** 23:9,11
23:19,24
**chose** 45:18
**christopher**
3:19
**christopher.i...**
3:20
**churchillian**
21:12

**circuit** 1:2 2:4
37:13 39:17
40:4,5,9 48:6
50:12 51:15
56:12 58:22
**circuits** 12:12
35:22 36:5
40:4 57:25
58:12
**circular** 46:2
**circularity**
32:14,17 36:2
50:2
**circulated**
49:18,22,22,23
49:24
**circulates**
42:25 54:12
**circulation**
19:25 35:18
36:2,11 42:13
43:6 47:8,14
53:7 54:17
55:18
**cite** 44:5
**citizens** 29:8
**civilian** 37:7
42:24 47:14
54:13,17
**claim** 10:17
**clamored** 18:11
**clarify** 37:19
**class** 7:15,20
19:4

**clear** 5:14 6:22
19:5 24:18
39:16 43:20
54:13 56:2
**clearly** 10:11
12:23 15:17
24:14
**clement** 3:6
**clementmurp...**
3:5
**client** 8:4
**clients** 16:20
**close** 54:1 55:1
**closer** 20:1
**closest** 45:19
**club** 57:19
**clubs** 1:6,9 4:4
**code** 8:14
**collapses** 49:20
49:25
**collateral** 23:13
23:25
**colleague** 33:16
**colleagues** 35:2
**collector's** 20:9
**colloquies** 46:2
48:4
**colloquy** 39:3
**color** 49:7
**colt** 5:19 36:16
38:23 39:11
**combine** 57:10
**come** 32:16
58:13 59:19

**comes** 14:11
16:24 19:23
32:5,5,18 36:1
47:18 51:21,22
51:23
**comment** 20:13
**common** 4:20
6:4 11:14 12:5
12:6 13:8,13
13:14,19 14:1
14:11 16:1,2
16:10,24 17:1
17:4 18:16,20
18:24 19:1,6
19:24 21:17
22:4,17 23:7
25:20,20,22
26:1,1 27:5,9
28:24 29:2,3,3
29:5,18 31:23
31:24 32:4,11
32:19,23 33:17
35:5,16,17
36:1,8 40:14
40:15,16,20,22
41:8,15,17,19
41:22,23,24
42:6,11,12
44:20 45:21
46:21 50:11,13
50:21 51:7,9
52:1,3,24 54:2
55:23,24 56:11
57:23 58:6,7,8

59:2,15 60:4
60:13,14
**commonality**
19:3,4 20:15
20:25 23:16
27:3 32:11
41:1
**commonly** 16:5
16:23 44:24
45:6
**compare** 41:19
42:1,9 46:20
**compared**
45:23 49:17
**comparing**
25:19 40:16
**comparison**
49:23
**competes** 32:9
**complain** 38:12
**complained**
9:12
**complaint**
10:11
**completely**
48:10
**complex** 3:17
3:22
**component** 7:2
57:16
**components**
19:6
**concealed** 61:9
61:17 63:6

**concept** 12:6
25:1,14 31:24
**concluded** 5:9
63:20
**conclusion** 5:22
6:17 35:23
63:3,4
**concurrence**
44:10 47:15
56:20
**conduct** 15:8
59:11
**conflating** 59:4
**confronted**
16:14
**confusion**
36:14
**conjunctive**
25:16,17
**consequence**
16:15
**consider** 12:5
16:1 20:18
36:4 51:10
**consideration**
41:16
**considered**
16:12,25
**consistent**
35:24,25 50:23
58:14
**consistently**
22:12 23:24

**consolidated**
4:25
**constitute**
15:14
**constitution**
34:1,16
**constitutional**
4:22 17:14
22:15 34:15
47:18 50:4,14
50:23 51:23
**contest** 29:18
50:1
**context** 18:24
27:10 34:4
41:15
**contexts** 59:14
**continues**
36:13
**contours** 19:1
**contrary** 42:10
42:12 44:3
47:12
**contrasted**
62:10,14
**contribute**
46:24
**controls** 16:13
**cool** 49:4,7
**cooper** 3:10
**cooperkirk.c...**
3:9
**copy** 63:16

cor 3:5,9,15,20
correct 4:23
  5:1,7 17:11
  22:10 25:24
  26:24 27:20
  29:19 30:7,8
  40:7,9 53:13
  62:23
correctly 8:4
  41:5,11
counsel 3:19
  25:7 35:10
  58:24 63:12
count 50:6,6,7
counter 44:1
counterfactuals
  33:23
countervailing
  44:8
counting 50:8,9
country 18:11
  19:22 29:12
  56:22
counts 20:11
  20:12
couple 42:15
  43:12 49:1
  55:25
course 21:7
  24:4 28:17
  34:17 47:5
  54:19 56:4
court 1:2,15
  4:8,18 5:3,8,18

5:19,23 6:14
8:22,25 9:3,12
9:15,16,24
10:5,23 12:5
12:23 13:2,22
15:5,20 16:2
16:14 18:23
22:9,11,16
25:12,17 29:10
30:19 31:1
33:3 35:13
36:4,4 38:12
38:19 39:2,17
40:12 44:9
46:7,13 47:4
48:8 50:11
52:23 54:6
55:22 57:16
59:3 63:14,16
63:18
court's 9:23
  40:3 53:17
  56:19
courtroom 1:16
courts 20:6
  46:16 47:7,8
  56:6 58:6
cover 36:16,17
  37:16
covered 6:11
  10:15 26:23
  27:14 28:20
  52:14

covers 13:15
craze 42:21
create 10:6
  47:25 49:13
crime 61:18
crimes 30:12
critical 57:16
criticism 40:7
criticized 20:19
crossbows 54:7
curious 61:3
cuts 44:5

**d**

d 4:1
d.c. 40:4 48:6
damage 23:13
  23:25
damn 21:13
danger 46:6
  48:1 49:16
  57:2,6 62:10
dangerous
  13:24 15:22
  16:12,25 17:3
  17:4 22:3,4,6,8
  22:20,22,24,25
  23:5,6,6 24:2,3
  24:4,7,9,12,14
  24:15 25:15,19
  25:21,22,25
  26:2,4,5,8,9,10
  26:10,12,14,21
  26:22 28:23

30:20,23 31:2
31:2,8,9,11
33:6 34:5
44:23 48:1,2,7
48:9,10,15,17
48:21 49:12,13
49:17,23 55:15
55:19
dangerousness
  24:2 25:14
  26:21
date 64:16
day 52:25 60:2
dc 3:11
dead 32:10
  57:3
deal 39:22
dealing 57:10
dealt 16:11
  18:6 53:22
decide 6:1,2
  17:3 33:21
  52:23
decided 25:3
  31:15
decides 59:25
decision 9:20
  9:21 56:20
  61:8
decisions 19:13
declarant
  44:20
declaration
  42:6

**defense** 13:11
13:14 15:15
17:4,6 18:12
18:15 19:7
21:17,17,21
22:17 24:21
25:2,4 27:6
29:4,6,19,23
30:13,21 31:16
32:22,23 36:10
40:17,19 41:18
41:20,22,24,25
42:3,5,7,8
44:21,24 45:6
45:13,17,20,22
45:24 46:11,21
47:10,25 50:21
51:7,10,20
52:1,3 54:20
60:10,12,19
**defined** 5:21
8:13 13:14
18:25 27:3,25
40:25
**defining** 27:9
**definitely** 37:18
37:18 53:8
**definition** 5:21
8:14 15:17
27:4,11,25
28:1,25 39:12
**degree** 23:25
39:1 42:25

**delve** 4:21
**denial** 18:6
**dependable**
20:18
**deride** 60:4
**described** 15:6
53:8
**designed** 32:24
**destroying**
23:18
**destructive**
37:4,5
**detachable** 8:3
**detail** 5:14
51:13,16
**details** 5:3
**determination**
17:5 52:4
62:11,13,14
**determine** 9:24
17:19 19:3,4
21:15 52:2
57:16
**determined**
14:13
**determines**
14:12
**determining**
14:20
**develop** 38:10
**development**
57:11
**device** 37:4,5

**devices** 39:11
**difference** 21:2
45:10 53:3
**different** 5:4
6:24 7:21 8:15
11:17 24:24
34:15 38:5
43:24 48:10
56:24 57:4
62:7,15
**differentiates**
23:6 24:10
**differently**
11:23
**direct** 3:4,8,14
3:19
**directly** 12:15
16:10
**disagree** 11:11
**disagreement**
40:14
**discount** 29:7
**discussed** 28:13
**discussing** 27:8
**dismiss** 38:10
**dispositive**
47:18 50:14
**disproportion...**
46:24
**disproportion...**
47:25 54:14,18
54:24 55:10,20
55:23

**dispute** 5:9
10:17 52:25
53:1,10
**disputed** 59:19
**dissent** 18:6
57:3
**distinct** 22:18
59:5
**distinction**
12:24 13:3
62:4
**distinctions**
21:10
**district** 5:2,8
5:18 6:14 8:22
8:25 9:3,12,15
9:24 10:5,23
38:12,18 46:7
46:12 47:7,8
**dividing** 4:9
**dodge** 35:4
**doing** 12:20
50:21 54:3
**downstream**
5:14
**draw** 12:24
13:4 19:18
**drawn** 13:3
**drew** 62:4,8
**dueling** 42:22
43:2 46:25
54:15
**duke** 3:6

# e

**e** 2:2,2 3:2,2,4
4:1,1 64:2
**earlier** 22:3
48:3 49:10
55:15
**early** 43:15,22
54:9
**easiest** 57:25
**edges** 21:8
**effective** 37:23
**effectuate**
21:18,19
**effectuating**
17:22
**effort** 4:17
**either** 43:23
**elements** 25:16
**eliminate** 10:5
**ellman** 4:9
**email** 3:5,9,14
3:20
**embraced** 5:23
**embracement**
34:1
**emerged** 5:4
**emerges** 43:1
**emphatic** 4:18
**employed** 19:4
**en** 37:13
**encountered**
18:21

**encourage** 61:7
**ended** 4:24
**ends** 38:4,4
39:23
**engage** 15:3,8
22:18
**english** 51:22
54:8 58:17
**enhanced**
61:17
**entirely** 46:2,16
47:24 54:23
**entirety** 5:11
5:24 10:12
53:18,19
**enumerated**
8:3
**equal** 58:11
**equates** 22:5
**era** 27:11
**erin** 3:4 4:8
**erin.murphy**
3:5
**error** 20:22,23
**escribers** 2:20
64:12
**escribers.net**
2:24
**especially** 21:8
**esq** 3:4,8,13,19
**et** 1:6,9,12
46:18 52:14
**events** 39:2
49:9

**eventually** 5:4
43:14
**everyone's**
35:19,19 63:14
**evidence** 8:24
9:17,22 10:22
11:5 30:5 37:4
44:3,4,8 46:18
56:7,8 58:16
58:16,18 60:21
**evidentiary**
16:4
**evolved** 43:14
**exactly** 5:18
14:15 15:13
18:6,8 19:18
38:15 39:10
51:21 52:5,9
59:3 60:15
**example** 13:21
13:23 23:7
36:21,25 42:17
42:18,19 45:14
45:24 47:14
59:19 61:6
**examples** 44:1
44:1
**exclusive** 54:2
**exemplar** 6:7
6:10 11:14
**exercise** 50:8
50:10
**exhaustive** 56:3

**existing** 51:18
51:18
**expect** 21:24
38:18
**expected** 38:6
**expense** 63:17
**experience**
18:10
**expert** 10:1,14
10:15 11:4
46:18 47:9
**experts** 9:7
**explain** 51:12
59:23
**explained**
26:19 28:24
**explains** 50:12
61:8
**extraordinary**
14:25
**extreme** 61:20
**extremely**
23:20

# f

**f** 2:2 64:2
**facial** 10:8,10
37:10,14,17
39:5
**facilitate** 15:15
**fact** 29:16
30:11 40:7
44:12 57:10
61:2 62:11,13

62:14
**factor**  32:11
40:24
**factual**  40:19
46:12,15 47:7
47:9
**fair**  6:6 10:25
38:25 49:5,5
**fairly**  13:23
**fall**  58:3,7
**fallen**  16:23
**falls**  16:7 50:24
51:2 52:17
59:13
**familiarity**
21:24 60:8
**family**  23:22
**far**  20:23 21:4
40:23
**fault**  9:2 38:25
**favor**  16:23
**favorite**  43:11
49:6
**favorites**  43:10
**fax**  3:15
**feature**  32:18
32:20 41:25
**features**  6:7,14
7:1 8:3,10
11:17 36:11,18
37:20 38:24
39:14 40:16
41:19 45:21,23
46:20,23 47:10

47:24
**feigenbaum**
3:13 6:3 35:13
35:14 37:12
38:3 39:13,19
39:25 40:11
41:4,7,10,13,17
43:10,20 45:9
46:14 48:16,19
48:22,25 49:5
50:16 51:12,21
52:5,8,11,21
53:14,24 55:10
55:25 57:20
58:25
**figure**  7:18
46:17 50:18
51:9 56:9,14
**finally**  60:20
**find**  21:19
27:12
**finding**  8:22
**findings**  6:17
46:12 47:8,9
**finish**  19:18
**fire**  45:2,5
**firearm**  7:23
12:23 14:19,19
15:17 19:22
28:5 33:21
35:5 53:18,19
**firearms**  5:21
7:3,15 8:9,11
8:14 10:15

14:9,25 17:6
20:4,4 21:6
27:12 32:19
44:22 45:6
59:22
**firing**  41:22
42:5
**first**  4:2 10:1
12:17,20 13:5
13:20 14:19
26:16 32:17
40:13 42:16
43:6 46:17
50:18 52:16,23
53:3 56:1,7
59:2,7 61:10
61:11
**fits**  12:23 15:17
35:17 57:20
**five**  4:10 8:3
35:22 36:5
40:3 58:11
**flamethrower**
23:8
**flood**  46:3
**floor**  1:16
**focus**  6:5,6 11:1
17:17 18:20
39:8
**focused**  8:7,8
11:13 12:13
19:13 22:12
24:3,18 38:13

**focuses**  37:24
**focusing**  38:13
**follow**  47:21
**following**  32:2
32:25 33:12
35:2
**follows**  12:15
12:17
**footnote**  8:5
**forbidden**  4:16
**force**  24:5
**forces**  31:24
**foreclose**  37:1
**forecloses**  4:17
47:19
**foregoing**  64:4
**forever**  7:10
**forfeited**  38:19
**forfeiture**
38:21,21
**forgive**  19:3
**formulation**
49:10
**forty**  42:19
43:15
**found**  6:14
13:4,23 61:2
**founding**  16:12
21:22 27:11
54:8 58:17
60:16,16
**fourth**  61:11
**framer's**  17:22

**framers** 21:22
**framework** 34:21,24 46:17 46:19
**frameworks** 47:2
**frankly** 40:2
**free** 54:18
**freeman** 2:3 15:24,25 16:24 22:1,2 24:8,11 30:1,17,18,24 31:5,11,14 33:1 35:8 39:4 39:18,19,20 44:17,19 46:7 48:2 55:20 59:12 63:10
**freeman's** 33:12 35:17 40:6 49:10
**frequently** 20:19
**friend** 50:17
**friends** 37:8 38:2 40:23 42:13 44:5 47:21 49:15 58:15
**front** 39:9,11 42:9 52:15 54:5,5,5
**full** 37:22 40:1

**fully** 20:4
**functions** 6:20
**fundamentally** 11:16 42:16
**furtherance** 29:18

**g**

**g** 4:1 57:5
**general** 1:12 3:16,21 4:4 62:16
**generally** 23:12 44:21
**generation** 21:22 60:16,16
**georgia** 44:6 61:7
**gerrymandered** 47:17
**getting** 5:3 24:23 25:1
**give** 36:25 55:5 59:18
**given** 37:4,9
**glean** 53:20 54:11
**gleaned** 58:9
**global** 58:3
**go** 17:25 18:22 32:25 35:21 44:18 51:4,8 51:13 61:19

**goal** 21:15
**goes** 20:15 26:7 50:18 53:3 54:16
**going** 14:14 19:18 20:8,22 21:14,17 22:23 24:13,13,15 47:5,6 48:9 53:4,9 55:2,13 57:1,4 59:16 59:25 61:16,17 61:18,19,23
**good** 4:7
**government** 3:15,20 15:10 17:2,23 25:3 41:12 60:17
**grammatical** 49:9
**grant** 10:25 11:12
**granted** 4:12
**great** 9:25 45:9
**greater** 5:14 42:25
**grenade** 36:21 39:7
**ground** 6:4 11:14 36:8
**guidelines** 7:5 36:23 39:15
**gun** 17:15 28:4 35:20 50:3

**guns** 30:19 47:13,14,16,23 48:5,9 50:5,6,7 50:7,8 54:8,10 55:17 58:19

**h**

**hampshire** 3:10
**hand** 46:10,10 50:8
**handgun** 7:18 7:23 19:22 22:14 35:7
**handguns** 7:19 16:12 22:17 23:21
**handle** 37:25 46:9
**handled** 37:13 50:4 58:1
**hands** 15:16 22:21 32:14 55:12 62:9
**hanson** 40:4 48:6 55:13 58:2
**happen** 45:12
**happens** 16:7
**hard** 9:2 19:18 19:19 42:6 50:9 55:24 63:14

harming 23:17
hear 25:7 55:20
heard 25:23
  37:8 59:3
hearing 16:4,6
held 5:24
heller 7:17,18
  7:21 13:10,12
  13:17,17,22
  14:6 15:13,20
  22:2,8,11,13,14
  27:2,7 28:10
  28:22,25 29:6
  31:19 35:6
  47:20 50:4,6,8
  54:5 56:2,4
  61:20
helpful 15:4
  40:1 48:7
  52:22 55:14
  63:15
hiding 23:22
high 23:13,25
hint 25:21
historical 4:18
  12:18 13:2,5
  13:16,21,23
  14:10 15:3,9
  15:19,22 27:8
  27:21 28:14
  31:3 34:5,6,11
  34:18,23 36:3
  40:2 46:22
  47:2 49:12

50:22 52:18
53:20 54:3,4
55:8,21 56:3,7
56:8 57:7,8,21
57:23 58:1,3,5
58:8,13,22
59:7,8 60:21
61:21
historically
  62:6
historicity 43:8
history 28:21
  35:19 42:23
  54:11 55:22
  56:17 58:9,9
  60:16
hit 23:22
hold 42:14
holding 36:5
home 12:25
  13:3 30:14
hon 2:3
honor 4:7
  25:11,24 26:6
  26:24 28:3,16
  29:15,20 30:8
  31:18 32:1,12
  33:7,20 34:3
  34:14 35:4,11
hook 49:16
hope 23:14
hughes 3:17,21
huh 28:2

hundreds
  19:24 20:5
hunting 21:21
hypothesize
  23:9

**i**

idea 44:11
identical 7:4,7
identified 8:1
identifies 8:9
  29:21
identifying
  57:7
illegal 29:7
illustrate 41:21
illustration
  48:5
implicate 15:1
  15:2
implicated
  14:21 28:15,19
implications
  7:10
implicitly
  20:13
important 4:22
  20:2 44:2
  46:16 48:4
  53:1 56:1
  59:14 62:12
improper 24:20
inappropriate
  46:11

include 30:9
  44:14
included 27:12
including 31:4
  42:19,22
inconsistent
  61:21
incorrectly
  38:17 48:13
independently
  22:20
indicate 19:14
indicated 30:19
individual
  10:12,13
individualized
  62:14
individuals
  57:2,6
inevitably
  18:21
inexorably
  47:20
infer 41:1
inflict 24:5
information
  40:19 46:6
  54:10
inherent 23:25
  43:5
inherently
  23:12
initial 26:7

**initially** 38:11
**injury** 57:15
**inquiry** 13:1
15:5 49:20
59:7 60:7
**instance** 45:13
46:17 50:18
56:7
**instruct** 58:10
**instructs** 36:3
**instruments**
15:14,14,15
**insurance**
30:14
**intended** 26:10
48:14
**intending** 56:2
**invalidated**
44:16
**involve** 43:12
**involved** 43:13
43:14,14
**involves** 42:19
**involving** 41:22
**ioannou** 3:19
**issue** 6:24
36:18 37:20
43:8 53:5
59:19
**issues** 4:22
**item** 18:15 42:9
46:4,20,23
47:8 54:12,19
55:7 56:17

**items** 20:9
54:20 55:19

**j**

**j** 3:17,19,22
**ja** 10:1
**jeremy** 3:13
35:13
**jeremy.feige...**
3:14
**jersey** 1:6,9,12
3:16,21 4:3,4
4:15 6:12 8:10
8:14 35:14
41:14 53:22
**job** 40:4
**join** 36:4
**joined** 19:12
36:18 53:5
**joining** 37:20
**judge** 4:2,12,21
5:2,13,20,25
6:9,16,19 7:9
7:21 8:4,13,17
8:19,22 9:2,9
9:12,18,20
10:8,17,21
11:2,6,9 12:2,4
12:8,11 13:10
14:2,13,16,23
15:11,23,23,25
16:24 17:9,12
17:15,19,25
18:1,7,14,18,19

18:20 19:2
20:10,13 21:12
22:1,1,2,22
23:2,14 24:8
24:11 25:7,10
25:22,23 26:4
26:8,11,15,20
27:1,5,13,17,19
27:24 28:2,4,7
28:11,17 29:1
29:2,13,17
30:1,2,5,16,16
30:18,24 31:5
31:11,14,22
32:3,13,25
33:1,11,12,14
33:24 34:2,7
34:12,17,20
35:1,8,8,9,12
35:15,16,17
37:9,13,25
38:4,8,8,22
39:1,4,10,18,19
39:20 40:6,6
40:22 41:6,9
41:12,14 43:6
43:7,17 44:17
44:18,19 46:7
48:2,12,18,20
48:24 49:4,10
50:15 51:6,20
52:2,7,10,20
53:12,15 55:5
55:20 57:12

58:24 59:12
60:23 61:2,22
62:1,11,18,21
63:2,7,10,10,11
63:14
**judged** 26:2
**judges** 2:4 60:8
**judgment**
17:22 38:9,11
**july** 1:17 64:16
**jury** 51:1,1
**justice** 3:17,22
18:5 19:12,12
19:13,14 31:21
44:9 47:15
56:20 57:3
**justices** 22:9

**k**

**kavanaugh**
19:14
**keep** 13:7,8
21:20 45:18
51:17 60:11,18
62:19
**keeping** 17:7
17:18 29:22,22
62:8
**kept** 45:12
**kind** 6:4 8:25
11:14 16:9,17
16:23 20:11,24
23:4,8 24:22
33:3,5 59:13

**kirk** 3:10
**knife** 42:17,18
  43:7,19 57:19
  61:5 62:24
**knives** 42:21
  43:2,22 44:5,7
  46:25 54:9
  60:21,22 61:14
**know** 5:17 7:1
  8:8 11:10 19:8
  20:21 30:12
  39:20 47:13
  55:18

**l**

**labels** 8:9
**lack** 9:13
**land** 38:11
  59:16
**language** 13:18
  22:2,12 24:12
  27:6 31:23
**lara** 59:4
**large** 11:2
  30:10 33:21
  43:2 57:12,18
**largely** 12:12
  39:16
**launcher** 36:21
**launchers** 18:2
  18:3,13 39:8
**law** 4:14 5:24
  6:8,12 7:2 8:8
  8:8,9 10:11

15:6,7 28:7
  29:7 37:16
  52:15 56:25
  57:1 61:6,8
  62:16
**lawful** 4:20
  19:7 29:5,19
  30:13
**lawfully** 20:5
**laws** 24:13,18
  24:22 35:24,24
  53:21 58:13
  61:23 62:5,5
  62:24,24,24
  63:8
**lcm** 35:24
**lcms** 5:7 41:21
  41:23 43:21
  45:24 46:25
  57:20,22 58:2
  58:11,12
**lead** 60:25
**leads** 46:3
**leaving** 54:19
**left** 25:13
**legal** 20:8
  40:13 46:14,17
  46:19 47:2
  52:11,17,25
  53:1,5,7,10
**legislative** 17:9
  24:16 44:11
**legislators** 60:7

**legislature**
  42:25 54:18
**legislatures**
  46:5 50:2
**lend** 47:11
**lethal** 32:5,9
  44:23
**letter** 32:10
**letting** 17:2
**level** 11:21
  26:20 32:7
  33:15
**liaison** 3:19
**lies** 21:12,13
**light** 13:11
**likely** 23:20
**likes** 60:23
**limitations**
  27:8
**limited** 34:1,9
  34:13
**line** 19:17,25
  55:21 58:14,21
**list** 7:8 11:16
  11:25
**lists** 7:2
**literally** 14:25
  37:16 51:3
**little** 16:18 60:8
**llc** 2:20
**logical** 5:22
**long** 15:6,7
  33:9

**longer** 16:8
  32:7 33:5,18
**look** 7:15,17
  9:15,24 11:4
  13:6,13,16
  16:2 19:8,11
  25:21 26:24
  27:3,5 34:22
  34:23 38:23
  40:19 41:18,24
  42:8 45:13
  50:17,18,24
  52:11 54:10
  55:23 56:8,17
  56:23,25 58:1
  59:20 61:7
**looked** 12:12
  35:22 38:12
  56:6 57:4 58:6
  58:8,12
**looking** 25:18
  26:15,16 27:4
  27:9 34:16
  39:17 45:23
  46:18,22 52:16
  52:18 54:4
**looks** 27:2
  39:23 42:8
  45:14,17 56:25
  57:1
**loop** 54:1
**lose** 16:17
  44:11 56:23

**lot** 11:5,12 20:8
  24:21 39:23
**loved** 23:17

**m**

**m** 14:7,8 15:21
  28:14 31:6,15
  33:1,4,18
**machine** 28:4
  30:19 35:20
  47:13,14,23
  48:5 50:3,4,6,7
  54:9 55:17
  58:19
**made** 6:11,17
  10:14 11:24
  56:2 60:11
  63:2,4
**magazine** 8:3
  43:2 44:25
  45:1,8 57:18
**magazines** 4:16
  19:20,21,24
  21:1 57:13
**magic** 47:16
**maintain** 19:2
**majority** 11:2
  29:14 39:22
**make** 17:5,13
  34:8 46:13,23
  47:7,9 51:8
  52:4 55:2 60:6
**maker** 9:20,21

**makes** 7:6
  16:16 24:7
  47:22
**making** 17:23
**manipulation**
  31:25
**manufacture**
  42:20 43:13
  55:1
**manufacturer**
  44:13 46:4
**manufacturers**
  50:2
**margin** 20:22
  20:23
**maris** 1:16
**market** 3:16,21
  31:24,25,25
  33:2 37:7
  42:24 54:13,17
**marketed** 32:6
**marketplace**
  32:10
**mass** 43:3 47:1
  54:15
**material** 21:2
  21:11
**matter** 1:5 18:9
  18:10 20:8
  25:18 26:22
  40:13 52:11
  53:9 63:18
**matters** 14:11
  20:12 53:11

60:1
**mean** 6:22 9:5
  9:19 14:3,10
  15:1 18:5
  22:13 23:5,6
  28:3,10 29:2
  30:6 32:10
  36:19 37:16
  38:20 44:14
  48:25 51:13
  52:1 57:2,22
  59:13,18,20
**meaning** 12:24
  29:24 47:3
  49:21 50:25
  51:14,18,18,19
  52:12
**means** 15:11,12
  15:13 16:17
  18:24 22:23
  33:25 36:10,11
  39:24 40:10,15
  40:18 41:8,15
  41:18 53:2
**meant** 27:10
**measure** 58:11
  61:20
**meet** 49:14
**member** 48:8
**mentioned**
  31:21 57:19
**merits** 37:22,23
**militia** 21:25

**miller** 50:6
**million** 21:1,1,1
  21:6,7,7 30:10
  33:15,15
**millions** 4:14
  4:16 19:23,24
  60:10
**miniscule**
  30:11
**minor** 4:23
**minority** 43:18
**minutes** 4:10
  4:11
**missing** 38:19
  43:24
**mistake** 60:6
**mistaken** 9:16
**misunderstan...**
  41:3
**mix** 58:12
**model** 39:21
**modern** 32:19
**modified** 26:4
**moment** 42:12
**morning** 4:3,7
  36:14 38:3
  42:14 46:2
  48:8 49:15
**motion** 38:9
**move** 12:2 15:8
  26:23 38:6
**multiple** 22:9
**murphy** 3:4,6
  4:6,7,8,13,21

5:1,8,16,22 6:2
6:13,18,21
7:13,25 8:7,15
8:18,21,24 9:5
9:10,14,19,23
10:10,20,24
11:4,7,10 12:3
12:6,10,15
13:16 14:8,15
14:17,24 15:13
16:9 17:1,11
17:14,17,21
18:5,8,16,25
19:5 20:11,21
21:14 22:7
23:1,4,15 24:9
24:17 25:9,13
26:7,19 59:1
59:18 60:25
61:5,25 62:3
62:13,19,23
63:4,8,13
**muster** 21:25

**n**

**n** 3:2 4:1 64:2
**nation's** 36:3
**nearly** 10:21,24
**neatly** 58:3
**necessarily**
36:16
**necessary**
30:21,23 31:9
44:24 48:19,22

**need** 5:25 7:18
15:2 17:17
45:15,20 47:6
60:18
**needs** 16:2
46:13 60:9
**never** 11:15
18:11 49:22
54:4,5,22
56:22 59:8,9
61:6
**new** 1:6,9,12
3:10,16,21 4:3
4:4,15 6:12
8:10,14 32:8
35:14 41:14
53:22
**nice** 40:4 48:25
49:2,4,6
**nine** 51:22
**nj** 3:18,23
**njoag.gov** 3:14
3:20
**north** 2:21
64:13
**noted** 27:10
51:11
**ntc** 3:5,9,15,20
**number** 18:2
18:23 19:16
20:3,6 31:15
33:16 44:15
47:17

**numbers** 4:5
19:8,10,15
20:23 21:4
33:21
**numerical**
40:24
**nunn** 44:6 61:8
**nw** 3:10

**o**

**o** 2:2 4:1 64:2
**objective** 41:19
42:10 45:10,23
46:20 47:24
**obligation** 9:23
11:21
**obtaining** 17:7
**obvious** 40:25
42:18 47:13
**obviously** 26:1
38:9,15 40:14
42:2 47:23,25
55:11
**oct** 58:2
**odd** 49:13
**offensive** 24:22
**office** 3:16,21
**oh** 23:9 39:19
**okay** 5:13 11:9
14:16 18:18,19
26:11 30:24
31:5,11 35:10
41:6 49:4
52:20 58:24

**old** 21:12
**once** 42:24,24
49:25 54:12,16
**ones** 22:9 23:18
**open** 28:8
54:19
**openly** 61:12
**operate** 57:17
57:17
**operates** 40:20
**operations** 2:24
**opined** 22:10
**opinion** 29:14
37:13,22,23
39:23 48:7
**opinions** 40:8
**opportunity**
33:9
**opposed** 38:24
**order** 35:21
51:8 52:4 59:6
**ordinary** 29:7
**original** 24:8
24:11 47:3
50:25 51:14,19
52:12,17
**originally** 38:5
**ost** 40:5
**outdated** 16:18
**outmoded**
16:18
**outright** 43:18
53:23 56:16

outs 37:10
outside 8:11
27:25 28:1
51:2,9,13 58:7
overall 56:23
overlapping
55:24
own 4:14,16
18:11 21:5,16
29:8 30:10
60:18
owned 18:2
19:11 20:5,8
owners 17:15
owning 29:22
owns 29:24

**p**

p 3:2,2 4:1
p.o. 3:17,22
page 50:19
56:12
pages 50:19
59:21
palmetto 47:19
50:7
part 7:2,3 27:7
36:22
particular 5:19
6:7,9 7:18 8:1
41:2 43:4 46:4
54:14,24 60:9
particularly
10:7 16:19

19:19 22:13
40:1 55:14
parties 56:8
parts 6:20
passed 43:18
past 15:8
patently 18:12
18:15
path 50:10
pause 39:18
pejorative 8:6
penalties 61:18
penetrate
23:21
penetrates
42:24
penetration
54:17
people 17:3,5,5
17:9,13,17,23
17:24 18:2,11
18:12,17 19:9
19:11,16 21:5
21:15,20,23
22:21 23:9,9
23:11,12,19,24
24:19,23 25:2
25:4,5 26:2
30:9 31:20
33:8,17,21
46:9 50:20
60:9,17 61:15
62:9

people's 31:20
perceived
24:19
percent 19:20
42:4,4
percentage
30:11
perfect 59:19
period 54:8
58:17
person 23:15
23:17 24:5,14
29:23,24 30:1
62:22
perspective
14:2 33:25
petition 16:3
phoenix 2:22
64:14
phrase 22:3
physical 5:11
pick 25:13
piece 58:15,16
pistol 1:6,9 4:3
pistols 4:15
6:23 8:15,23
8:25 10:3 44:7
59:24
pitsilides 44:9
56:20
place 13:20
14:17 59:17
places 12:25

placing 55:21
plain 14:5
27:14 28:6,20
47:3
plaintiff 9:6
10:13
plaintiff's 36:9
plaintiffs 4:9
10:6,12 25:12
39:6 45:3
plays 32:11
please 4:8
25:11 35:13
63:18
pled 10:8,10
38:6,11
plenty 54:19
plus 32:9 57:9
podium 36:14
49:15
point 9:25,25
13:18 14:3
15:11 17:1
24:4 32:17,21
38:8,22,22
43:23 44:19
49:11 53:1
54:2 55:6,15
56:1 59:22
61:14,23
pointed 13:22
37:10 39:21
pointing 62:25

**pointless** 24:6
**points** 36:24
  49:10 53:24
  55:25 59:1
**police** 46:10
**policy** 43:15,23
  56:22,24
**polled** 21:9
**pops** 18:21
**popular** 19:21
  29:2,3,11
  32:18,19 34:1
  35:5 42:22
**popularity**
  17:19,21 29:18
  32:8 34:21
  35:1 50:1 60:4
**popularly** 33:2
**population**
  62:17
**pornography**
  51:2
**pose** 23:12,24
  54:24 62:9
**poses** 55:7
**posing** 55:11
  57:6
**position** 8:10
  11:19 15:2
  16:1 31:14
  34:4,4,8,13
  41:4,7 43:21
  44:22 47:21

**possess** 4:19
  19:9 55:3
**possessed**
  19:15
**possessing**
  30:14 57:2
**possession**
  13:25 19:6,7
  42:20 43:13
  44:14 53:19
  55:1,4 56:16
  57:5 61:13,19
  61:24 63:9
**possessors**
  17:16
**possible** 7:11
**possibly** 37:2
**posteriori** 63:8
**posting** 57:5
**powerful** 32:8
**practical** 18:10
**practiced** 47:10
**pre** 51:18,18
**precedent**
  50:17
**precedents**
  49:11
**precisely** 23:5
**precommitm...**
  48:11
**prefer** 49:4
**preferences**
  46:1

**premise** 53:25
  54:1
**prepared** 63:17
**preparing**
  20:14
**presented** 4:22
  10:22
**presents** 40:25
**pressing** 42:14
**presumptively**
  14:8,9 27:15
**pretty** 14:24
  15:4 49:13
  54:23 55:1
  58:14
**previously**
  40:10
**price** 50:12
  56:13
**principal** 12:16
**principle** 34:6
  34:11 54:11
  55:5,6
**principles**
  34:18 36:3
  53:20,21 56:9
  56:24 57:24
  58:9
**private** 13:4
**probably** 4:23
  59:16
**problem** 42:16
  43:1 44:9
  45:25 50:3

  54:15 60:3
**problematic**
  8:2
**problems** 43:5
  54:16
**procedural**
  4:23
**proceed** 7:14
**proceedings**
  63:20 64:5
**process** 38:7
**product** 32:5
**prohibit** 53:17
  53:18
**prohibited** 4:17
  7:19 14:7,18
  14:19 24:13
  27:13 33:4,5
  37:3,5 44:23
  61:6,7,9,10
**prohibiting**
  13:24
**prohibition**
  56:16 61:13,24
**prohibitions**
  53:22
**prohibitive**
  43:14
**proliferated**
  37:6 61:16
**promise** 56:4
**promote** 32:24
**proper** 48:19
  48:23

**properly** 24:1
**property** 23:18
**proposition**
5:10
**protect** 23:18
24:24 25:6
45:21
**protected** 14:5
14:8,9,10 16:6
16:8,16 23:10
27:16 28:25
32:20 33:22
35:6,7
**protecting** 4:19
**protection** 8:11
16:17 29:9
31:19,22 47:18
50:14,20 56:11
56:13
**protects** 13:25
**proven** 62:9
**proves** 61:14
**provided** 9:22
**provides** 27:22
**providing**
13:20
**proving** 27:21
**provision** 5:19
**provisions**
51:23
**public** 12:22,25
43:1,4 46:24
47:3 50:25
51:14,19 52:12

52:14 54:14,18
55:8,11,12,21
55:23 62:10
**purchase** 16:22
33:15
**purchased** 33:2
**purpose** 24:24
29:19
**purposes** 4:20
4:25 13:1
16:19 19:7
24:20 29:5
30:3,6,13 43:9
56:5
**put** 7:6 8:24 9:7
9:16,17 10:4
20:7 22:8,11
46:4 48:6
50:12 56:8
59:21

**q**

**qualities** 7:16
10:2,2,2,3
**question** 4:23
12:21 14:12
16:11 20:14,15
22:14 26:7,12
26:13 27:18
28:13,14,15,23
28:23 34:20
35:2,4 36:1,6,8
36:15 40:6
45:10 53:14,14

53:25 54:1
58:1 59:2,14
**questions** 15:24
30:17 33:12
35:9,15,16,17
35:19,20,22
39:2 40:12
46:15 47:5
48:1 52:23
**quibble** 21:3,8
58:15
**quibbling** 21:6
**quick** 53:24
**quickly** 46:5
**quintessential**
22:19
**quite** 32:14
38:25 39:5
42:14 47:22
48:4
**quote** 42:21

**r**

**r** 2:2 3:2 4:1
64:2
**race** 46:3 50:2
**radically** 21:4
**rahimi** 15:3,5
36:3 44:10
56:21,25 57:7
57:9 58:10,18
61:23 62:3,7,7
62:10,22 63:2

**raise** 28:9
**raised** 20:14
**range** 56:18
59:4
**rather** 25:5
38:5 48:14
50:14 61:3
**reach** 6:17
**reached** 35:23
**read** 10:18
15:20 56:10
**reading** 22:11
**reads** 14:4
**real** 23:2 24:2
40:16 42:1,9
45:14,16,21,24
46:21,24 47:22
53:3
**really** 7:14 9:11
11:13,21 20:12
21:5,18 25:18
38:1,25 39:8
39:21 40:9
42:22 46:8,16
48:9 49:11
50:10 53:9
56:10 57:4
60:6 61:15
**reason** 11:22
12:14 15:21
22:13,16 23:5
23:11 28:19
39:25 62:4,7
62:15

**reasonably** 48:14,14

**reasoning** 5:22 12:8

**reasons** 12:16 19:8 42:15 46:11 50:16

**rebuttal** 4:11 25:8

**recall** 8:4

**recent** 19:13 55:22 56:19

**recognize** 9:15 30:18,22 59:13

**recognized** 48:8 62:4

**reconstruction** 58:19

**record** 6:11 9:13,14,15,16 9:17,24 10:4,6 10:18,22 11:12 20:7 30:5 37:2 42:2 45:16 54:4 56:9 58:13 64:5

**redundancy** 23:2

**refer** 24:22

**referred** 5:19 40:7

**regardless** 26:20,21 33:6

**regards** 8:5

**regular** 41:23

**regulate** 27:22 59:11 61:17,19

**regulated** 22:6 31:4

**regulates** 15:6 15:7

**regulating** 55:9

**regulation** 6:22 6:25 7:5 27:21 31:25 33:19 42:23

**regulations** 53:21 54:7 55:7

**rejected** 44:9 44:10 59:4 60:15

**related** 10:23 37:24

**relevant** 16:19 36:10 45:21 62:6

**relying** 58:18

**remand** 5:25 6:10 9:9

**remembering** 48:12

**reply** 38:18

**requires** 44:21

**requisite** 31:15 33:14,16

**research** 20:16 20:18

**reserve** 4:11

**respect** 9:5 41:23

**respectfully** 11:11

**respects** 40:11

**respond** 54:19 61:22

**responded** 38:13,17 43:3 44:12

**responding** 38:16

**response** 61:3

**responses** 43:15 56:24

**rest** 9:11

**restrict** 46:5

**restricted** 30:19

**restricting** 42:19

**restriction** 56:15

**restrictions** 14:17 44:12 56:3,14 58:20

**restrictive** 27:11

**restricts** 62:16

**result** 38:4 43:1 47:19,20

**retained** 3:5,9

**richard** 3:17,22

**riding** 24:13

**rifle** 1:6,9 4:3 8:1,2,6 9:7 29:11 31:6,7

**rifles** 4:15 6:5,6 6:8,11,25 7:7 8:15 10:13 11:15,16,22 28:14 30:11 31:7

**right** 4:19 5:17 5:18 7:22,24 9:25 10:9 13:7 13:10,11,13,15 17:14,20 18:9 23:21 25:7 26:6,13 27:8 27:19 29:22 30:16,21 34:9 38:15,23 41:9 47:15 50:4,25 51:16,17,17,24 51:25 52:5 54:9 60:7 62:16

**rights** 33:24,25 34:9,15 50:24 51:22

**ringers** 57:4

**risk** 23:13,17 23:25

**rocket** 18:1,3
18:13
**room** 23:22
49:1,3
**rule** 9:21,22
47:12
**run** 28:18 44:8

**s**

**s** 3:2 4:1
**safety** 43:1,4
46:24 54:14,18
55:8,11,12,21
55:23
**sale** 42:20
43:13 44:13
55:3,3
**save** 19:25
**saw** 57:9
**saying** 10:5
13:9 18:3 21:4
22:13 23:15
26:5 33:4,8,16
34:7 38:20,23
39:3 45:4 49:1
49:2,6 55:23
56:11 57:3
59:6 60:6 63:2
**says** 6:25 7:3
8:8 9:20 13:8
15:7 27:2
28:25 30:6
41:14 44:20
50:13 51:1,7

56:4,12 58:2
61:10
**scope** 11:20
17:20 50:25
52:17
**score** 42:18
**scrutiny** 28:9
39:24 40:10,18
**se** 35:5 47:18
**seated** 28:22,22
**sec** 51:6
**second** 12:18
13:18 19:21
26:17,18 37:9
51:4 52:18,24
53:4,13,16
56:10 60:3
**section** 61:10
**see** 15:23 35:8
41:25 54:21
55:16,24 56:23
62:1 63:10
**seeing** 43:3
58:21
**seem** 12:12,12
**seems** 14:22,24
23:2 32:11,13
39:22 62:1
**seen** 58:22
**self** 13:11,14
15:15 17:4,6
18:12,15 19:7
21:17,21 22:17
25:2,3 27:5

29:3,6,18,23
30:13,21 31:15
32:22 36:10
40:17,19 41:18
41:20,22,24,25
42:3,5,7,8
44:21,24 45:6
45:13,16,20,22
45:24 46:11,21
47:10,24 50:21
51:7,9,20 52:1
52:3 54:20
60:9,12,18
**sells** 32:3
**semi** 4:14
**semiautomatic**
8:2 20:4
**semiautomatics**
58:20
**sense** 16:16
24:7 32:1
47:22
**sensible** 7:14
**separate** 4:24
25:16
**seriously** 36:19
**set** 47:4
**setting** 8:9
15:25
**seven** 7:11
**several** 5:6 6:23
**sheridan** 38:23
39:1

**shifting** 53:4
**shifts** 15:9
27:17,19 59:22
**shoot** 45:15
**shooting** 21:21
30:13 54:16
**shootings** 43:3
47:1
**short** 50:7
**shot** 50:7
**shotgun** 9:7
10:14 37:3
**shotguns** 4:15
6:23 8:16,23
8:25 10:3
59:23
**shots** 42:3,5
44:21 45:2,5
**shoulder** 18:1,3
**show** 33:17
36:10,11 45:24
**shown** 46:2
**shut** 54:23
**shwartz** 2:3 4:2
4:12 5:20,25
8:13,17,19,22
9:2,9 11:2,6,9
12:2,4,8,11
13:10 14:2
15:11,23 17:19
18:1,7,14,19
19:2 22:1 25:7
25:10,22 26:15
26:20 27:1,5

27:13,24 28:2
29:2,13,17
30:2,5,16
32:25 33:11,14
33:24 34:7,12
34:17,20 35:1
35:8,12 38:8
39:10 41:12,14
44:18 50:15
51:6,20 52:2,7
52:10,20 53:12
53:15 55:5
57:12 58:24
60:23 61:22
62:1,18,21
63:2,7,10,14
**shwartz's**
35:16
**side** 14:4 37:8
38:2 40:24
45:25 47:21
**sides** 63:17
**significant**
19:16 20:16
**similar** 36:17
37:19 38:24
39:11,14
**similarity**
39:12
**single** 7:23
36:19
**singled** 6:8
**sister** 36:5 40:4

**situation** 7:22
**sixty** 7:2,11
**slingshot** 57:19
**slingshots** 54:9
**small** 20:3
**smaller** 46:9
**smith** 2:3 4:21
5:2,13 6:9,16
6:19 7:9,21 8:4
9:12,18,20
10:8,17,21
14:13,16,23
17:9,12,15,25
18:18,20 20:10
20:13 21:12
22:22 23:2,14
25:23 26:4,8
26:11 27:17,19
28:4,7,11,17
29:1,10,14
31:22 32:3,13
34:2 37:9,25
38:4,8 40:6,22
41:6,9 43:6,7
43:17 48:12,18
48:20,24 49:4
61:2 62:11
63:11
**smith's** 35:15
**snope** 18:6
19:14 31:21
**sorry** 13:12
17:25 20:4
31:25 35:3

39:19
**sort** 6:7 37:12
38:11 42:13
48:1 51:12
53:1 55:21
**sounds** 7:9
44:22
**sources** 22:3
24:11 49:12
51:14
**speak** 17:7
21:15
**specific** 8:9
34:11
**specifically**
10:13 11:7
13:18 16:11
18:25 29:21
36:22 37:1
40:15
**specify** 36:9
**speech** 51:3
**split** 63:17
**sports** 30:14
**square** 47:12
**squaring** 50:10
**stage** 13:17
15:8
**standing** 9:6
**start** 5:17
12:20 16:9
19:10,14,18
36:6

**starting** 9:25
**startling** 47:20
**starts** 39:23
**state** 3:15,20
6:25 7:16,25
11:15 14:21
21:4 27:20
41:14 43:21
51:22 53:15,16
54:22,22 57:13
59:6,9,12,23,25
**state's** 4:17
11:21 15:2
60:3,20
**stated** 36:20
**states** 1:15
33:17 42:19
43:15,18 44:14
54:22 59:10
**statistics** 20:17
21:8,13 51:10
**statute** 36:20
53:23 61:10,11
**statute's** 39:12
**stay** 51:6
**step** 12:4,5,5,6
12:13 14:14,20
16:1,1 26:14
26:15,16,17,18
26:23 36:1,2
37:23,23 40:2
41:15 42:11
43:9 46:22
49:14 50:11,15

50:16 51:4,6,8
52:16,18,24,24
53:4,13,16
54:2,3 59:15
59:16
**steps** 40:2 59:5
**stocks** 36:23
39:8
**stop** 24:19
**stopped** 16:23
**street** 2:21 3:6
3:16,21 37:3
64:13
**strike** 15:16
**striker** 37:3
**strikes** 31:23
**strong** 30:20
**strongly** 28:12
**stuff** 37:15
**stun** 47:16
**subject** 31:24
33:18
**subjective**
45:11 46:1
**subjectively**
45:18,19
**substantially**
7:4,7 36:17
37:19 38:24
39:14
**successfully**
32:6
**succinctly**
12:14

**sudden** 32:7
**suddenly** 32:9
**sufficient** 9:22
62:25
**sufficiently**
37:7 54:12
**suggest** 14:25
**suggested**
11:15 31:1,6
49:16 60:20
**suggesting**
16:22
**suggestion**
48:13
**suggests** 28:12
**suite** 2:21
64:13
**suited** 17:4
21:16 25:3
**sum** 40:1
**summary** 38:9
38:11
**support** 37:2
61:24 62:25
63:5,9
**supported**
13:23
**supports** 57:1
**supposed** 46:7
53:20
**supreme** 4:18
15:5 18:23
22:9 25:17
29:10 30:18

31:1 33:2
55:22
**sure** 7:25 9:14
10:14,20 12:3
12:10,15 13:16
14:19 17:13
18:9 19:5,17
20:12 21:18
22:23 24:17
32:2 34:8,25
35:3 52:23
53:9 61:5,25
**surety** 56:25
61:23
**surrebuttal**
61:3
**survey** 20:16
20:18,22 33:2
**surveys** 21:9
**sweep** 57:22
**sweeper** 37:3

**t**

**t** 64:2,2
**take** 4:10 6:4
7:10 15:15
20:3 21:3 23:7
24:18 28:8
38:8 42:17
45:3,7 47:13
53:21 60:20
63:18
**taken** 8:10

**takes** 8:11 40:9
**talk** 14:6 22:24
36:12 53:15
60:22
**talked** 9:5
13:19,20 47:15
**talking** 7:23
11:7 17:12,13
19:20,23 24:12
25:15 29:17
31:7 48:7
55:15 57:21
58:16
**talks** 10:1
50:19,21 51:15
**target** 21:21
30:13
**targeted** 54:24
**taught** 55:6
**tax** 56:15
**taxes** 43:14
44:13 54:25
**teaches** 61:20
**technology**
57:11
**teeing** 45:10
**tell** 12:14 13:10
30:24 41:12
60:17
**tells** 15:18 35:6
**temperature**
49:8
**ten** 4:10 42:5
44:25

**tens** 19:23
60:10
**term** 8:5 19:3
27:11 48:24
**terms** 11:11
**terror** 25:5
**test** 14:11
16:15 17:2,19
17:21 18:14,16
19:6,17 21:14
21:18,19 23:16
24:3,6 25:16
25:17 32:19
35:18 36:2
37:6 40:13
42:13 43:6
45:11 47:6
49:14 50:14
51:5 52:12,13
52:13,17 53:5
53:7,8 54:3
60:5,13
**testimony** 9:8
47:9
**text** 12:2,24
13:4,6,7 14:5
27:14 28:6,20
29:21 34:16,22
47:3 51:9,14
51:15 52:12
**textual** 11:20
12:17,21,22
13:1 15:5
51:24 59:6

**thank** 4:13 5:15
25:9,11 35:10
35:11 58:24,25
59:1 63:12,13
**that'd** 4:12
**theirs** 61:14
**theoretical**
18:9
**thing** 33:3
35:22 36:20
46:1 49:25
52:21 56:10
**things** 6:14,23
7:7 10:4 16:15
18:11 21:9
23:8,11 39:6,6
43:12 50:20
57:3,4 59:24
**think** 5:18 6:2
6:5,18,21 7:13
7:14,25 9:10
9:11,14,23
11:13,15,21
12:16 14:3
15:3 16:14,16
17:1,21 18:8
19:10,12,19,25
20:1,21,24,24
21:2,10 22:7
23:1,4,5 24:1,7
24:11,15,23
25:1,16,21
26:7 27:24
28:3,7,10

29:25 31:18
33:23 35:18
36:8,13 37:12
37:22 38:16,21
39:3,13,16,25
40:2,8,11,12,15
41:10,17 42:6
42:10,12,16,17
42:23 43:11
45:9 46:1,12
46:14,15,16,19
47:22 48:4,6
49:9,10,11
50:23 51:13
52:22,25 53:10
54:21 55:10,12
55:13,25 56:1
56:19 57:8,20
57:22,23,25
59:2,18 60:7
60:14,20,24
61:7,14
**thinks** 8:1,11
**third** 1:2
**thirty** 45:1,7
**thomas** 18:5
19:12,14 31:21
57:3
**thoughts** 18:7
**thousand** 21:5
**thousands** 20:6
**threat** 43:4
46:25 54:14,18
54:25 55:8,11

55:12,21,24
**three** 4:11,24
5:4 29:10 42:3
44:21 45:2,5
**threshold**
11:20 15:8
20:25
**thrown** 20:6
**tight** 57:9
**tighter** 57:9
**time** 4:9 5:3
14:1 16:3,4
33:9 42:4 50:9
54:16
**toasty** 48:25
**today** 4:9,20
16:13,22 31:8
37:8
**together** 4:4
20:7 49:16
51:24 54:11
**told** 13:12
18:23 39:24
**tomorrow** 16:6
**took** 42:13
**tools** 32:21,22
**tracks** 39:16
**trad** 13:3
**tradition** 4:19
12:19 13:5,17
13:19,24 14:11
15:3,19,22
27:21 31:3
34:5,23 40:3

40:14 47:3
52:19 54:4
55:8 57:8,8,21
58:2,4,5,8,22
59:9 60:15,22
61:21 62:3,8,8
**traditional**
13:21 15:9
**traditions**
56:23
**transcribed**
2:19
**transcript**
63:16 64:4
**trap** 54:8
**treat** 32:17
**treated** 11:22
**trenton** 3:18,23
**trial** 7:9
**trouble** 57:7
**true** 18:9 46:21
47:13 52:16
57:22,23 64:5
**trust** 17:23
**try** 18:12
**trying** 21:19
23:18 24:18
34:8 46:4 53:6
**tuesday** 1:17
**turn** 4:2
**turned** 48:20
**twelve** 41:22
58:20

**twenty** 45:7
**two** 8:3 12:16
19:5 29:10,13
40:11,12 42:1
42:3,19 43:15
44:21 45:2,5
48:10 49:14
50:16 53:24
59:5
**type** 7:23 8:1
19:21 20:12
25:4 29:20
**types** 10:7
16:21 23:8
24:21 60:9
**typically** 50:24

**u**

**u.s.** 1:2 2:4
**uh** 28:2
**ultimate** 14:12
14:13 22:14
**ultimately**
14:10 37:24
46:19 59:14
**unanimous**
36:4 51:1
**unconstitutio...**
5:24 11:17
12:1 22:16
**unconstitutio...**
44:3,4
**under** 5:21
14:5 33:25

57:5 63:18
**underlying** 5:6
**understand**
11:23 17:13
34:8,23 38:1
38:25 40:20
41:23 51:14,19
51:24 58:15
**understanding**
41:4,10 43:17
51:11
**understands**
42:25
**understood**
15:23 21:23
40:22 41:9
51:25 52:10
63:7
**undetermined**
40:24
**undisputed**
43:12
**unique** 36:6
**united** 1:15
33:17 54:22
**unlawful** 30:6
**unlawfully**
30:9,11
**unnecessary**
47:24
**unprecedented**
57:11
**unquestionably**
59:22

**unquote** 42:21
**unregulatable**
18:4
**unsuitable**
18:12
**unusable** 18:15
**unusual** 13:24
15:22 16:12
22:3,4,5,8,24
24:3,12,14
25:16 26:13,14
26:22,22 28:24
31:3,9,11 34:5
48:1,2,2,7,10
48:20 49:12,13
49:16,19
**unusually**
48:14,17 55:14
**usage** 31:23,24
32:4,11 33:17
**use** 4:20 12:5,7
13:8,13,14,19
13:25 14:1,11
15:16 16:1,2,2
16:22,25 17:1
18:16 19:6
20:2,12 21:20
22:5,17 24:23
25:20,20,22
26:1,1 27:5,9
28:24 29:2,2,3
29:5,7,8,18,20
30:6 31:15
32:19 35:5,16

35:18 36:1
40:14,15,20,22
41:8,15,17,24
42:6,11,12
44:11,20,25
45:1,13,20,24
46:9,10 49:21
50:11,13,21
51:7,9,14 52:1
52:3,24 54:2
55:23,24 56:11
56:22 57:23
58:6,7,8 59:2
59:15 60:4,12
60:14,14 61:18
**used** 13:18 16:5
16:23 20:9
22:3 24:1
25:17 30:6,12
30:12 44:24
45:6 48:24
61:23
**useful** 32:23
33:21 48:5
**users** 17:15
**uses** 19:9 21:22
21:23 22:2
40:16 41:19
46:21
**using** 17:6 19:3
24:5 25:5
29:24 30:2,9
30:10 45:4,5

**usual** 22:5
49:20,21
**usually** 19:3

**v**

**v** 3:8 4:4
**va** 3:7
**variation** 7:11
43:23 56:22
**various** 36:24
50:19
**versus** 13:4
17:2 21:7,7
57:5
**view** 14:3 15:12
48:16 55:7
57:13 60:3
**views** 6:3 45:25
**violate** 61:11
**vogue** 16:7
**voice** 17:7
21:16
**voluminous**
10:18

**w**

**wake** 35:23
**walls** 23:21
49:7
**want** 5:3 6:22
6:23 7:18
10:12 16:20
17:12 19:5
21:23 23:12,17
32:25 34:8

35:15 39:18
47:7,8 56:5
60:4,13
**wanted** 5:14,17
10:7
**wanting** 9:7
**wants** 10:13
22:24
**washington**
3:11
**waste** 5:3
**way** 5:2 7:14,15
7:17 9:21
12:17,18 13:6
15:5 17:21
21:18 22:8,9
22:11 23:6
24:3,9 26:16
32:6 34:15
37:12 38:10,12
42:10,10,12
44:6 47:11
48:24 49:13,15
49:21 53:8
57:25,25 58:13
58:23 60:2,7
61:19
**ways** 30:7 49:1
56:21
**wbergstrom**
3:9
**we've** 22:19
28:24 53:8
55:17 56:21

**weapon** 22:19
22:24,24 24:15
31:8,10,12
32:5 33:5 41:2
53:19
**weapons** 5:11
5:21 13:25
14:1 16:3 22:6
24:14 26:9
32:4 33:9
35:24 36:8
43:3,22 47:1
54:24 57:17,22
58:3,11,12
**weeks** 29:10
**weird** 46:3
**welcome** 6:3
**went** 7:10
10:14 54:4,5
**wesson** 29:11
29:14
**wilkinson**
37:13
**william** 3:8
**win** 60:1
**word** 15:12
18:20
**words** 29:14
**work** 24:2
50:24 60:2
63:15
**worked** 59:8
**works** 41:25

**world** 34:23
40:16 42:1,9
45:14,16,22,24
46:21,24 47:23
**worried** 61:16
**wright** 2:19
64:4,10
**wrong** 55:12
60:11

**x**

**x** 1:4,8,14

**y**

**yards** 45:15
**yeah** 9:19
15:25 20:21
21:14 22:2
39:13 43:20
46:14 48:22
55:10 57:20
62:3,21
**year** 43:16
58:18
**years** 18:10
**yup** 5:16

**z**

**zone** 46:3