**Nos. 24-2415, 24-2450, 24-2506**

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

————————

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, et al.,

*Appellants-Cross-Appellees*,

v.

ATTORNEY GENERAL NEW JERSEY, et al.,

*Appellees-Cross-Appellants*.

*(additional captions listed on inside cover)*

————————

On Appeal from the United States District Court for the District of New Jersey,
Nos. 1-18-cv-10507, 1-22-cv-04397, 1:22-cv-04360

————————

## SUPPLEMENTAL BRIEF FOR APPELLANTS-CROSS-APPELLEES BLAKE ELLMAN, THOMAS R. ROGERS, MARC WEINBERG, AND ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS

————————

DANIEL L. SCHMUTTER
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, NJ 07450
(201) 967-8040
dschmutter@hartmanwinnicki.com

PAUL D. CLEMENT
ERIN E. MURPHY
 *Counsel of Record*
MATTHEW D. ROWEN
NICHOLAS A. AQUART
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Counsel for Appellants-Cross-Appellees Blake Ellman, Thomas R. Rogers, Marc Weinberg, and Association of New Jersey Rifle and Pistol Clubs*

July 10, 2026

―――――――――

MARK CHEESEMAN, TIMOTHY CONNELLY, FIREARMS POLICY COALITION, INC.,

*Appellants-Cross-Appellees*,

v.

ATTORNEY GENERAL NEW JERSEY, et al.,

*Appellees-Cross-Appellants*.

―――――――――

BLAKE ELLMAN; THOMAS R. ROGERS; ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC.,

*Appellants-Cross-Appellees,*

v.

ATTORNEY GENERAL NEW JERSEY, et al.,

*Appellees-Cross-Appellants*.

―――――――――

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES............................................................................... ii

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 2

I.     *Wolford* Confirms That New Jersey's Sweeping Ban On Common Arms Is Presumptively Unconstitutional........................................................ 2

II.    *Wolford* And *Hemani* Confirm That New Jersey's Sweeping Ban On Common Arms Is Inconsistent With Historical Tradition ............................. 5

CONCLUSION ............................................................................................... 7

CERTIFICATE OF BAR MEMBERSHIP

CERTIFICATE OF COMPLIANCE WITH WORD COUNT

IDENTICAL PDF AND HARD COPY CERTIFICATE

VIRUS SCAN CERTIFICATE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*District of Columbia v. Heller*,
554 U.S. 570 (2008)........................................................................ 3, 4, 5, 7

*Range v. Att'y Gen.*,
124 F.4th 218 (3d Cir. 2024)...............................................................4

*United States v. Hemani*,
146 S.Ct. 1677 (2026)...................................................................... 1, 6, 7

*W. Va. Bd. of Educ. v. Barnette*,
319 U.S. 624 (1943)...............................................................................5

*Wolford v. Lopez*,
2026 WL 1825723 (U.S. June 25, 2026) ..................................................... *passim*

**Constitutional Provision**

U.S. Const. amend. II...............................................................................4

**INTRODUCTION**

*Wolford v. Lopez*, No. 24-1046 (U.S. June 25, 2026), and *United States v. Hemani*, 146 S.Ct. 1677 (2026), confirm what should have been clear since *Bruen* (if not since *Heller* and *McDonald*):  New Jersey's sweeping ban on scores of common semiautomatic rifles, shotguns, and pistols, as well as the magazines that enable them to function as intended, violates the Second Amendment.  *Wolford* held unconstitutional a provision of Hawaii law that made it a crime to enter private property open to the public while carrying a firearm without the proprietor's express authorization.  And *Hemani* held unconstitutional an effort to subject an individual to imprisonment and lifetime disarmament simply because he consumed marijuana a few times a week and owned a handgun.  The reasoning in both decisions not only reinforces *Bruen*'s plain-text and historical-tradition framework, but confirms that considerations outside the Constitution's plain text have no role to play in the threshold plain-text analysis, and that general public-safety concerns and strained historical analogies do not suffice to sustain restrictions on arms-bearing conduct. Under a faithful application of those principles, the provisions of New Jersey law challenged here cannot stand.

## ARGUMENT

**I.    *Wolford* Confirms That New Jersey's Sweeping Ban On Common Arms Is Presumptively Unconstitutional.**

*Wolford* reiterated that all "Second Amendment challenge[s]" must "beg[i]n by asking whether the restrictions imposed by the challenged law fall within the plain text of the Second Amendment." 2026 WL 1825723, at *9-10. And it made clear beyond cavil that considerations that find no purchase in the plain text have no role to play in answering that question. *Id.* Hawaii argued that its law did not restrict conduct covered by the plain text, and thus did not require any historical scrutiny at all, because it regulated only property-default rules. To try to prove as much, Hawaii "launche[d] into a lengthy discussion of historical materials" and extra-textual legal "precedents." *Id.* at *10. The Supreme Court rebuffed that effort to evade historical-tradition scrutiny, explaining that "all these authorities" Hawaii cited "are out of place at *Bruen*'s first step." *Id.* That stage of the inquiry asks "simply whether a challenged law falls within the Second Amendment's 'plain text.'" *Id.* Because Hawaii's law restricted the ability to "carry handguns for self-defense," it plainly did. *Id.* at *9-10.

Just as Hawaii did in *Wolford*, New Jersey has tried to evade historical scrutiny by smuggling extra-textual considerations into the plain-text inquiry. According to New Jersey, its laws prohibiting law-abiding citizens from keeping or bearing scores of firearms do not restrict conduct covered by the plain text at all unless those arms

2

are "in common use today for self-defense." N.J.Opening.Br.13. New Jersey has further argued that *Bruen*'s plain-text analysis requires an exhaustive review of the banned firearms' historical pedigree, N.J.Br.15-17, their design features, N.J.Br.17-19, and their lethality, N.J.Br.19-22, as well as a comparison to military-grade firearms, N.J.Br.22-24, and consideration of their actual use in self-defense scenarios and by criminals in mass shootings, N.J.Br.25-26. In New Jersey's view, such extra-textual considerations should be considered at *Bruen*'s first step because *Bruen*'s "threshold inquiry" (supposedly) "asks whether" the weapons it bans "fall 'with[in] the historical understanding of the scope of the right.'" N.J.Br.13 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 625 (2008)).

That attempt to collapse *Bruen*'s distinct analytical stages was always wrong, but it is unquestionably so now. *Wolford* did not mince words: It is at *Bruen*'s "second step," not its first, that courts must turn to an "exploration of the historical understanding of the scope of the right the Constitution codified." 2026 WL 1825723, at *10. So, as to the question whether New Jersey may "smuggle additional limits"—e.g., arguments about a firearm's commonality, history, design features, and purported lethality—"into the plain-text stage of the inquiry, … [t]he answer is and always has been no." *Id.* at *14 n.1 (Barrett, J., concurring).

Under the correct standard, the plain-text inquiry is straightforward here. The Second Amendment's text does not draw any common/uncommon distinction, let

alone any distinction based on "lethality," or "design features," or the frequency with which criminals use and abuse a particular weapon. It covers all "Arms," full stop. *See* U.S. Const. amend. II. And the "defin[ition]" of arms—"all instruments that constitute bearable arms," *Range v. Att'y Gen.*, 124 F.4th 218, 228 (3d Cir. 2024) (en banc) (quoting *Heller*, 554 U.S. at 582), including "any thing that a man … takes into his hands, or useth in wrath to cast at or strike another," *Heller*, 554 U.S. at 581—easily encompasses the laundry list of rifles, shotguns, and pistols New Jersey has banned. ANJRPC.Opening.Br.25-28. As *Wolford* makes plain, that suffices to render the conduct in which plaintiffs wish to engage—keeping and bearing those arms—presumptively protected, and to shift to New Jersey the burden to prove that its ban is consistent with historical tradition. 2026 WL 1825723, at *6.

*Wolford* also confirms that prohibiting law-abiding citizens from keeping or bearing magazines capable of holding more than ten rounds restricts conduct "within the plain text of the Second Amendment." *Id.* at *9. New Jersey has argued that *ANJRPC II* erred in holding magazines are "arms" covered by the plain text because it "did not conduct" "the historically-driven analysis of 'arms' the Supreme Court now requires, or consider the historical evidence the State has thus now compiled on that score." N.J.Br.44 (citation omitted). But, again, "all these authorities … are out of place at *Bruen*'s first step." *Wolford*, 2026 WL 1825723, at *10. All that matters is whether magazines are used as bearable arms. They plainly are.

4

## II. *Wolford* And *Hemani* Confirm That New Jersey's Sweeping Ban On Common Arms Is Inconsistent With Historical Tradition.

There is no need for this Court to conduct historical analysis here, as the Supreme Court has already identified the relevant tradition:  The state cannot ban arms that are "in common use … for lawful purposes." *Heller*, 554 U.S. at 624-25. That said, when it comes to historical tradition, much of New Jersey's defense depends on exactly the kind of high-level-of-generality analogizing that *Wolford* and *Hemani* emphatically rejected.  New Jersey has argued, for example, that this Nation's historical tradition is one of deferring to state legislatures on whether certain arms are just too dangerous in the wrong hands to allow law-abiding citizens to keep them.  N.J.Br.10.  It was the dissent in *Wolford*, however, that condoned deference to "the will of legislatures."  2026 WL 1825723, at *21 (Jackson, J., dissenting).  The majority, on the other hand, reasoned that "local attitudes can neither shrink nor inflate the meaning of fundamental Bill of Rights guarantees that apply to the States through the Fourteenth Amendment." *Id.* at *11.  And rightly so. The Bill of Rights exists "to withdraw certain subjects from the vicissitudes of political controversy" and put them "beyond the reach of majorities and officials," thereby promising a uniform baseline of constitutional rights to all Americans. *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943).  States thus cannot infringe Second Amendment rights in the name of federalism any more than they can abridge other constitutional protections.

In any event, New Jersey conducts its historical analysis "at too high a level of generality." *Wolford*, 2026 WL 1825723, at \*16 (Barrett, J., concurring). Instead of examining how and why historical laws operated, the state tries to extrapolate from a hodge-podge of demonstrably distinguishable laws exceedingly high-level abstractions, like the notion that states may ban firearms "that have spread in society and pose[] extreme safety threats," are "particularly dangerous," or are "used in crime." N.J.Br.45-46. Once one actually examines the laws it has to offer, however, "[t]he gap between the State's … analogues and [New Jersey's] rule is just too wide." *Wolford*, 2026 WL 1825723, at \*13.

None of that can be reconciled with *Wolford*, which instructs that courts "must" engage in a meaningful why-and-how analysis. *Id.* at \*6; *see also id.* at \*16 (Barrett, J., concurring) (rejecting state's efforts to conduct historical analysis "at too high a level of generality"). Nor does it comport with *Hemani*, which rejects resort to general public-safety interests that do not map on to the actual how or why of either the historical or the challenged laws. *See* 146 S.Ct. at 1691-92. Laws restricting the storage of gunpowder, use of trap guns, and concealed carry of Bowie knives, clubs, slungshots, and pistols self-evidently "operated in different ways" than New Jersey's all-out ban on a host of rifles, shotguns, pistols, and magazines. *See id.* at 1687; ANJRPC.Reply.Br.23-29, 46-47. And the machine gun laws the state invokes just prove that the *real* historical tradition in this Nation is one of

6

restricting access only to "dangerous and unusual" arms, not those commonly kept and carried for lawful purposes.  *See Heller*, 554 U.S. at 627.  Because New Jersey's "contemporary law" does not in any way "mirror[] a well-established historical analogue in purpose and operation," *Hemani*, 146 S.Ct. at 1686, it cannot pass muster.

**CONCLUSION**

This Court should reverse in part and enjoin the challenged provisions.

Respectfully submitted,

DANIEL L. SCHMUTTER
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, NJ 07450
(201) 967-8040
dschmutter@hartmanwinnicki.com

s/Erin E. Murphy
PAUL D. CLEMENT
ERIN E. MURPHY
 *Counsel of Record*
MATTHEW D. ROWEN
NICHOLAS A. AQUART
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Counsel for Appellants-Cross-Appellees Blake Ellman, Thomas R. Rogers, Marc Weinberg, and Association of New Jersey Rifle and Pistol Clubs*

July 10, 2026

**CERTIFICATE OF BAR MEMBERSHIP**

The undersigned hereby certifies pursuant to L.A.R. 46.1 that Erin E. Murphy was duly admitted to the Bar of the United States Court of Appeals for the Third Circuit on March 25, 2013, and is presently a member in good standing of the Bar of said court.

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT**

I hereby certify that this brief complies with the type-volume requirements and limitations of Fed. R. App. P. 32(a). Specifically, this brief contains 1,498 words in 14-point Times New Roman font.

**IDENTICAL PDF AND HARD COPY CERTIFICATE**

The undersigned hereby certifies that this brief complies with L.A.R. 31.0(c) because the text of the electronic brief is identical to the text in the paper copies.

**VIRUS SCAN CERTIFICATE**

The undersigned hereby certifies that this brief complies with L.A.R. 31.0(c) because the virus detection program SentinelOne, version 21.7.7.40005, has been run on the file and no virus was detected.

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/Erin E. Murphy</u>
Erin E. Murphy