Nos. 24-2415, 24-2450, 24-2506

# In The United States Court of Appeals For the Third Circuit

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC.; et al.,

*Plaintiffs-Appellees*,

v.

ATTORNEY GENERAL NEW JERSEY; et al.

*Defendants-Appellants*.

---

MARK CHEESEMAN; et al.,

*Plaintiffs-Appellants*,

v.

ATTORNEY GENERAL NEW JERSEY; et al.

*Defendants-Appellees*.

---

BLAKE ELLMAN; et al.,

*Plaintiffs-Appellants*,

v.

ATTORNEY GENERAL NEW JERSEY; et al.

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(Nos. 1-18-cv-10207, 1:22-cv-4360, 1:22-cv-04397)
(Hon. Renee Marie Bumb, Presiding)

*CHEESEMAN* **APPELLANTS-CROSS-APPELLEES**
**SUPPLEMENTAL BRIEF**

Bradley Lehman
GELLERT SEITZ BUSENKELL &
BROWN
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
(302) 425-5800
(302) 425-5814 (fax)
blehman@gsbblaw.com

David H. Thompson
Peter A. Patterson
William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com

*Counsel for Appellants-Cross-Appellees Mark Cheeseman, Timothy Connolly,
and Firearms Policy Coalition, Inc.*

**TABLE OF AUTHORITIES**

<u>**Cases**</u>                                                                                             <u>**Page(s)**</u>

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)..................................................................................2, 3

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    605 U.S. 280 (2025).....................................................................................3

*United States v. Hemani,*
    146 S. Ct. 1677 (2026).......................................................................1, 4, 5, 6

*Wolford v. Lopez,*
    No. 24-1046, 2026 WL 1825723 (U.S. June 25, 2026).......................1, 2, 3, 5

The Supreme Court's decisions in *Wolford v. Lopez,* No. 24-1046, 2026 WL 1825723 (U.S. June 25, 2026), and *United States v. Hemani,* 146 S. Ct. 1677 (2026), both support holding that New Jersey's ban on so-called "assault firearms" violates the Constitution.

**First**, *Wolford* makes clear that all firearms New Jersey bans as "assault firearms" are "arms" within the presumptive protection of the Second Amendment. New Jersey's primary argument in this appeal is that its ban on AR-15s and similar styled rifles is constitutional because, although they are weapons, they are not "arms" within the meaning of the Second Amendment's "plain text." New Jersey describes this first step inquiry as requiring this Court to "ask[] whether these weapons fall 'with[in] the historical understanding of the scope of the right.' " Br. of Appellees/Cross-Appellants, Doc. 36 at 13 (Jan. 8, 2025) ("State Br."). Correctly accounting for this "historical understanding" entails, in the State's framing, analyzing "the objective features and actual uses of the weapon" to determine whether it is "well adapted for self-defense" and "in common use" for that purpose, or whether it has "characteristics [that] make it excessively dangerous and ill-suited and disproportionate to self-defense." *Id.* at 14–15 (quotation marks and citations omitted). Among other things, New Jersey argues that having a "military heritage" makes a weapon less likely to be considered an "arm" under this convoluted definition, *id.* at 16, as does the fact that it is "capable of inflicting enormous damage

1

on the human body," *id.* at 20. New Jersey dismisses Plaintiffs' contrary argument—that neither "common use" nor any of these other requirements are part of the "plain text," Cheeseman Br., Doc. 32 at 25–30 (Nov. 18, 2024), as "myopic[.]" State Br. at 27.

The Supreme Court in *Wolford* explicitly rejected New Jersey's argument and adopted Plaintiffs' view. Laying out the *Bruen* framework, the Court took pains to stress how straightforward the analysis at the first step is in most cases. In a case such as this one, the *only* predicate issue is whether the law "concern[s] any form of 'Arms,' *i.e.* any weapon customarily used for offensive or defensive purposes[.]" *Wolford*, 2026 WL 1825723, at *6. Arguments, like New Jersey's, that are based not in the "plain text" but which attempt to divine " 'the historical understanding of the scope of the right,' " State Br. at 13 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 625 (2008)), "are out of place at *Bruen*'s first step. At that stage, as we have explained, the question is simply whether a challenged law falls within the Second Amendment's plain text," *Wolford*, 2026 WL 1825723, at *10 (quotations omitted).

New Jersey's approach is the one for which Justice Jackson argued in dissent, under which she would have, at step one, "defin[ed] the character of the right" in part through the "consideration of history." *Id.* at *27 (Jackson, J., dissenting) (citation and quotation marks omitted). But as Justice Barrett explained in her concurrence, that attempt to "smuggle additional limits, drawn from our regulatory

2

tradition, into the plain-text stage of the inquiry" has *never* been the test. *Id.* at *14 n.1 (Barrett, J., concurring).

Applying *Wolford* here is easy: Plaintiffs wish to possess firearms that New Jersey bans, and *Wolford* makes clear that all firearms are "arms." The plain text of the Second Amendment is therefore implicated, the first step of *Bruen* satisfied, and the burden is on New Jersey to offer a historical justification for its ban on some of the most popular firearms in America.

**Second**, *Wolford* clarified the historical inquiry that this Court is to conduct at *Bruen*'s second step to determine whether a law is ultimately constitutional. In addition to "relevantly similar," historical analogues must be "widespread, well-known, and widely accepted" to be informative about the scope of the right. *Id.* at *13–14. Here, nothing the State could cite would check all of those boxes because, as *Heller* already explained, the robust and well-established practice at the Founding and through subsequent periods of our history has been that "the sorts of weapons protected were those in common use at the time." 554 U.S. at 627 (quotations omitted). At the Founding, that meant that the muskets and rifles that militia members brought with them for militia service were protected, and today that means that the AR-15, AK-47, and other semiautomatic firearms that are "both widely legal and bought by many ordinary consumers," *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 297 (2025), are equally protected.

3

**Third**, *Hemani* and *Wolford* both rejected attempts to describe the purpose or operation of historical laws at a high level of generality or to substitute post-hoc rationales for historically and textually attested ones to make them more like modern restrictions. In *Hemani*, the government sought to justify disarming a person who used marijuana about every other day by pointing to historical laws governing "habitual drunkards." 146 S. Ct. at 1686. The Government claimed that the habitual drunkard laws, which sometimes committed drunkards to work houses or to asylums, sometimes approved the appointment of guardians to manage them, and sometimes required them to post surety bonds to guarantee their good behavior, were similar to the federal law that disarmed habitual users of controlled substances. The Government argued that both the modern and historical laws were aimed at people who "regularly use intoxicants" and sought "to protect the public from 'unusually dangerous' individuals who commit 'violent crimes.' " *Id.* at 1687. The Court rejected that analogy, in large part because it did not accept the Government's self-serving gloss on the alleged goals and operation of the historical habitual drunkard laws. *Id.* ("They targeted different kinds of people, did so for different purposes, and operated in different ways."). The Court noted that many people of the Founding generation, including many of the Founding Fathers themselves, "regularly used intoxicants" and were not disarmed; the habitual drunkard laws were applied only to those who drank to such excess that they could be judged mentally incompetent or

4

unable to manage their own affairs. *Id.* at 1688. And it also found that historical evidence did not support the claim that drunkards were subject to restrictions because they were particularly "dangerous." Rather, restrictions were generally put in place to prevent drunkards from wasting their estates by spending everything they had on alcohol—"nothing like the purpose the government ascribes to § 922(g)(3)'s unlawful user provision." *Id.* at 1690–91.

*Wolford* displays the same critical analysis. Whereas the dissent was willing to accept the argument that the historical laws cited by Hawaii established that "States routinely required affirmative consent for armed carry onto private property to vindicate the rights of property owners," *Wolford*, 2026 WL 1825723, at *29 (Jackson, J., dissenting), the majority rejected such broad reasoning because the laws Hawaii relied on "consist almost entirely of laws that prohibited unauthorized hunting … on someone else's private property," *id.* at *12 (majority op.). The dissent's reading of the history was "pitched at too high a level of generality" to properly function within a *Bruen* analysis. *Id.* at *16 (Barrett, J., concurring).

Applying that specific guidance here is fatal to New Jersey's claimed historical support, for the very reasons Plaintiffs have already outlined in their briefing. New Jersey relies on laws prohibiting the setting of "trap guns," State Br. 46, but these laws did not prohibit possession of any particular type of firearm but instead outlawed a particularly dangerous and indiscriminate *use* of them,

Cheeseman Resp., Doc. 49 at 38 (Feb. 7, 2025). New Jersey argues that Founding-era laws against " 'the aggregation of large quantities of gunpowder' " are like the ban on AR-15s because gunpowder stored improperly could " 'kill many people at once if ignited.' " State Br. at 47 (quoting *Ocean State Tactical LLC v. Rhode Island*, 95 F.4th 38, 49 (1st Cir. 2024)). This is a stretch beyond anything the Court dealt with in *Hemani* or *Wolford*. *Heller* already identified the purpose of these laws: fire safety. 554 U.S. at 632. And *Wolford* utterly rejects the sort of reasoning that would stretch that motivation to cover "safety from anything that could kill" as seems to be New Jersey's argument. *See* Cheeseman Resp. at 38–39. Finally, New Jersey points to a series of weapons restrictions, all originating at a much later date in our history, and few actually banning the weapons they dealt with. State Br. 47–57; Cheeseman Resp. at 40–44. As plaintiffs have argued, to the extent those laws could be considered constitutional, their constitutionality hinged on application of *Heller*'s "common use" principle. *See* Cheeseman Resp. at 41. As such, "the way [these arms restrictions] worked in the past differs significantly from how [New Jersey's ban on common semiautomatics] works today." *Hemani*, 146 S. Ct. at 1691.

This Court should hold that New Jersey's ban on "assault firearms" is unconstitutional under the Second and Fourteenth Amendments.

Dated: July 10, 2026

| | |
|---|---|
| Bradley Lehman | /s/David H. Thompson |
| GELLERT SEITZ BUSENKELL & BROWN | David H. Thompson |
| | Peter A. Patterson |
| 1201 N. Orange Street, Suite 300 | William V. Bergstrom |
| Wilmington, DE 19801 | COOPER & KIRK, PLLC |
| (302) 425-5800 | 1523 New Hampshire Ave., NW |
| (302) 425-5814 (fax) | Washington, D.C. 20036 |
| blehman@gsbblaw.com | (202) 220-9600 |
| | (202) 220-9601 (fax) |
| | dthompson@cooperkirk.com |

*Counsel for Appellants-Cross-Appellees Mark Cheeseman, Timothy Connolly, and Firearms Policy Coalition, Inc.*

## CERTIFICATE OF COMPLIANCE

In accordance with the Federal Rules of Appellate Procedure and this Court's Rules, I certify the following:

1. This brief complies with the type-volume limitation set forth in this Court's Order dated July 6, 2026, because it contains 1,488 words excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

3. This brief complies with Local Rule 31.1(c). The text of the electronic brief is identical to the text in the paper copies supplied to the Court. Further, VirusTotal Antivirus Software was run on the electronic brief and no viruses were detected.

4. David H. Thompson, Peter A. Patterson, William V. Bergstrom, and Bradley Lehman are all admitted to practice in the Third Circuit Court of Appeals and are members in good standing.

/s/ David H. Thompson
David H. Thompson

*Counsel for Appellants-Cross-Appellees*

8

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25(d) and Local Rule 25.1(b), I hereby certify that on July 10, 2026, I electronically filed the foregoing supplemental brief with the Clerk of the Court by using the appellate CM/ECF system. Service on all counsel for all parties has been accomplished via ECF.

/s/ David H. Thompson
David H. Thompson

*Counsel for Appellants-Cross-Appellees*