# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

Nos. 24-2415, 24-2450, 24-2506

---

ASSOCIATION OF NEW JERSEY RIFLE
AND PISTOL CLUBS, INC., ET AL.,

*Appellants/Cross-Appellees,*

v.

ATTORNEY GENERAL OF NEW JERSEY, ET AL.,

*Appellees/Cross-Appellants,*

---

On Appeal from the United States District Court for the
District of New Jersey, Nos. 1:18-cv-10507; 1:22-cv-04360;
1:22-cv-04397 (Hon. Peter G. Sheridan, U.S.D.J.)

---

## MOTION TO STAY MANDATE
## PURSUANT TO FED. R. APP. P. 41(d)(1)

---

JENNIFER DAVENPORT
*Attorney General of New Jersey*

JEREMY M. FEIGENBAUM
*Solicitor General*

JAKE MAZEITIS
*Deputy Attorney General*

Office of the New Jersey Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 080
Trenton, NJ 08625-0080
(609) 414-0197
Jeremy.Feigenbaum@njoag.gov

*Attorneys for Appellees/
Cross-Appellants*

## TABLE OF CONTENTS

ARGUMENT ............................................................................................2

CONCLUSION .................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez,*
585 U.S. 579 (2018) .................................................................................. 11

*Barnett v. Raoul,*
180 F.4th 1035 (7th Cir. 2026) .......................................................... 2, 9

*Bianchi v. Brown,*
111 F.4th 438 (4th Cir. 2024) (en banc) ............................................... 9

*Cameron v. EMW Women's Surgical Ctr., P.S.C.,*
595 U.S. 267 (2022) .................................................................................. 11

*Defense Distributed v. Attorney General,*
972 F.3d 193 (3d Cir. 2020) ................................................................... 15

*DSSA v. Del. Dep't of Safety & Homeland Sec.,*
108 F.4th 194 (3d Cir. 2024) .......................................................... 11, 14

*Duncan v. Bonta,*
133 F.4th 852 (9th Cir. 2025) (en banc) ............................................... 9

*Hanson v. District of Columbia,*
120 F.4th 223 (D.C. Cir. 2024) ............................................. 9, 11, 12, 14

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.,*
606 U.S. 146 (2025) .................................................................................. 8

*NAGR v. Lamont,*
153 F.4th 213 (2d Cir. 2025) ................................................. 9, 11, 12, 13

*Nara v. Frank,*
494 F.3d 1132 (3d Cir. 2007) ................................................. 4, 5, 8, 14

*OST v. Rhode Island,*
145 S.Ct. 2771 (2025) ............................................................8

*OST v. Rhode Island,*
95 F.4th 38 (1st Cir. 2024) ....................................................9

*Reed v. Goertz,*
598 U.S. 230 (2023) (Alito, J., dissenting) ...........................7

*Shirey v. Bensalem Tp.,*
663 F.2d 472 (3d Cir. 1981)..................................................15

*Trump v. CASA,*
606 U.S. 831 (2025) .............................................................10

*United States ex rel. Chandler v. Cook County,*
282 F.3d 448 (7th Cir. 2002) (Ripple, J., in chambers) ........5, 9

*Warner-Lambert Co. v. United Retail & Wholesale Employee's Teamster*
  *Local No. 115 Pension Plan,*
791 F.2d 283 (3d Cir. 1986)..................................................5, 8

**Orders**

*Castro v. DHS,*
No. 16-1339 (3d Cir. Nov. 23, 2016) ....................................3, 7

*Devengoechea v. Venezuela,*
No. 24-1518 (3d Cir. July 31, 2024) .....................................3

*Doe v. Centerville Clinics, Inc.,*
No. 23-2738 (3d Cir. Oct. 21, 2024).....................................3, 5

*In re: Venoco, LLC,*
No. 20-1061 (3d Cir. June 7, 2021) ......................................3

*Khalil v. Trump,*
Nos. 25-2162 & 25-2357 (3d Cir. June 4, 2026)..................3, 6

iv

*Litman v. Cellco Partnership,*
No. 08-4103 (3d Cir. July 7, 2010) .......................................................3, 4

*Logic Tech. Dev., LLC v. FDA,*
No. 22-3030 (3d Cir. Jan. 4, 2024) .......................................................3, 6

*Silver v. Omnicare,*
No. 16-4418 (3d Cir. Dec. 14, 2018) .........................................................3

*United States v. Cruz,*
No. 08-4361 (3d Cir. Apr. 14, 2010) .......................................................3, 5

*United States v. Hill,*
No. 19-2532 (3d Cir. Dec. 22, 2020) ..........................................................3

*United States v. Mitchell,*
No. 09-4718 (3d Cir. Sept. 19, 2011) (en banc) ..................................3, 10

*United States v. Nasir,*
No. 18-2888 (3d Cir. Jan. 8, 2021) (en banc) .......................................3, 9

*United States v. Ryan,*
No. 18-2441 (3d Cir. May 10, 2024) ..........................................................3

*Waterfront Commission v. Governor of New Jersey,*
No. 19-2458 (3d Cir. July 20, 2020) ......................................................3, 6

*Williams v. Attorney General,*
No. 16-3816 (3d Cir. May 17, 2018) ..........................................................3

## Other Authorities

Petition for Certiorari *Viramontes v. Cook County,*
No. 25-238 (Aug. 27, 2025) ......................................................................7

**Rules**

Fed. R. App. P. 40 ...................................................................................... 1

Fed. R. App. P. 41 ................................................................................. 1, 8

Sup. Ct. R. 13 .......................................................................................... 1

The State moves for a stay of this Court's mandate pending submission of its petition for certiorari to the U.S. Supreme Court in this matter. *See* Fed. R. App. P. 41(d)(1).[1] The State is mindful that a majority of this en banc Court has already held that some of its statutes violate the Second Amendment. But the State is also aware that this Court nevertheless has repeatedly stayed issuance of its mandates, even after ruling against a movant in a published opinion on the merits, pending resolution of any petitions for certiorari. That does not require the Court to rethink its decision on the merits in any respect. It merely requires this Court to follow its time-honored standards for staying its own mandates.

This is the paradigmatic case in which this Court stays its mandate pending potential further review. This Court looks principally to the likelihood of certiorari, possibility of reversal, and irreparable harm absent

---

[1] This motion is timely. This Court entered judgment on July 17, 2026. Absent this stay, the Court's mandate will issue no sooner than August 7, 2026. *See* Fed. R. App. P. 40(d)(1) & 41(b). The State's petition is due October 15, 2026. *See* Sup. Ct. R. 13.1. Any stay would last until the Supreme Court resolves the petition or, if it grants the petition, until it decides the case. Pursuant to Fed. R. App. P. 41(b), the filing of this motion to stay the mandate automatically tolls the mandate's issuance until this Court resolves the motion. If this Court ultimately denies the State's motion, Rule 41(b) clarifies that the mandate will still not issue a week after this Court's denial, which will be necessary to allow the State to provide guidance to law enforcement and private parties.

1

a stay. These issues are obviously worthy of certiorari; the Court already granted review to decide whether States can restrict access to semi-automatic assault rifles, and the constitutionality of LCM restrictions are now the subject of a circuit split. There is a reasonable possibility for the State to prevail on appeal, since every other circuit to address these issues disagrees with the Third Circuit, including most recently in *Barnett v. Raoul*, 180 F.4th 1035 (7th Cir. 2026). The State will otherwise suffer irreparable harm, including the inability to enforce its sovereign laws, which will in turn result in practical chaos if thousands of weapons are sold and then the Supreme Court later decides the constitutional question differently in *Viramontes*. And the State's request is modest: to keep a 36-year-old status quo in place for months, where Plaintiffs accepted that status quo for years before suing and while litigation played out.

The State recognizes that a majority of this Court has held that its laws are unconstitutional, but it respectfully requests that this Court still stay its mandate given the high likelihood of further review.

## **ARGUMENT**

This Court has repeatedly stayed the mandate in cases after which it had ruled against the movant on the merits, including in cases where

2

this Court sat en banc. *See, e.g.*, *Khalil v. Trump*, Nos. 25-2162 & 25-2357 (3d Cir. June 4, 2026); *Doe v. Centerville Clinics, Inc.*, No. 23-2738 (3d Cir. Oct. 21, 2024); *Devengoechea v. Venezuela*, No. 24-1518 (3d Cir. July 31, 2024); *United States v. Ryan*, No. 18-2441 (3d Cir. May 10, 2024); *Logic Tech. Dev., LLC v. FDA*, No. 22-3030 (3d Cir. Jan. 4, 2024); *In re: Venoco, LLC*, No. 20-1061 (3d Cir. June 7, 2021); *United States v. Nasir*, No. 18-2888 (3d Cir. Jan. 8, 2021) (en banc); *United States v. Hill*, No. 19-2532 (3d Cir. Dec. 22, 2020); *Waterfront Commission v. Governor of New Jersey*, No. 19-2458 (3d Cir. July 20, 2020); *Silver v. Omnicare*, No. 16-4418 (3d Cir. Dec. 14, 2018); *Williams v. Attorney General*, No. 16-3816 (3d Cir. May 17, 2018); *Castro v. DHS*, No. 16-1339 (3d Cir. Nov. 23, 2016); *United States v. Mitchell*, No. 09-4718 (3d Cir. Sept. 19, 2011) (en banc); *Litman v. Cellco Partnership*, No. 08-4103 (3d Cir. July 7, 2010); *United States v. Cruz*, No. 08-4361 (3d Cir. Apr. 14, 2010).

In this case, all of this Court's traditional considerations for staying a mandate point the same way. This Court stays a mandate when there is "(1) a reasonable probability that the Supreme Court will grant certiorari; (2) a reasonable possibility that at least five Justices would vote to reverse this Court's judgment; and (3) a likelihood of irreparable injury

3

absent a stay." *Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007). A stay of the mandate does not require this Court to conclude that a movant is likely correct on the merits—or else no mandate could be stayed, as the movant has always already failed to persuade the Court. Here, especially where the Supreme Court agreed to review the merits of one of the issues, a lopsided split exists on both issues with the vast majority of judges having upheld such state laws, and the State would suffer severe irreparable harm without a stay, the State has met this standard.

1. Begin with the reasonable probability of certiorari and reasonable possibility of reversal. This Court has repeatedly stayed its mandate in at least three different scenarios: where the Court already granted certiorari on a controlling issue; where a circuit split exists; and/or when the issues are of sufficient importance to likely merit further review.

For one, this Court has previously stayed its mandate when the Supreme Court granted certiorari on a controlling issue in a case. *See, e.g.*, Order Granting Stay, *Litman v. Cellco Partnership*, No. 08-4103 (3d Cir. July 7, 2010) (issuing stay where movant argued in a June 4, 2010 motion that the Court had granted an issue "on all fours" with the Third Circuit's case and movant sought to have its case held pending the outcome); Order

4

Granting Stay, *United States v. Cruz*, No. 08-4361 (3d Cir. Apr. 14, 2010) (granting stay merely where movant identified in a March 30, 2010 motion that the Supreme Court granted a question "so broad" the eventual opinion could alter the governing law). In such cases, certiorari is a foregone conclusion—the issue has already merited review—and it is at least plausible that Court would rule the other way on the granted issue.

For another, this Court has long "stay[ed its] mandate pending the running of the time for filing [a] petition of writ of certiorari" when its decision implicates a split—including where this Court's decision was "at odds" with at least "five other circuits that have considered the issue." *Warner-Lambert Co. v. United Retail & Wholesale Employee's Teamster Local No. 115 Pension Plan*, 791 F.2d 283, 286-87 (3d Cir. 1986); *see also United States ex rel. Chandler v. Cook County*, 282 F.3d 448, 451 (7th Cir. 2002) (Ripple, J., in chambers) (staying mandate based on the "conflict among the circuits that have ruled on the matter"); *Nara*, 494 F.3d at 1133 (citing Judge Ripple's opinion in explaining the Third Circuit standard). This Court has done so repeatedly in recent years. *See, e.g.*, Order Granting Stay, *Doe v. Centerville Clinics, Inc.*, No. 23-2738 (3d Cir. Oct. 21, 2024) (granting stay where movant had argued in an October 15, 2024

5

motion that the Third Circuit's decision was "in direct conflict with the Second and Ninth Circuit[s]," one of which was "expressly critical" of the Third Circuit's opinion); Order Granting Stay, *Logic Tech. Dev., LLC v. FDA*, No. 22-3030 (3d Cir. Jan. 4, 2024) (granting stay where Third Circuit expressly "part[ed] ways with the Fifth Circuit"). This does not mean that this Court is reconsidering its view on the merits. Staying the mandate would simply reflect the reality that there is a likelihood of certiorari and at least the "reasonable possibility" of reversal where multiple other circuits resolved the exact same question differently.

And finally, this Court has stayed its mandates even where an issue has not yet been granted and is not yet the subject of a split but is sufficiently important such that certiorari is at least plausible. *See, e.g.*, Order Granting Stay, *Khalil v. Trump*, Nos. 25-2162 & 25-2357 (3d Cir. June 4, 2026) (granting stay where movant argued in a May 22, 2026 motion that the underlying questions had "far-reaching implications" concerning "the reach of various constitutional provisions"); Order Granting Stay, *Waterfront Commission v. Governor of New Jersey*, No. 19-2458 (3d Cir. July 20, 2020) (granting stay where movant argued in a July 14, 2020 motion that the questions implicated significant immunity and Compact Clause

6

issues); Order Granting Stay, *Castro v. DHS*, No. 16-1339 (3d Cir. Nov. 23, 2016) (granting stay where challenge implicated Suspension Clause, despite panel's belief "that current precedent" dictated the outcome).

With this background in mind, there can be no doubt regarding the certworthiness of this petition. The Court has *already* granted certiorari to decide "[w]hether the Second and Fourteenth Amendments guarantee the right to possess AR-15 platform and similar semiautomatic rifles." Petition for Certiorari at i, *Viramontes v. Cook County*, No. 25-238 (Aug. 27, 2025). So the en banc decision that New Jersey's restrictions "on the possession of semi-automatic rifles" are unconstitutional, *see* Op.55, undisputedly merits further review. Indeed, the Supreme Court regularly holds petitions presenting identical issues such that they may be granted, vacated, and remanded following resolution of the argued case. *See Reed v. Goertz*, 598 U.S. 230, 259 (2023) (Alito, J., dissenting) (explaining GVR practice). It is already holding multiple petitions—like *NAGR v. Lamont*, No. 25-421 (AR-15 and LCMs); *Duncan v. Bonta*, No. 25-198 (LCMs); and *Gator's Custom Guns v. Washington*, No. 25-153 (LCMs)—pending resolution of *Viramontes*. Certiorari is far more than plausible.

There is likewise at least a "reasonable probability" that the Court will review the validity of LCM restrictions. *Nara*, 494 F.3d at 1133. For one, last year, three justices had voted for certiorari on the question, even before this Court's decision created a circuit split. *See OST v. Rhode Island*, 145 S.Ct. 2771, 2771 (2025) (noting Justices Thomas, Alito, and Gorsuch would grant the petition for certiorari). For another, this newly-established and expressly acknowledged "circuit split" on LCMs is "likely [to] trigger review in [the Supreme] Court." *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146, 166 (2025). The issues that are the subject of this split implicate critical questions of constitutional interpretation and public safety and are therefore "substantial" in their own right. Fed. R. App. P. 41(d)(1). And at the very least, the Court would hold the LCM issue in this case pending resolution of *Viramontes*—as it has in other petitions, like *Duncan*, even before a split formed.

The lopsided circuit split also reveals "a reasonable possibility that at least five Justices would vote to reverse." *Nara*, 494 F.3d at 1133. The presence of such a conflict evidences not merely a likelihood of certiorari, but that the Justices could reasonably reach the contrary result. *See, e.g.*, *Warner-Lambert*, 791 F.2d at 286-87 (staying mandate where decision is

"at odds" with at least "five other circuits that have considered the is-sue"); *Chandler*, 282 F.3d at 451 (Ripple, J., in chambers) (relying on the "conflict among the circuits that have ruled on the matter"). This Court's opinion conflicts with the equally thoughtful and considered rulings from the First, Second, Fourth, Seventh, Ninth, and D.C. Circuits, all of which upheld assault weapons and/or LCM restrictions. *See OST v. Rhode Island*, 95 F.4th 38 (1st Cir. 2024); *NAGR v. Lamont*, 153 F.4th 213 (2d Cir. 2025); *Bianchi v. Brown*, 111 F.4th 438 (4th Cir. 2024) (en banc); *Barnett v. Raoul*, 180 F.4th 1035 (7th Cir. 2026); *Duncan v. Bonta*, 133 F.4th 852 (9th Cir. 2025) (en banc); *Hanson v. District of Columbia*, 120 F.4th 223 (D.C. Cir. 2024). That nearly *thirty* appellate judges across the ideological spectrum agree with the State's arguments suggests at least a "reasonable possibility" that five Justices would ultimately do the same.

The disagreement among this en banc Court is yet more proof that reversal is at least reasonably possible. Notably, this Court has—sitting en banc—repeatedly granted stays of its mandate in cases where judges were divided. *See, e.g.*, Order Granting Stay, *United States v. Nasir*, No. 18-2888 (3d Cir. Jan. 8, 2021) (granting stay where movant emphasized in a Dec. 21, 2020 motion the divisions within the en banc court); Order

9

Granting Stay, *United States v. Mitchell*, No. 09-4718 (3d Cir. Sept. 19, 2011) (same, where movant had emphasized in an August 8, 2011 motion the division within the en banc Court and conflicting decisions from other federal courts). Here, five members of this Court signed on to meticulous opinions dissenting in full or in part—which raised questions regarding the majority's methodology and conclusions and aligned instead with five other circuits. While their opinions did not persuade a majority, they offer another sign that five Justices could plausibly vote to reverse.

2. In the absence of this stay, the State is likely to suffer irreparable harm—and all the remaining equities point the same way.

a. The State will suffer irreparable sovereign and practical harms during the time period where it cannot enforce its 36-year-old law—especially should the Supreme Court ultimately agree with most circuits that these laws are consistent with the Second Amendment.

Begin with the irreparable sovereign harm. The Supreme Court has repeatedly established that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA*, 606 U.S. 831, 861 (2025) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in

10

chambers)); *see also Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018) (agreeing States are irreparably harmed if prevented from "enforc[ing] [their] duly enacted plans"). After all, because the State "clearly has a legitimate interest in the continued enforceability of its own statutes," *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 277 (2022), this Court "rightly hesitate[s]" to "enjoin enforcement" of a "democratically enacted state law" and instead "err[s] on the side of respecting state sovereignty" while the lawsuit remains pending. *DSSA v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 205-06 (3d Cir. 2024). Relevant here, courts have even made this precise point in the context of assault weapons and LCM challenges. *See, e.g.*, *NAGR*, 153 F.4th at 249; *Hanson*, 120 F.4th at 247. And it applies easily to this case: absent a stay of the mandate, the State's inability to maintain the status quo by enforcing its 36-year-old democratically-enacted law is a real, irreparable harm.

But even though this sovereign injury in maintaining longstanding and duly enacted laws clearly suffices under *CASA* and *DSSA*, New Jersey would suffer profound practical irreparable harms too. If the mandate issues but New Jersey later wins on further review, the harms to public safety and law enforcement will be permanent. As more than one circuit

11

found, allowing the mandate to issue "would lead to a 'flood' of currently restricted weapons entering [New Jersey]" that "will be near-impossible to retrieve once within the state," *NAGR*, 153 F.4th at 249, even if *Viramontes* later comes out the other way. *Accord Hanson*, 120 F.4th at 247 (agreeing that previously-prohibited weapons "will flood into" the State, meaning that even temporary suspension of these laws "could drastically compromise [the State's] ability to enforce its magazine cap [or assault weapons law] far into the future"). Law enforcement would not know who now possesses such weapons in New Jersey, and thousands of individuals may be subject to criminal exposure for continuing to possess weaponry they understood to be lawful when initially purchased.

This is unfortunately not an abstract problem. As the D.C. Circuit found, there is some evidence that "over *one million* LCMs flooded into California in the brief *one-week* period after California's LCM cap was enjoined but before the ruling was stayed by the district court." *Hanson*, 120 F.4th at 247 (cleaned up) (emphasis added) (citing Matthew Green, *Gun Groups: More Than a Million High-Capacity Magazines Flooded California During Weeklong Ban Suspension*, KQED (Apr. 12, 2019), https://perma.cc/65NQ-Z6D6). And even before the mandate issued, just

hours after this Court published its opinion, sales appear to have begun in the State—with many more advertised to start after the mandate issues. *See, e.g.*, Ex. A (showing three instances of New Jersey arms dealers selling LCMs following this Court's decision before issuance of mandate); Ex. B (collecting ads from several arms dealers in the Third Circuit indicating sales will swiftly follow issuance of mandate). Absent a stay of the mandate, thousands (or more) of such sales could take place in the State, a bell state and local law enforcement could not soon un-ring.[2]

The sovereign injury to the State's enforcement of 36-year-old laws, and the practical consequences to law enforcement of thousands of sales of previously-unlawful items following issuance of the mandate, together and independently demonstrate irreparable harm.

b. Although these above factors do not present a "close case" requiring the Court to consider whether "on balance, the interests of the parties and the public favor a stay," that equitable analysis nonetheless further

[2] And though this may not have been relevant to the Second Amendment merits, "evidence that the enforcement of laws restricting assault weapons, [LCMs], or both is associated with a statistically significant decrease in per capita rates of deaths and casualties due to mass shootings" does bear on the harm that the State would suffer were the mandate to issue. *NAGR*, 153 F.4th at 249; *see also* N.J.Br.19-23.

favors the State. *Nara*, 494 F.3d at 1133. The State's ask is quite narrow: to allow the 36-year-old status quo to continue for less than one year until *Viramontes* (and any other possible case on LCMs) is decided this Term. At that point, if Plaintiffs prevail, they would be able to possess the weapons covered by this Court's mandate—meaning that the harm is entirely a months-long delay. *See Hanson*, 120 F.4th at 247 (emphasizing delay is not irreparable in the same way an injury to the State is, and these "unequal consequences carry material weight"). The State in no way intends to disregard or diminish any delay in exercising one's rights. But the parties' conduct shows the relatively reduced irreparable injuries they would suffer from a less-than-one-year deferral of the mandate.

Plaintiffs' delay in seeking relief, and their own conduct during this half-decade of litigation, confirms it would be proper to keep this 36-year-old status quo while litigation proceeds to the Supreme Court this Term. This Court has noted that a "[d]elay in seeking enforcement of [constitutional] rights" impacts a party's equities, meaning that there is "at least a reduced need for" for "speedy action" to effectuate relief for such a challenger. *DSSA*, 108 F.4th at 206. New Jersey enacted its assault-weapons and LCM statutes in May of 1990. These Plaintiffs did not challenge the

14

assault-weapons law until 2022, and they did not challenge the LCM law before 2018—and even then only litigated a change in capacity from 15 to 10, not the 15-capacity limit from 1990. *See ANJRPC v. Atty. Gen.*, No. 18-10507 (DNJ), Dkt. 1; *Cheeseman v. Atty. Gen.*, No. 22-4360 (DNJ), Dkt. 1; *Ellman v. Atty. Gen.*, No. 22-4397 (DNJ), Dkt. 1. That they waited 28/32 years to file these challenges suggests that the status quo can and should be maintained for months more, given the odds of certiorari, possibility of reversal, and indisputable interim irreparable harm.

Plaintiffs' conduct during litigation likewise suggests the status quo can be maintained, and that the mandate need not immediately issue, as this case proceeds to the Supreme Court. For one, neither the *Cheeseman* nor *Ellman* Plaintiffs sought preliminary relief. *See, e.g., Shirey v. Bensalem Tp.*, 663 F.2d 472, 476 (3d Cir. 1981) ("The party's own evaluation that there is no need for injunctive relief pendente lite is a good indication that the status quo can continue until the ultimate conclusion of the litigation[.]"); *cf. Defense Distributed v. Attorney General*, 972 F.3d 193, 201 (3d Cir. 2020) (looking to party's litigation conduct as "strong indication that" in its eyes "the status quo can continue" without irreparable harm). For another, all parties agreed to stay the District Court's order striking

down New Jersey's law applied to a certain AR-15 pending "the resolution of any appeal" to this Court. Joint Mot. for Ext. of Stay Pending Appeal, *ANJRPC v. Atty. Gen.*, No. 18-10507 (D.N.J. Aug. 20, 2024), Dkt. 235 at 3. That, too, indicates limited haste to upend the status quo.

Further, while the *ANJRPC* Plaintiffs sought a preliminary injunction in 2018 (unlike the *Cheeseman* and *Ellman* Plaintiffs), they actually later switched gears and urged their case be stayed pending the Court's resolution of *NYSRPA v. Bruen*. *See* Br. in Support of Cross Mot. for Stay, *ANJRPC v. Atty. Gen.*, No. 18-10507 (D.N.J. Mar. 18, 2019), Dkt. 90 at 5-6 (requesting their case be held, even though New Jersey laws remained enforceable in the interim, because it was "likely" the eventual *Bruen* decision would "affect the analysis governing Plaintiffs' Second Amendment claims"). They then repeated this request to this Court, emphasizing that "[t]wo other circuit courts have stayed cases pending" *Bruen*. Motion for Stay at 2, *ANJRPC v. Atty. Gen.*, No. 19-3142 (3d Cir. Nov. 8, 2019). But if Plaintiffs were copasetic with a stay—with New Jersey laws remaining in effect—pending *Bruen*, it is unclear why a stay of the mandate would be inappropriate pending a petition that will at the very least be held for

16

*Viramontes*, a far more identical case.[3] Plaintiffs' delay in seeking relief, and Plaintiffs' conduct during this half-decade of litigation, confirms that it is proper to keep the 36-year-old status quo in place while this litigation proceeds swiftly to the Supreme Court this Term.

3. One last point bears note: that this Court elected to issue its opinion prior to *Viramontes* does not mean this Court must issue its mandate. This Court gave two reasons for the timing of its opinion—that (1) it "resolves a question the Supreme Court has not committed to addressing: the constitutionality of a law restricting possession of magazines that can hold more than 10 rounds of ammunition," and (2) "no party to these long-pending cases has asked [the Court] to hold [its] decision." Op.14-15 n.12. But that this Court resolved the LCM question and created a split in the process is part of what may merit further review—and thus part of what

---

[3] To be clear, neither the State nor the courts thought this stay for *Bruen* was appropriate at that time given the material differences between that case (regarding public carry permits) and *ANJRPC* (regarding possession of LCMs). But there is a far tighter fit between *Viramontes* and this case: indeed, as explained above, one of the questions is identical. *See supra* at 7 (discussing question in *Viramontes*). And it is quite likely *Viramontes* will provide doctrinal clarity that bears on LCM challenges too—which is likely why the Court is holding multiple LCM cases. In any event, regardless of whether the *ANJRPC* Plaintiffs were successful, their own motion is indicative of the degree of harm that they will suffer from an analogous stay of the mandate for a short time until *Viramontes* issues.

favors this stay under the Third Circuit's *Nara* analysis. *See supra* at 8-9. Moreover, electing to answer a question does not impose interim irreparable harm on the State; by contrast, allowing a mandate to issue would. *See supra* at 10-13. And of course, the State is asking this Court to stay its mandate in these long-running cases—to maintain a statutory status quo that is much longer running—for just one more Term.

*　*　*

This Court's test is satisfied. There is an obvious case for certiorari: the Supreme Court already granted review over one of the two questions in this case, and both questions implicate an express circuit split over an important issue. There are sufficient odds that the States will succeed in these cases, especially given the lopsided circuit split and recent decision in *Barnett*. The State would suffer severe sovereign and practical irreparable harms were this mandate to issue while this case is pending at the Court. And it is sensible to allow this 36-year-old status quo to remain in place for months, especially given Plaintiffs' conduct, which also allowed the status quo to persist for years before and during litigation.

## CONCLUSION

This Court should stay its mandate.

Respectfully Submitted,

JENNIFER DAVENPORT
Attorney General of New Jersey


By:  /s/ Jeremy M. Feigenbaum
     Jeremy M. Feigenbaum
     Solicitor General

Dated: July 31, 2026

19

# CERTIFICATE OF BAR MEMBERSHIP

I certify that that I am a member in good standing of the bar of the

United States Court of Appeals for the Third Circuit.

/s/ Jeremy M. Feigenbaum
Jeremy M. Feigenbaum
Solicitor General

Dated: July 31, 2026

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), as well as L.A.R. 31.1(c), I certify that:

1. This motion complies with Fed. R. App. P. 27(d)(2)(A) because this brief contains 4,081 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. As required by Fed. R. App. P. 27(d)(1)(E), this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 word-processing system in Century Schoolbook, 14 point font.

3. The text of the electronic brief is identical to the text of the paper copies.

4. The electronic file was scanned with anti-virus software Crowdstrike Falcon Sense version 7.38.21003.0 and no virus was detected.

/s/ Jeremy M. Feigenbaum
Jeremy M. Feigenbaum
Solicitor General

Dated: July 31, 2026

21

## CERTIFICATE OF SERVICE

I certify that on July 31, 2026, the foregoing brief was electronically filed with the clerk of the court with the United States Court of Appeals for the Third Circuit through the Court's CM/ECF system, which filing effected service upon counsel of record through the CM/ECF system.

/s/ Jeremy M. Feigenbaum
Jeremy M. Feigenbaum
Solicitor General

Dated: July 31, 2026

# Exhibit A

Social Media Posts Showing Sales of
LCMs in New Jersey Following Judgment

SC Arms:



SC Arms Instagram Bio
https://perma.cc/KZ7G-D62U



July 17, 2026 Instagram Post Showing LCM Sale at SC Arms
https://perma.cc/ZJ4B-A8FG



July 23, 2026 Instagram Post Suggesting that SC
Arms Began Selling LCMs on July 17, 2026
https://perma.cc/XR3D-2DW5

Urban Tactical Firearms:



**urbantacticalfirearms** •••

**Urban Tactical Firearms And Training Academy**
548 West Side Ave, Jersey City, NJ 07304
65 East Route 70, https:Marlton, NJ 08053
🔗 **www.utfirearms.com and 1 more**

Urban Tactical Firearms Instagram Bio
https://perma.cc/GKJ9-5588



July 17, 2026 Reddit Post Confirming LCM Sale at Urban Tactical
https://perma.cc/RM8V-B9FJ



July 30, 2026 Instagram Post Showing that
Urban Tactical Plans to Sell LCMs on July 31
https://perma.cc/KVB9-435U

RTSP:



**ABOUT US**

As Northern New Jersey's premier and only 5 star indoor shooting range, store, and training facility, we provide you with an unparalleled venue for family and personal firearms enjoyment and education. Our friendly staff will be more than happy to help anyone from beginners to experts with getting on the range, finding the right training for your needs, or purchasing your next firearm. We offer one of the largest retail selections of firearms in the area, and we'll work with anyone on gett...  ⇒ Continue Reading

RSTP "About Us" Section
https://perma.cc/8QUT-U935

NJGF-Admin  ⓿                                                    11d

RTSP seems to be selling standard capacity magazines now. Got this in an email about an hour ago:

**RTSP**
RANGE · FIREARMS · TRAINING

🚨 It's Official:

**Standard-Capacity Magazines Are Back!**

**THE WAIT IS OVER**

The Third Circuit Court of Appeals has ruled that New Jersey's magazine capacity restrictions are unconstitutional.

This is a major moment for firearm owners!
Our team is already working to bring standard-capacity magazines into our stores as quickly as possible.

Why wait? Get ahead of the rush and order online today at shop.rtsponline.com while inventory is available!

Email from RTSP Posted on Gun Owner
Forum on July 19, 2026 Confirming LCM Sales
https://perma.cc/7JJZ-4J2T

 **r/NJGuns** • 6d ago
Ordinary-Ad8859                                                    ...

### Full Capacity Mags are in RTSP

I feel like i saw a lot of people say RTSP was just taking magazine reservations but the order I put in online is ready for pickup. Im a member so with discount it was worth it to buy from them, especially since online retailers still are not shipping

⬆ 26 ⬇ · 💬 17

 **z1ggy16** • 6d ago

Which ones? I was just there 20 minutes ago asking about non low cap mags for my Echelon and they didn't have any, and were unsure if they could order them either. This was Randolph.

⊖ ⬆ 8 ⬇

  **Ordinary-Ad8859** OP • 6d ago

In store is different I think but can confirm i ordered a bunch of Echelon ones online and that's part of what arrived today. And I shipped to Randolph

⊖ ⬆ 4 ⬇

  **Logical-Witness-795** • 5d ago

Did you pick up your order?

⊖ ⬆ 2 ⬇

  **Ordinary-Ad8859** OP • 5d ago

Yes

⬆ 2 ⬇

July 24, 2026 Reddit Post from RTSP Customer
Claiming Ability to Pick Up LCMs at RTSP
https://perma.cc/RJ35-8C8D

# Exhibit B

Social Media Posts from Arms Dealers
Indicating Intent to Sell AR-15s and LCMs
in NJ as Soon as Legally Permissible

Palmetto State Armory:

Since its inception, Palmetto State Armory has focused on providing the best quality AR-15 parts and accessories for the best price possible. Following year after year of exponential growth, Palmetto State Armory's core principle remains the same, and our commitment to freedom before profit remains unwavering. The idea is simple:

## SELL AS MANY GUNS TO AS MANY LAW-ABIDING AMERICANS AS POSSIBLE.

"About Palmetto State Armory" Section on Website
https://perma.cc/5ATE-4FPV

**NEW JERSEY: 3RD CIRCUIT STRIKES DOWN AR AND MAGAZINE BANS**

On July 17, 2026, the U.S. Court of Appeals for the 3rd Circuit issued a landmark 10-5 *en banc* decision striking down New Jersey's ban on popular semi-automatic rifles (such as the AR-15) and magazines holding more than 10 rounds. The court ruled that these firearms and standard-capacity magazines are in common use for lawful purposes and that banning them violates the Second Amendment.

 **What this means for your orders:** The ruling is a massive step forward, but the legal process requires a final administrative step before sales can physically resume. **Please stay tuned on when we will be allowing orders to be placed** the moment the 3rd Circuit's opinion is officially effective and shipment is legally permissible.

Blog On Company Website Indicating That AR-15 Sales
To New Jersey Will Begin "The Moment" The Mandate Issues
https://perma.cc/R5QL-Q5DD

**New Jersey**

*Update: We will begin accepting orders as soon as the 3rd Circuit Court officially posts the mandate.* <u>*Read More Here.*</u>

Palmetto's State-by-State Shipping Restrictions
https://perma.cc/H666-4PC3

Middlebrook Firearms:



**Middlebrook Firearms**

1.9K followers • 26 following

Message    Follow    Search

Your neighborhood firearms destination with competitive prices and outstanding customer service.
Sporting Goods Store

Middlebrook Firearms Facebook Bio
https://perma.cc/UJ8F-ZGTK



**Middlebrook Firearms** is at **Middlebrook Firearms**.
July 23 at 8:45 PM · Green Brook · American Nights · Zach Bryan ·

🇺🇸 FREEDOM FRIDAY IS ALMOST HERE. 🇺🇸

Looks like it's time to make room in the safe.

To celebrate what could be one of the biggest changes to New Jersey firearms laws in decades, we're launching our Freedom Friday Event!

🔥 15% OFF qualifying standard-capacity magazines
Use code STANDARD

🔥 10% OFF qualifying previously prohibited semiautomatic rifles
Use code FREEDOM

Reserve your order now to lock in today's pricing and beat the inevitable rush.

As always, we'll only transfer firearms and magazines when legally permitted. We're excited about the Third Circuit's decision, but we're also committed to doing things the right way. We'll continue following all applicable laws and guidance every step of the way.

We have a feeling demand is going to be... standard. 😉

📍 Middlebrook Firearms
Green Brook, NJ

#freedomfriday #middlebrookfirearms #nj2a #secondamendment #standardcapacity **See less**



July 23, 2026 Facebook Post Advertising Pre-
Sale of AR-15s and LCMs in New Jersey
https://perma.cc/UJ8F-ZGTK

Keyport Guns & Sporting Goods:



Keyport Guns & Sporting Goods Facebook Bio
https://perma.cc/2U4Q-A6J7



 **Keyport Guns & Shooting Club**
July 18 at 1:34 PM · Keyport · 🌐

Thank you for your continuous support and for choosing Keyport Guns and Sporting Goods.
— at Keyport Guns & Shooting Club.

July 17, 2026 Facebook Post Stating That Sales of AR-15s and LCMs
will Begin in New Jersey "As Soon as It Is Legally Permissible"
https://perma.cc/9N7T-7R27

**Middletown Arms:**



**middletownarmsco** ⋯

**665 posts    7,153 followers    2,399 following**

Gun Store
Family Owned and Operated
We're the shop without the attitude, serving everyone from beginners to experienced shooters. No Sales
on IG!
FFL 07/02 SOT
429 NJ-36 N unit 4, Middletown, New Jersey 07758
🔗 maps.app.goo.gl/seEtC3gcLTjPDusAA?g_st=com.google.maps.preview.copy
Ⓖ middletownarmsco

Middletown Arms Instagram Bio
https://perma.cc/5UMN-8SQL

 When can we order magazines from Middletown Arms now that the magazine ban has been struck down?

  Reply

Middletown Arms ✓ · 1w · ✒ Author
Chris Sørensen very soon we have them in stock already we are just waiting ! We just posted what we are doing on Instagram



👍 👎 Reply

July 23, 2026 Facebook Comment Stating That Middletown Arms
Has LCMs "In Stock" and Are "Just Waiting"
https://perma.cc/ZK7Z-GS88



July 23, 2026 Instagram Post Encouraging Customers to "Beat the
Rush" to Convert AR-15s and LCMs by Dropping Off Modified Firearms
https://perma.cc/RT4Z-GWZU



July 29, 2026 Instagram Post Offering Pre-Order for LCMs

https://perma.cc/DFX7-TD8K

X-RingSupply:



X-Ring Supply Reddit Bio

https://perma.cc/WKH3-4WL4



vettemn86 **OP** · 9d ago

u/X-RingSupply. Some FFLs in NJ have gotten official correspondence from the NJSP about they are able to sell ban items on 07/31. Have you gotten anything from DSP or the DE DOJ as of yet?

⊖ ⬆ 5 ⬇

X-RingSupply · 8d ago

We are waiting for the mandate to go into effect. Once laws change, we will be full sending it. We haven't seen any guidance on when, aside from the Aug 10 date that the NRA attorney mentioned on that Youtube Live video.

⊖ ⬆ 6 ⬇

vettemn86 **OP** · 8d ago

Thank you for the update. Im ready to buy that Tavor x95 on the wall when you can sell it

⊖ ⬆ 2 ⬇

X-RingSupply · 7d ago

I'm just excited to sell AKs again tbh

⬆ 6 ⬇

July 22, 2026 Reddit Comments from X-Ring Stating That
They Will Sell Previously Restricted Arms As Soon As Possible
https://perma.cc/M2N9-86N4